IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JANE DOE, | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO: 4:16-cv-___ |
| V. | § | |
| | § | PLAINTIFF'S ORIGINAL |
| HARRIS COUNTY, TEXAS, | § | COMPLAINT |
| SHERIFF HICKMAN | § | |
| In his Official Capacity, et al. | § | (JURY TRIAL) |
| *Defendants* | § | |

## I. JURISDICTION AND VENUE

1.     This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§1331 and 2201, 42 U.S.C. §§1983 and 1988, and supplemental jurisdiction under 28 U.S.C. §1367(a), to hear Plaintiff's state law claims, if any.

2.     Venue is proper in this Court under 28 U.S.C. §1391(b) because the incidents at issue took place in Harris County, Texas, within the United States Southern District of Texas.

## II. PARTIES

3.     Plaintiff Jane Doe is a resident of Gregg County, Texas.

4.     Defendant Harris County, Texas is a governmental body existing under the laws of the State of Texas and may be served with process by serving the County Judge of Harris County, Ed Emmett, at 1001 Preston, Houston, Texas  77002.

5.     Defendant Ron Hickman in his Official Capacity is the Sheriff of Harris County and may be served with process at 1200 Baker St., Houston, Texas 77002.

6.     Defendant Taylor Adams, individually, is a contract employee of the Harris County Jail and may be served with process at 1200 Baker St., Houston, Texas 77002.

7.     Defendant Nicholas Socias, individually, is a Harris County Assistant District Attorney and may be served with process at 1201 Franklin, Houston, Texas 77002.

8.     Defendants John Doe Staff 1-20, individually, are identified as the unnamed guards, detention officers, and other employees and contractors at the Harris County Jail who demonstrated deliberate indifference to Jane Doe's constitutional rights and who will be served with process after they are identified and their liability is substantiated.

9.     Defendants John Doe Staff 21-40, individually, are identified as the unnamed prosecutors, investigators, and other employees of the Harris County District Attorney's Office who demonstrated deliberate indifference to Jane Doe's constitutional rights and who will be served with process after they are identified and their liability is substantiated.

### III. PRELIMINARY STATEMENT OF THE CASE

10.    Plaintiff Jane Doe is an innocent rape victim with mental illness who was called by prosecutors to testify in the trial of her rapist. Jane Doe suffered a mental breakdown during her testimony and was hospitalized.  To control and dominate Jane Doe following her hospitalization, Harris County Assistant District Attorney Nicholas Socias, a named Defendant, along with others in the District Attorney's

2

Office, knowingly obtained an unauthorized court order to imprison Jane Doe under the guise that she was a material witness. The Harris County Sheriff in his Official Capacity, a named Defendant, then blindly and without hesitation executed that unauthorized court order by incarcerating Jane Doe in the Harris County Jail for approximately one month. This lawsuit seeks damages for the Defendants' and their co-conspirators' mistreatment of Jane Doe before and during her illegal imprisonment in the Harris County Jail.

11.     At the outset, Defendants and their co-conspirators violated Jane Doe's due process rights by causing her to be unconstitutionally arrested and then confining her in the filthy and dangerous Harris County Jail when she was not accused of any crime or wrongdoing. During Jane Doe's imprisonment, Defendants and their co-conspirators further violated her constitutional rights by failing to provide considerate, dignified, and safe treatment, failing to provide adequate medical treatment, failing to protect Jane Doe from a violent inmate who physically attacked her, failing to protect Jane Doe from unreasonable and excessive use of force by a jail guard who physically assaulted her, failing to protect Jane Doe from malicious prosecution, defaming Jane Doe by falsely publishing to myriad individuals that she was, *inter alia*, an accused sex offender, and depriving her of her right to counsel. Defendants and their co-conspirators violated Jane Doe's constitutional rights under the Fourth, Sixth, and Fourteenth Amendments, and their conduct shocks the conscience.

## IV. FACTS

12.    Jane Doe is a rape victim, called to testify as a victim witness by the Harris County District Attorney's Office in the prosecution of her rapist.

13.    Jane Doe is mentally disabled, and her disability constitutes a medical condition.   Specifically, Jane Doe suffers from Bipolar Disorder as well as symptoms associated with Schizophrenia.   In addition to her underlying mental disability, Jane Doe is psychologically vulnerable as a result of having been violently raped, choked, beaten, and sodomized by a serial rapist in Houston in 2013.

14.    By the time her rapist was brought to trial, Jane Doe lived in Longview, Gregg County, Texas.   On December 7, 2015, Harris County District Attorney investigators traveled to Longview, met Jane Doe at her home, and transported her to Houston to testify at her rapist's trial.

15.    Despite her decision to cooperate with prosecutors, Jane Doe was emotionally unprepared to confront her attacker in open court and testify about the sexual abuse.   On December 8, 2015 in the 176th District Court, during her testimony in the trial of her rapist, Jane Doe suffered a mental breakdown and was transported to St. Joseph Medical Center in Houston, Texas for evaluation and treatment.

16.    Due to Jane Doe's hospitalization for mental health treatment, the presiding judge ordered a recess until January 2016.

17.     Following these developments, Assistant Harris County District Attorney Nicholas Socias, a named Defendant, and others in the District Attorney's Office wanted greater control over Jane Doe's freedoms during the holiday recess, solely for their own convenience.  Moreover, they did not want Jane Doe to leave Harris County and return to her home in Longview upon her discharge from St. Joseph Medical Center.

18.     The "Victim-Witness Division" of the Harris County District Attorney's Office provides a wide array of social services to assist rape victims who testify against their attackers.  Because the prosecutors and Victim-Witness Division employees were scheduled to be on vacation over the holiday break, they did not want the responsibility of having to monitor Jane Doe's well being or provide victim services to her during the holiday recess.

19.     To shirk this fundamental responsibility and put it off on someone else, and to control and dominate Jane Doe over the holiday recess, Assistant District Attorney Nicholas Socias and others in the Harris County District Attorney's Office conspired to obtain an unauthorized court order to imprison Jane Doe in the Harris County Jail upon her discharge from St. Joseph Medical Center.

20.     On December 8, 2015, Assistant District Attorney Nicholas Socias, conspiring with others in the District Attorney's Office, knowingly obtained an unauthorized "attachment" order[1] directing the Harris County Sheriff to take Jane Doe into custody upon her discharge from St. Joseph Medical Center.  In further violation of the law and basic legal ethics, the prosecutors obtained the unauthorized attachment order while Jane Doe was unrepresented by counsel and without giving her notice or an opportunity to be heard.  Nicholas Socias and his co-conspirators knew the attachment order was unauthorized, that Jane Doe was unrepresented by counsel, and that Jane Doe was not given notice or an opportunity to be heard prior to the order being issued.

21.     On December 9, 2015, Assistant District Attorney Nicholas Socias went to visit Jane Doe at St. Joseph Medical Center and observed that her condition had drastically improved since her mental breakdown.  The following day, Nicholas Socias sent an email to Jane Doe's mother stating:

> I went to visit [Jane Doe] yesterday at the hospital and she was doing much better.  I spoke with the doctor there and . . . made sure he understood the entire situation.  They started medicating her and having her talk to the doctor.  I thought it would take longer to see any change but I was impressed with her improvement already.  She

---

[1] Texas state law authorizes a judge, upon request by a party, to issue an "attachment" order and/or a "witness bond" to hold a material witness in custody without bail, or release her subject to posting bail, respectively.  An attachment order was unauthorized because Jane Doe was not subpoenaed as a material witness and was not a resident of Harris County. *See* Arts. 24.12 and 24.14, Tex. Cd. Crim. Proc.  Nor could Jane Doe be held on a witness bond, since the applicable statute prohibits jailing witnesses who are, as Jane Doe was, financially unable to post bond. *See* Art. 24.24, Tex. Cd. Crim. Proc.

> obviously wants out but I am making sure she is getting the best care
> we can give.  I will stop by again either today or tomorrow to make
> sure she is still ok going into the weekend.  The nurses all have my
> cell phone number so if something happens they will call me, day or
> night, so I can go over there.

However, during this exchange and others that followed, Nicholas Socias purposefully failed to tell Jane Doe's mother that he had already obtained a court order that Jane Doe be jailed upon her discharge from St. Joseph Medical Center. As a result of Nicholas Socias' deception, Jane Doe's mother trusted the District Attorney's Office to oversee Jane Doe's well-being, and took no action.

22.     During Jane Doe's stay at St. Joseph Medical Center, and in furtherance of the conspiracy to control and dominate Jane Doe, Nicholas Socias and others in the District Attorney's Office conspired to use the unauthorized attachment order as a basis for illegally obtaining access to Jane Doe's individually identifiable health information beyond the limited purposes allowed by 45 C.F.R. 164.512(f), and without a validly obtained release, in violation of the federal criminal statute 42 U.S.C. 1320d-6.  Through this unlawful conduct, Nicholas Socias and others were able to illegally monitor Jane Doe's care at St. Joseph Medical Center and learn of her discharge schedule.

23.     Upon Jane Doe's discharge from St. Joseph Medical Center on December 18, 2015, Harris County District Attorney investigator Brandon Plagens, wearing a firearm, arrived at the hospital, arrested and handcuffed Jane Doe, and transported

her against her will to the Harris County Sheriff's Department jail (Harris County Jail), pursuant to the unauthorized attachment order.

24.     Jane Doe never consented to being in custody, and was confused about why she was being imprisoned by the same District Attorney's Office that had promised to protect her and help her seek justice in a court of law.

25.     Upon taking custody of Jane Doe, Sheriff's Department staff learned that she was a victim witness, was not accused of any crime or wrongdoing, was mentally disabled, and had just been discharged from the hospital following inpatient treatment for her mental condition.   Nevertheless, Sheriff's Department staff agreed and conspired with Nicholas Socias and Brandon Plagens, to book Jane Doe into the Harris County Jail under color of law and under the guise of Jane Doe being a properly "attached" material witness.

26.     During the booking process, a Sheriff's Department employee entered Jane Doe's information into the computer system used by jail staff to identify, classify, and manage inmates.   The employee entered Jane Doe's information in a manner falsely identifying her to other computer system users as a defendant in a sexual assault case, rather than the victim.   This defamed Jane Doe to numerous people who later utilized the computer system to gain information about Jane Doe, causing some of those people to mistreat, neglect, and abuse her.

27.     Within the Harris County Jail, inmates with mental disabilities may be housed in the jail's Mental Health Unit.   Despite the fact that Harris County Jail staff knew Jane Doe had just been discharged from St. Joseph Medical Center

following inpatient treatment for acute symptoms of her mental disability, jail staff deliberately failed to assign her to the jail's Mental Health Unit.

28.    Moreover, instead of providing dignified living accommodations appropriate for Jane Doe's status as an innocent rape victim witness, jail staff dumped her into the jail's "general population," a deafening environment swarming with hostile, predatory, and violent inmates and convicts, and overseen by callous, understaffed, and impatient jail guards.  Day-to-day living conditions in the "general population" of the Harris County Jail are widely known to be substantially worse than those of most other county jails in Texas, and worse than the conditions in many prison units in the Texas Prison System (TDCJ-ID).

29.    Inmates in the general population of the Harris County Jail are forced to live in uncomfortably cold temperatures, which are maintained by jail administrators to control the spread of ever-present infectious diseases such as Tuberculosis.  Inmates must use the toilet in front of other inmates and jail staff, and the air is often filled with the stench of body odor, trash, and bodily function. At night, the sounds of slamming metal doors, yelling and screaming from other inmates, and the occasional verbal taunts from jail guards, make it difficult to sleep.  Inmates are routinely fed tasteless, fatty foods without fresh fruit or vegetables.

30.    Defendants and their co-conspirators were well aware of the foul conditions in the jail, and they were deliberately indifferent to the impact those conditions would have upon Jane Doe.

9

31.    In furtherance of the conspiracy to control and dominate Jane Doe, Nicholas Socias made contact with jail medical staff and illegally obtained access to Jane Doe's individually identifiable health information without a validly obtained release, in violation of the federal criminal statute 42 U.S.C. 1320d-6. Likewise, jail medical staff violated the same provision by releasing the information to the District Attorney's Office without a validly obtained release.

32.    On December 19, 2015, Jane Doe's mother heard that Jane Doe was confined in the Harris County Jail.  Understandably alarmed, her mother inquired by text message with District Attorney Investigator Brandon Plagens, the one who had arrested Jane Doe and taken her to the jail.  In furtherance of the conspiracy to control and dominate Jane Doe, and to delay the discovery of his own wrongdoing, Brandon Plagens responded by text message and intentionally misled Jane Doe's mother into believing that Jane Doe had been transferred to the care of a respected mental health facility. Jane Doe's mother relied on this deliberate false impression and continued to trust that the District Attorney's Office was acting in Jane Doe's best interest and providing her with adequate care, as Nicholas Socias had promised.

33.    Meanwhile, Harris County Jail medical staff failed to continue the stabilizing treatment Jane Doe had received while at St. Joseph Medical Center, including the failure to consistently provide Jane Doe's prescribed medications and the failure to provide a stable environment free from harassment, taunting, and other interpersonal conflict.  This egregious conduct further harmed Jane Doe and

impacted her ability to cope with the overwhelming—indeed hopeless—reality of being imprisoned in the hellhole of the Harris County Jail for no reason other than being a rape victim who struggles with a mental disability.

34.     During the time frame when jail medical staff chose not to consistently provide Jane Doe with her prescribed medications, Jane Doe reported to a jailer that she needed someone to take her to get her medications.  The jailer callously replied, "That's not our job."

35.     Harris County Jail staff housed Jane Doe in a "pod" that held approximately 25 inmates.  For a number of days, Jane Doe, who is white, was forced to live in a pod in which all the other inmates were African-American. Several of these inmates taunted and harassed Jane Doe—including disparaging Jane Doe's race—eventually ganging up to physically intimidate Jane Doe into surrendering her bunk to another inmate. During these events, Jane Doe pleaded with jail staff to transfer her to another pod, and reported that she'd been threatened and mistreated by other inmates due to her race.  Jail staff deliberately and continually ignored Jane Doe's pleas for help and protection.

36.     In the midst of these traumatic events, on the night of December 23, 2015, Jane Doe was in her bunk trying to sleep.  Another inmate in the pod called out to Jane Doe and instigated a confrontation.  Jane Doe got up from her bunk and walked away from the hostile inmate.  The inmate attacked Jane Doe, pushed her to the ground, and repeatedly slammed her head into the concrete floor.

37.    Following this brutal attack, jail staff <u>finally</u> moved Jane Doe to a different pod.  Indifferent to Jane Doe's victimization, jail staff took no action to assist Jane Doe in filing Felony Aggravated Assault charges against the violent inmate who had brutalized her.

38.    By Christmas Eve 2015, Jane Doe's mother had become desperate to help her daughter get out of jail.  She discussed with Nicholas Socias the subject of whether she should post bond so Jane Doe could be released by Christmas.  During this discussion, on December 24, 2015 Nicholas Socias stated in an email that, if Jane Doe were bonded out of jail and then failed to appear to testify, then "things get very very bad for her legally."  This legal advice was improper, misleading, erroneous, and was given in furtherance of the conspiracy to control and dominate Jane Doe by violating her rights.  By giving biased and improper legal advice to Jane Doe's mother, a private citizen, Nicholas Socias further exploited the fact that Jane Doe was unrepresented by counsel.

39.    Also in furtherance of the conspiracy, in the same email on December 24, 2015, Nicholas Socias lied to Jane Doe's mother and falsely stated that if Jane Doe were bonded out of jail and failed to "stay medicated" and "[stay] out of trouble," whoever bonded Jane Doe out of jail would be "on the hook" for $15,000.[2]  This

---

[2] Under Texas law, bond forfeiture can only result from a failure to appear. Art. 22.01, Tex. Cd. Crim. Proc.  Tellingly, the amount of Jane Doe's bond was $10,000, not $15,000 as Nicholas Socias falsely claimed.  In any event, the witness bond was unenforceable in forfeiture because it was unauthorized by any statute. Art. 22.03(1), Tex. Cd. Crim. Proc.

was a materially false statement of both fact and law.  Nicholas Socias' deception

caused Jane Doe's mother to not bail Jane Doe out of jail by Christmas.

40.     Jane Doe spent the Christmas and New Year holidays without a toothbrush,

hairbrush, or towel.  She was required to shower in front of the other inmates and

when she wanted drinkable water, she was forced to drink from a spigot attached

to a dirty metal toilet.  These conditions further eroded Jane Doe's fragile mental

state.

41.     On December 28, 2015, Jane Doe sought psychiatric help from the Harris

County Jail medical staff.  During the visit, and due to other jail employees'

defamation of her via the jail's computer system, medical staff falsely insisted to

Jane Doe that she was in jail because she was <u>charged with</u> committing

Aggravated Sexual Assault. The treatment notes for that visit documented the

medical staff's view that Jane Doe's "confused" belief that she was the victim,

rather than the defendant, reflected negatively on Jane Doe's "orientation" to

reality.  Simply put, the Harris County Jail psychiatric staff believed that Jane Doe

was disoriented because she absurdly believed she was an innocent rape victim.

42.     The Harris County Jail psychiatric staff tormented Jane Doe and caused her

extreme emotional distress and mental anguish by further defaming her, falsely

insisting to her that she was being charged with sexual assault, and refusing to

acknowledge her status as an innocent rape victim.

43.     As an innocent rape victim with a mental disability, imprisoned against her

will, with no one to listen—and then falsely branded an accused sex offender by

the jail's psychiatry staff—Jane Doe found herself hopelessly trapped in a bizarre plot pulled from a Kafka novel.[3]

44.    Jane Doe remained warehoused in the "general population" of the Harris County Jail against her will over the Christmas and New Year holidays.  This caused Jane Doe significant emotional distress and mental anguish.  Meanwhile, Jane Doe's mother desperately sought assistance from the Harris County Sheriff's Office and employees and officials with the Harris County District Attorney's Office, but received no help even though both agencies were required by law to come to Jane Doe's aid and protect her.[4]

45.    Jane Doe's confinement under these circumstances caused emotional distress and mental anguish to Jane Doe's mother, who was undergoing cancer treatment.  Jane Doe's mother was unable to visit Jane Doe in the jail due to her weak immune system's vulnerability to the jail's filthy conditions.  To add insult to injury, the Harris County Jail phone system charged Jane Doe's mother $9.95 each time Jane Doe called on the phone pleading for help.  Harris County officials callously refused to waive the extortionate charges or reimburse Jane Doe's mother, instead choosing to make her the latest "mark" of Harris County's ongoing scheme to skim exorbitant fees from thousands of cash-strapped inmate families.

---

[3] "Someone must have slandered Josef K., for one morning, without having done anything truly wrong, he was arrested." —Franz Kafka, The Trial.
[4] Texas Victims Rights Act, Art. 56.01, et seq., Tex. Code Crim. Proc.

46.    The conditions in the Harris County Jail had become too much for Jane Doe to bear.  On January 8, 2016, while in her cell, Jane Doe suffered an acute psychiatric episode and began loudly pleading with God to come to her rescue. This disturbance drew the attention of jail guards including Taylor Adams, a named Defendant herein.  It would have been obvious to anyone watching Jane Doe's behavior that she was experiencing acute symptoms of a mental disability, and Taylor Adams drew the same conclusion.

47.    Instead of ensuring Jane Doe's safety and summoning medical help for Jane Doe as they should have done, Taylor Adams and the other guards chose to control and dominate Jane Doe without regard for following <u>any</u> of the well-established medical standards for the safe and humane treatment of mentally disabled patients experiencing acute emotional distress.  The guards' abrasive tactics caused Jane Doe to suffer a panic attack, and she became hysterical and physically uncontrollable.  Taylor Adams and the other guards then escalated the encounter into a physical confrontation; in the course of this, Taylor Adams punched Jane Doe in the face with a closed fist, bruising Jane Doe's eye socket, and then other guards slammed Jane Doe to the floor and painfully twisted her arms behind her back to handcuff her as she helplessly wept.[5]

---

[5] Taylor Adams has since admitted in official documents that she punched Jane Doe in the face with a closed fist during the incident.  Furthermore, Taylor Adams has since admitted in official documents that prior to her abuse of Jane Doe, she witnessed Jane Doe standing facing the wall in her cell with her arms extended, loudly talking to God, and that she could tell Jane Doe had mental issues. Jane

48.    In an attempt to cover up the brutal abuse of Jane Doe and the failure to provide prompt medical treatment for Jane Doe's acute mental disability, later that day jailer Taylor Adams—conspiring with Harris County Detention Deputy Narmel Mills and other unknown Harris County Sheriff's Office officials and staff—contacted the Harris County District Attorney and requested assault charges be filed against Jane Doe.

49.    Despite the fact that the District Attorney's Office had initiated Jane Doe's illegal imprisonment to begin with, and then abandoned her to fend for herself within the predatory confines of the Harris County Jail, Assistant District Attorney Leah Fielder filed felony Assault[6] charges against Jane Doe on behalf of her abuser, Taylor Adams.

50.    Upon filing, the felony Assault case against Jane Doe was assigned to the 176th District Court of Harris County, Texas (the same court where Jane Doe was a testifying witness in the trial of her rapist).  On January 11, 2016, the presiding judge of the 176th District Court transferred Jane Doe's Felony Assault charge to another court, stating on the transfer order, "This defendant testified as a complaining witness in a jury trial before me.  I have a great deal of sympathy for this individual.  It would be improper for me to oversee her case.  I would feel terrible about punishing her."

---

Doe's mother photographed her daughter's bruised eye socket, which was still clearly visible one week later.

[6] Assault against a Contract Jail or Detention Facility Employee.

51.    From January 8, 2016 through January 14, 2016, the District Attorney's Office continued to prosecute the Felony Assault case against Jane Doe even though they knew Jane Doe was being illegally imprisoned, and that there had been a troubling pattern in recent years of Harris County jail staff filing questionable Assault charges against inmates to cover up excessive uses of force against the inmates.  During this time period, Jane Doe knew that she was being prosecuted for a felony criminal offense that could send her to prison for a decade. This caused Jane Doe significant emotional distress and mental anguish, particularly in combination with jail medical staff's continued insistence that she was also charged with Aggravated Sexual Assault.

52.    During Jane Doe's confinement in the Harris County Jail, Nicholas Socias and others in the Harris County District Attorney's Office were aware she was being abused and mistreated, and they failed to come to her aid.

53.    On January 11, 2016 the Harris County District Attorney's Office brought Jane Doe to court to continue testifying against her rapist.  The Harris County Sheriff refused to give Jane Doe her own clothes, so prosecutors provided her with an ill-fitting set of used clothes from an unknown benefactor.  Jane Doe was forced to appear in public wearing an awkward outfit with bright orange jail-issue rubber shoes, to face her rapist and testify about being raped, choked, beaten, and forcibly sodomized.  When Jane Doe testified, the black eye she received from Harris County jailer Taylor Adams was still visible.  Jane Doe was aware that

everyone in the courtroom knew she'd been in jail, and she was humiliated, traumatized, and devastated.

54.     Following Jane Doe's testimony, her rapist was convicted and the jury assessed two life sentences, the maximum allowed by law.

55.     On January 14, 2016 the Harris County District Attorney's Office finally dismissed the Felony Assault case against Jane Doe "in the interest of justice" and on the explicit grounds that prosecutors "cannot prove the case beyond a reasonable doubt."

56.     Also, on January 14, 2016, the trial judge presiding over the trial of Jane Doe's rapist issued an order releasing Jane Doe as a material witness.  The Harris County Jail released Jane Doe later that day.

57.     As a rape victim, Jane Doe experienced the trauma of rape not just as a sexual violation, but more significantly as an overwhelming and terrifying sense of powerlessness, helplessness, hopelessness, lack of control, and an overall deprivation of her personal integrity.   Although Defendants and their co-conspirators did not sexually violate Jane Doe as her rapist did, their mistreatment of her otherwise re-victimized her in all the same ways.  Truly, the Defendants and their co-conspirators re-raped Jane Doe.

58.     When the Defendants and their co-conspirators abused, neglected, and mentally tortured Jane Doe in the Harris County Jail for all hours of the day and night—for one month—they destroyed Jane Doe's recovery and caused her permanent and severe mental and emotional damage including acute Post-

Traumatic Stress Disorder (P.T.S.D.), increased and uncontrolled depression, unshakable feelings of anger, recurrent fears of abandonment, and other ongoing and debilitating problems. Because Jane Doe already suffered from a vulnerable and fragile mental state at the time Defendants and their co-conspirators mistreated her, Jane Doe's injuries are extreme and will probably torment her for the rest of her life.

59.    During Jane Doe's confinement in the Harris County Jail from December 19, 2015 to January 14, 2016, her rapist was also an inmate in the same facility. During that time, Harris County Jail staff inexplicably treated Jane Doe's violent rapist more humanely than they treated Jane Doe.  By contrast, her rapist was not denied medical care, psychologically tortured, brutalized by other inmates, or beaten by jail guards.

60.    Defendants and their co-conspirators furthermore deliberately, willfully, and flagrantly violated Jane Doe's right to due process by depriving her of her rights under the Texas Crime Victims Rights Act,[7] without first providing her notice or an opportunity to be heard.

---

[7] Tex. Code Crim. Proc. §56.02.

61.     Defendants and their co-conspirators, together and individually, committed the Texas criminal offense of "Official Oppression" when they victimized Jane Doe.[8]

62.     Defendants and their co-conspirators committed the federal criminal offense of "Conspiracy Against Rights" when they victimized Jane Doe.[9]

63.     Tellingly, as a matter of Texas law, livestock animals are entitled to more humane and dignified treatment than what the Defendants and their co-conspirators afforded Jane Doe while she was illegally confined against her will as a ward of Harris County.[10]

64.     Defendants' and their co-conspirators' conduct toward Jane Doe shocks the conscience of any fair-minded, dispassionate, and clear-eyed individual.

65.     There is a widespread history of Harris County Officials acting with deliberate indifference to the constitutional rights of Harris County Jail inmates.

---

[8] Tex. Penal Cd. §39.03.  OFFICIAL OPPRESSION.  (a) A public servant acting under color of his office or employment commits an offense if he: (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful; (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; . . . (b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

[9] 18 U.S.C. §241—Conspiracy Against Rights.  If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same . . . —They shall be fined under this title or imprisoned not more than ten years, or both . . .

[10] Tex. Pen. Code  §42.09

Harris County Officials have known for years that mentally ill people confined in the Harris County Jail are regularly abused, mistreated, and neglected. The County Officials disingenuously blame these problems on budgetary constraints, even though they are the ones who control the administrative policy "valves" that keep the Harris County Jail full, while also deliberately and arbitrarily constraining the jail's operating budget so that available funding can be funneled to other county projects with higher political value.

66.     In 2009, the United States Department of Justice concluded, after its own year-long investigation, that inmates' constitutional protections had been violated by excessive violence and by substandard medical care that led to an "alarming" number of prisoner deaths.

67.     Beginning in October 2015, the *Houston Chronicle* published a multi-part investigative series showing a widespread and ongoing pattern of inmate mistreatment inside the Harris County Jail. On November 21, 2015, the *Chronicle* reported that the U.S. Department of Justice continues to scrutinize shortfalls in mental health treatment and on jailers' use of force against disruptive prisoners.

68.     Between 2009 and November 2015, Harris County jailers were disciplined more than 120 times for misconduct involving abuse of authority or misuse of force including beating, kicking and choking inmates, and including 13 instances in which jailers failed to seek medical attention for inmates.

69.     Within the same time period, in eight separate incidents at the Harris County Jail, detention officers were disciplined for misconduct involving

excessive force or failure to report use of force, for choking, punching, or kicking inmates; in each of these cases the detention officer also initiated criminal charges against the inmate.  Three of the eight inmates went to prison as a result of the charges.

70.    On December 22, 2015, the *Houston Chronicle* publicly reported that the Harris County Sheriff's Office does not routinely inform prosecutors of internal investigations into jailers' actions that are directly connected to criminal allegations against an inmate, even when disciplinary action is issued against jail staff that is related to those charges.

71.    When jailers file charges against inmates, the allegations are typically reviewed and accepted within a day by the Harris County District Attorney's Office intake division.  By contrast, the Sheriff's internal investigation into the actions of jail staff takes an average of eight months.  These investigations sometimes find misconduct or inconsistencies on the part of the jailer well after an inmate has been convicted of a related charge.

72.    In 2011, Norman Hicks was an inmate in the Harris County Jail.  Other inmates pleaded unsuccessfully with jailers to have Hicks transferred to the jail's Mental Health Unit.  Hicks was housed in the jail's "general population" despite jail intake workers' determination that he suffered from severe mental disabilities including bipolar disorder and schizophrenia.  Hicks died after being assaulted by a jail guard; the death was ruled a homicide.

73.     In 2014, Drissa Pickens was an inmate in the Harris County Jail when she got into a verbal dispute with a jailer.  In retaliation, the jailer allowed a violent inmate to brutalize Pickens, and stood by during the assault without coming to Pickens' rescue.

74.     At any given time, approximately 2,000 Harris County Jail inmates receive psychotropic medications, yet there are only 404 beds in the jail's Mental Health Unit.   There is an obvious need to train and supervise jail employees (even those working outside the Mental Health Unit) in the safe and humane handling of inmates experiencing acute emotional distress, but such training and supervision are deficient, inadequate, or nonexistent for many jail employees.

75.     Harris County jailers usually face no criminal charges even when they use excessive force against inmates.  Most jailers disciplined for abuse of authority or unnecessary force received short suspensions.

76.     The Harris County Jail's policy, pattern, custom, and/or practice for booking inmates into the Harris County Jail requires jail employees to identify all persons as defendants (charged with specific offenses) in the jail's computer system, whether or not the inmates are actually charged with any crime or wrongdoing.  This is done even though state law and other known information put the Sheriff on actual and constructive notice that innocent witnesses will be and are held in the custody of the Sheriff.

77.     Harris County's policy, pattern, custom, and/or practice is to deny provision of appointed counsel to indigent persons deprived of their liberty as

"attached" material witnesses, even though state law and other known information put the County Officials on actual and constructive notice that such persons will be and are deprived of their liberty in Harris County, and that such persons will be and are held in the Harris County Jail for extended periods of time.

78.    At the time of Jane Doe's illegal confinement, detention officers' starting pay was $18 per hour, less than any other county worker except entry-level clerks, and the minimum hiring age was 18.  The guards were forced to work mandatory overtime.  Jailers needed only 92 hours of training, which they were allowed to complete within a year.

79.    At the time of Jane Doe's illegal confinement, jail new-hires were allowed to complete their job training online.

### V. CAUSES OF ACTION—42 U.S.C. §1983

80.    Plaintiff incorporates by reference all of the preceding paragraphs.

81.    Defendants are liable under 42 U.S.C. §1983 because they were acting under color of state law when they deprived Jane Doe of constitutional rights provided by federal law.

82.    Jane Doe had a Fourth Amendment Right protecting against unreasonable searches and seizures.

83.    Jane Doe had a Sixth Amendment right to counsel.

84.    Jane Doe had a Fourteenth Amendment right to due process.

A.    Unconstitutional Seizure and Arrest

85.    Jane Doe had a right under the Fourth and Fourteenth Amendments to be free from unconstitutional seizure and arrest.

86.    Defendants and their co-conspirators acted with deliberate indifference to Jane Doe's right to be free from unconstitutional seizure and arrest.

87.    Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the right to be free from unconstitutional seizure and arrest.

88.    Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights also resulted from a failure to train, supervise, and/or discipline in the avoidance of unconstitutional seizure and arrest.

B.    Failure to Provide Considerate, Dignified, Safe, and Less Restrictive Treatment

89.    As someone neither accused nor convicted of a criminal offense or rule violation of any kind, and having a serious mental disability, Jane Doe had a right under the Fourteenth Amendment to more considerate, dignified, safe, and less restrictive, treatment than that utilized by the Harris County Sheriff for warehousing pretrial detainees and convicted criminals.

90.    The Defendants and their co-conspirators treated Jane Doe with deliberate indifference to her right to considerate, dignified, safe, and less restrictive treatment.

91.    Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the need to provide considerate, dignified, safe, and less restrictive treatment to "attached" material witnesses and other non-accused individuals who are being held in the custody of the Sheriff.

92.    Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights also resulted from a failure to train, supervise, and/or discipline in the need to provide considerate, dignified, safe, and less restricted treatment to "attached" material witnesses and other non-accused individuals who are being held in the custody of the Sheriff.

C.    Failure to Provide for Medical and Psychological Treatment and Care—Generally

93.    Jane Doe had the need for medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care.

94.    Jane Doe had a right under the Fourteenth Amendment to medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care.

95.    The Defendants and their co-conspirators treated Jane Doe with deliberate indifference to her right to medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care.

96.    Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights resulted from a policy, pattern, custom and/or practice of

deliberate indifference to the serious medical and psychological needs of inmates, including the need to provide living conditions conducive to treating and caring for inmates with mental and psychological disabilities.

97.     Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights also resulted from a failure to train, supervise, and/or discipline jail employees in the safe and humane handling of mentally ill inmates experiencing acute emotional distress.

D.      <u>Failure to Provide for Medical and Psychological Treatment—Specifically to One Accused of No Crime or Wrongdoing.</u>

98.     Jane Doe had the need for medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care.

99.     As someone charged with no crime or wrongdoing, Jane Doe had a right to a greater level of medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care, than someone confined as a pretrial detainee or convicted criminal.

100.    The Defendants and their co-conspirators treated Jane Doe with deliberate indifference to her need for, and entitlement to, a higher level of medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care, than someone confined as a pretrial detainee or convicted criminal.

101.    Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights resulted from a policy, pattern, custom and/or practice of

deliberate indifference to the level of treatment and care required for the serious medical and psychological needs of persons accused of no crime or wrongdoing who are held in the custody of the Sheriff.

102.   Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights also resulted from a failure to train, supervise, and/or discipline jail employees in the safe and humane handling of mentally ill inmates experiencing acute emotional distress.

E.     Failure to Protect from Violent Inmates

103.   Jane Doe had a right under the Fourteenth Amendment to be protected from violent inmates while confined in the Harris County Jail.

104.   The Defendants and their co-conspirators treated Jane Doe with deliberate indifference to her need to be protected from violent inmates.

105.   Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the need to protect vulnerable inmates from violent inmates.

106.   Defendants' and their co-conspirators violations of Jane Doe's constitutional rights resulted from a failure to train, supervise, and/or discipline jail employees in the need to protect vulnerable inmates from violent inmates.

F.     Unreasonable and Excessive Force

107.   Jane Doe had a right under the Fourth Amendment to be free from unreasonable force.

108.   Jane Doe had a right under the Fourteenth Amendment to be free from excessive force.

109.   The Defendants and their co-conspirators treated Jane Doe with deliberate indifference to her right to be free from unreasonable, and excessive, force.

110.   Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the need to protect inmates generally, and mentally ill inmates specifically, from the use of unreasonable, and excessive, force by jail staff.

111.   Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights also resulted from a failure to train, supervise, and/or discipline jail employees, generally in the proper use of force, and specifically in the safe and humane handling of mentally ill inmates experiencing acute emotional distress.

G.   Malicious Prosecution

112.   Jane Doe had a right under the Fourth Amendment to be free from malicious prosecution.

113.   Defendants and their co-conspirators treated Jane Doe with deliberate indifference to her right to be from malicious prosecutions.

114.   Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights resulted from a policy, pattern, custom and/or practice of

deliberate indifference to the need to protect inmates from malicious prosecutions, including those brought to cover up uses of excessive force by jail staff.

115.   Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights also resulted from a failure to train, supervise, and/or discipline jail employees in the appropriate and constitutionally sound response to physical incidents involving mentally ill inmates experiencing acute emotional distress.

H.   Defamation

116.   Jane Doe had a right under the Fourteenth Amendment to be free from defamation, to-wit: being falsely labeled "an accused sex offender arrested and held upon probable cause," while confined in the Harris County Jail.

117.   The Defendants and their co-conspirators treated Jane Doe with deliberate indifference to her right to be free from defamation, and this caused jail employees, jail medical/psychiatric personnel, and the "Intake Division" of the Harris County District Attorney's Office, to subject Jane Doe to mistreatment, neglect, and abuse while she was confined in the Harris County Jail.

118.   Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the reputation and safety of persons, including material witnesses accused of no crime or wrongdoing, held in the custody of the Sheriff.

I.    Deprivation of the Right to Counsel

119.   Jane Doe had a Sixth and Fourteenth Amendment right to counsel prior to, and upon, being ordered held in the custody of the Sheriff.

120.   Defendants Harris County and Nicholas Socias, and their co-conspirators, treated Jane Doe with deliberate indifference to her right to counsel prior to, and upon, her being ordered held in the custody of the Sheriff for an extended period of time.

121.   Defendants' and their co-conspirators' violations of Jane Doe's constitutional rights resulted from a policy, pattern, custom and/or practice of deliberate indifference to the right to counsel, of persons ordered held as "material witnesses" in the custody of the Sheriff.

## VI. DAMAGES

122.   As a result of the actions and circumstances described above, Plaintiff has suffered injuries and damages including but not limited to one or more of the following:

      a.    Past and future physical injuries and impairment;

      b.    Past and future mental injuries and impairment;

      c.    Past and future pain and suffering;

      d.    Past and future mental anguish, emotional distress, anger, and humiliation;

      e.    Past and future physical discomfort and/or inconvenience;

      f.    Past and future economic losses and loss of earning capacity; and

g.      Past and future injury to good name and reputation.

## VII. PUNITIVE DAMAGES

123.   Plaintiff requests punitive damages against each individually-named defendant.

## VIII. ATTORNEY'S FEES

124.   Plaintiff is entitled to recover attorneys' fees and costs under 42 U.S.C. §§1983 and 1988.

## IX. JURY TRIAL

125.   Plaintiff demands trial by jury on all issues triable to a jury.

## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

a.      Enter judgment and award damages for Plaintiff against the Defendants, jointly and severally;

b.      Find that Plaintiff is the prevailing party in this case and award attorneys' fees and costs and all litigation expenses, pursuant to federal and state law, as noted against the Defendants;

c.      Award pre- and post-judgment interest;

d.      Award punitive damages against all individually-named Defendants and for Plaintiff.

e.      Award costs of court; and

f.      Grant such other and further relief as appears reasonable and just, to which Plaintiff shows herself entitled.

Respectfully submitted,

SEAN BUCKLEY & ASSOCIATES

/s/ Sean Buckley
Sean Buckley
State Bar No. 24006675
770 South Post Oak Lane, Ste. 620
Houston, Texas  77056
TEL:  713-380-1220
FAX:  713-552-0746
Email: buckleyfirm@gmail.com

Attorney in charge for Plaintiff