**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JANE DOE, | § | |
| *Plaintiff* | § | |
| | § | CIVIL ACTION NO: 4:16-cv-2133 |
| v. | § | |
| | § | |
| SHERIFF HICKMAN | § | |
| In his Official Capacity, et al. | § | (JURY TRIAL) |
| *Defendants* | § | |

**PLAINTIFF'S THIRD AMENDED COMPLAINT**

TO THE HONORABLE JUDGE SIM LAKE OF THE UNITED STATES DISTRICT COURT SITTING IN  THE SOUTHERN DISTRICT OF TEXAS:

Plaintiff respectfully comes before this Honorable Court complaining pursuant to 42 U.S.C. § 1983, the United States Constitution, the Americans with Disabilities Act, and § 504 of the Rehabilitation Act that Defendants (1) unconstitutionally deprived Plaintiff of (a) her protected liberty interests and (b) right to counsel and (2) failed or refused to provide her with even a scintilla of reasonable medical care.

## I.      SUMMARY OF THE CASE

1.  Plaintiff was a rape victim and chose to testify against her rapist at trial.

2.  Plaintiff suffered a mental breakdown during said testimony.

3.  Defendants caused Plaintiff to be (a) seized under color of state law; (b) transferred to a hospital and jail; (c) classified as a sexual offender; (d) assaulted (twice), and (e) denied (i) medical care, (ii) reasonable accommodations for her known disability, (iii) reasonable conditions of confinement, (iv) access to counsel; and (v) protection.

4.  Defendants' conduct caused Plaintiff to suffer extreme distress and harm in a manner that shocks the conscience and is unconstitutionally repugnant to civilized society.

5.  No one had any arguable right or justifiable cause to harm Plaintiff under these facts.

1

## II.      <u>SUMMARY OF MATERIAL AMENDMENTS</u>

6.  Plaintiff herein adds the following facts (and allegations based thereon).

7.  Devon Anderson released a public statement on <u>www.youtube.com</u> which contained the following statements:

   a.  "I've been asked by many what the real facts of this case are."

   b.  "I've decided to share the real facts publicly."

   c.  "The details are heart-breaking."

   d.  "[Plaintiff] suffers from mental illness."

   e.  Plaintiff was the prosecution's "only eye-witness."

   f.  "A deputy constable swore out a mental health warrant."

   g.  "The prosecutor attempted to find an alternative to jail by calling all local shelters that he knew of but none could take her in."

   h.  "The system broke down."

   i.  "[Plaintiff] was not placed in the mental health unit and did not receive the care in jail that the prosecutor repeatedly requested."

   j.  "She might have killed herself and the rapist would have gone on to rape again and again."

8.  Sheriff Ron Hickman made the following public statements:

   a.  Plaintiff "was given mental health treatment the entire time she was in the jail.";

   b.  "Due to the state's new screening form, we spend a considerable amount of time—we actually spend eight hours with every inmate going through the various screening issues: mental health, suicide prevention, medical

health, TB tests, chest x-rays, veterans' issues.  So we spend a lot of time screening from the very front end."

c.  "I've testified three times before the Texas Legislature just this year about the need for them to increase the—their share of the burden of mental health in this state.  The State's only increased its number of beds at the state level by eight in the last ten years.  So the absence of federal funding at the state level, whether its federal or state, pushes those individuals down to the county."

d.  "A trigger event brings them inside the county jail where we wind up having to deal with it.  About 28 percent of the inmates inside the jail are on psychotropic medication.  So it's a reflection of what's going on in our communities today."

e.  "Every pay period is costing us $800,000 in overtime."

f.  "[Plaintiff] was released from jail within six hours of the time I was notified of it.  And we look at that incident.  Obviously, we did the best we could, but there's always room for improvement.  There's room for improvement on a lot of things."

g.  "What we did immediately was got with the people who were over the jail and built a policy so that when a person comes to the jail who's not on criminal charges, they're on an attachment from a court, then we set up a process so that we know about it and try to make housing consistent with their situation"; and

    h.   "When we met with the county attorney and the D.A., she was released within six hours.  You know, to say that you can do all kinds of other things during that 20 days, that's great.  But remember, we're sheriff.  We're not king of the world.  You know, to say that you can do a lot of the things that you would like to do is wonderful; but we have to remain within the rules that you're given within that job."

9.   Defendant Socias has publicly said:

    a.   that as soon as he found out Plaintiff was in jail, he immediately tried to get her housed in the mental health unit;

    b.   Harris County jail staff rebuffed his efforts to put Plaintiff in the mental health unit and said she did not need to be housed in said unit;

    c.   he responded by telling Harris County jail staff that not placing her in the mental health unit was unacceptable because she needed further treatment;

    d.   he tried to find an outside facility to take Plaintiff but that none would; and

    e.   Plaintiff was in her situation because she was a suicide risk, had mental health problems, and was a victim.

10. These statements demonstrate that even with purported notice of Plaintiff's disability (and needs) via a Harris County prosecutor who claims to have been advocating on her behalf, Harris County did the best it could and was still unable or unwilling to accommodate any of Plaintiff's known needs, classify her in any constitutionally reasonable manner, or provide a method through which jail staff could have assisted her even if they had chosen to do so.

11. These statements further evidence Defendant Harris County's knowledge that the State was not doing anything to assist them, that they had a responsibility to deal with the mental health needs of its inmate population, and that they were choosing to spend $800,000 per pay period on overtime rather than on providing constitutionally adequate (or even reasonable) accommodations to people like Plaintiff.

12. Due to the fact that this is the manner in which a mentally ill victim is treated by Harris County despite purportedly having a governmental advocate, Plaintiff alleges Harris County is culpable based on its policies, practices, customs, procedures, or protocols formulated, implemented, and ratified by its relevant policymakers which caused her to be unreasonably deprived of her constitutionally and federally protected rights under color of state law.

### III.    DEMAND FOR JURY TRIAL

13. Plaintiff respectfully demands a trial by jury.

### IV.    PARTIES

14. Plaintiff Jane Doe is a resident of Gregg County, Texas.

15. Defendant Nicholas Socias is being sued in his individual capacity and can be served through his attorney of record, Scott Durfee, 1201 Franklin, Suite 600, Houston, Texas 77002.

5

16. Defendant Harris County, Texas is a governmental body existing under the laws of the State of Texas and may be served with process through its attorney of record Lisa Hulsey, Assistant County Attorney, 1019 Congress, Fifteenth Floor, Houston, Texas 77002.

17. Defendant Taylor Adams, individually, is a contract employee of the Harris County Jail and may be served with process through her attorney of record Mary E. Baker, Assistant County Attorney, 1019 Congress, 15th Floor, Houston, Texas 77002.

## V.   JURISDICTION AND VENUE

18. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. §§ 1331 and 2201, 42 U.S.C. §§ 1983 and 1988, and supplemental jurisdiction under 28 U.S.C. § 1367(a), to hear Plaintiff's state law claims, if any.

19. Venue is proper in this Court under 28 U.S.C. § 1391(b) because the incidents at issue took place in Harris County, Texas, within the United States Southern District of Texas.

## IV.  FACTS

20. Plaintiff:

    a.   was raped, choked, beaten, and sodomized by a serial rapist in Houston in 2013;

    b.   was called to testify against said rapist;

    c.   at all times relevant hereto suffered from bipolar disorder;

    d.   at all times relevant hereto suffered from symptoms associated with schizophrenia;

    e.   clearly suffered from mental illness to any and all reasonable observers at all times relevant hereto;

    f.   was psychologically vulnerable at all times relevant hereto;

    g.   was plainly psychologically vulnerable to any and all lay persons who saw her at all times relevant hereto;

    h.   testified against her rapist in 176th District Court in Harris County, Texas;

    i.   lived in Longview, Gregg County, Texas at the time of her rapist's trial on or about December 7, 2015;

    j.   was visited by Harris County District Attorney investigators at her home in Longview, Texas on or about December 6, 2015 and transported thereby to Houston to testify;

    k.   was emotionally unprepared to confront her attacker in open court;

    l.   suffered a mental breakdown during her testimony on December 8, 2015;

    m.  urinated on herself in front of Harris County personnel (including Defendant Socias) during her service as a witness in the trial of her rapist;

    n.   was an egg-shell Plaintiff at all times relevant hereto; and

    o.   was transported by ambulance to St. Joseph Medical Center in Houston, Texas for evaluation and treatment.

21. Based thereon, the presiding judge ordered a recess until January 2016.

22. Harris County personnel (including but not limited to Assistant District Attorney Nicholas Socias ["ADA Socias"]):

    a.   conspired to have Plaintiff seized and detained during said recess;

    b.   conspired to obtain an unauthorized court order to imprison Plaintiff in the Harris County Jail upon her discharge from St. Joseph Medical Center;

    c.   secured the issuance of a subpoena for an invalid address for an earlier trial date and never had Plaintiff served therewith;

    d.   subsequently failed to issue (much less serve) a valid subpoena listing Plaintiff's address in Gregg County for the actual trial date;

    e.   knew Plaintiff was not a resident of Harris County;

    f.   is presumed to have known that Plaintiff's residence outside of Harris County deprived the trial court of jurisdiction to grant an attachment Order;

    g.   knew he did not satisfy the Texas Code of Criminal Procedure's plain language requirement that an out-of-county witness must be under a subpoena before an attachment order can issue;

    h.   was incapable of satisfying said Section's plain-language requirement because Plaintiff:

        i.   was not subject to a valid subpoena; and

        ii.   was not a resident of Harris County.

    i.   obtained an unauthorized Order of attachment directing the Harris County Sheriff to take Plaintiff into custody upon her discharge from St. Joseph Medical Center;

j.   obtained said attachment Order while Plaintiff was unrepresented by counsel;

k.   obtained said attachment Order without providing Plaintiff with notice or an opportunity to be heard;

l.   knew at all relevant times that said Order was invalid, that Plaintiff was unrepresented by counsel, and that Plaintiff was not given notice or an opportunity to be heard prior to the Order being issued (despite the fundamental and material effect thereof on her well-established constitutional rights);

m.   knew Plaintiff received mental health treatment at St. Joseph Medical Center;

n.   knew Plaintiff was being transferred to Harris County's custody after she was discharged from St. Joseph Medical Center;

o.   knew Plaintiff was the subject of medical records during her stay at St. Joseph Medical Center containing (*inter alia*) her diagnosis, prognosis, and recommendations;

p.   deliberately refrained from taking any action to ensure that Harris County jail personnel were aware of Plaintiff's disabilities at all times relevant hereto;

q.   deliberately refrained from taking any act to ensure that the trial court was aware Plaintiff was not a resident of Harris County and not subject to a served subpoena;

r.  deliberately refrained from informing the trial court that Plaintiff's mental condition had improved after her release from St. Joseph Medical Center, thereby making the previously signed attachment order even more unnecessary and inappropriate.

s.  acted in conformity with Harris County's policy, practice, procedure, custom, protocol, or training when they failed or refused to take any action to ensure that Harris County jail personnel were aware of Plaintiff's disabilities at all times relevant hereto;

t.  acted in conformity with Harris County's policy, practice, procedure, custom, protocol, or training when they failed or refused to ensure that the trial court was aware Plaintiff was not a resident of Harris County and not subject to a served subpoena; and

u.  caused Plaintiff harm through their respective acts, omissions, and conspiracies.

23. At the time of Plaintiff's transfer to the Harris County jail, Harris County knew:

a.  she was transferred thereto from St. Joseph Medical Center with a diagnosis of psychosis, depression, and suicidal ideations;

b.  she had been at St. Joseph Medical Center for at least several days;

c.  she was taking Zyprexa, Ativan, Klonopin, and Ambien;

d.  she was bi-polar;

e.  she had made a genuine attempt at suicide less than two years prior;

f.  she was treated within Harris County for said suicide attempt; and

g.  the identity of her psychiatrist.

24. Plaintiff's ongoing harms from Defendants' acts include (but are not limited to):

    a.  difficulty controlling her emotions;

    b.  clinical depression;

    c.  exacerbated bi-polar/schizo-affective disorders;

    d.  uncontrolled bouts of anger;

    e.  emotional instability;

    f.  an overwhelming sense of helplessness, frustration, and fear which was a continuation of her rape;

    g.  having trouble conforming her conduct to the law;

    h.  having trouble conforming her conduct to social norms;

    i.  having trouble interacting with other individuals; and

    j.  having trouble with relationships of trust, particularly of persons in positions of authority or in uniform.

25. On December 9, 2015, ADA Socias:

    a.  visited Plaintiff at St. Joseph Medical Center; and

    b.  concluded that her condition had drastically improved since her mental breakdown.

26. The following day, ADA Socias sent the following email to Plaintiff's mother:

> I went to visit [Plaintiff] yesterday at the hospital and she was doing much better.  I spoke with the doctor there and . . . made sure he understood the entire situation.  They started medicating her and having her talk to the doctor.  I thought it would take longer to see any change but I was impressed with her improvement already.  She obviously wants out but I am making sure she is getting the best care we can give.  I will stop by again either today or tomorrow to make sure she is still ok going into the weekend.   The nurses all have my cell phone number so if

something happens they will call me, day or night, so I can go over there.

27. ADA Socias purposefully and deliberately:

    a.  refused to tell Plaintiff's mother that he had already obtained an Order jailing Plaintiff upon her discharge from St. Joseph Medical Center;

    b.  misrepresented material facts to Plaintiff's mother which were relied upon thereby; and

    c.  misrepresented material facts to the tribunal.

28. Defendant Socias was at all times relevant hereto bound by (*inter alia*) Rule 3.03(a) of the Texas Disciplinary Rules of Professional Conduct, which prohibits an attorney from knowingly:

    a.  failing "to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent act";

    b.  in an ex parte proceeding, failing "to disclose to the tribunal an unprivileged fact which the lawyer reasonably believes should be known by that entity for it to make an informed decision."

29. Defendant Socias had a duty to provide the court with said information until such remedial measures were no longer reasonably possible.

30. The circumstances herein made Defendant Socias' omissions the equivalent of an affirmative misrepresentation.

31. Defendant Socias violated said duties herein.

32. As a result of (and in reliance upon) ADA Socias' deliberate and purposeful deception, Plaintiff's mother refrained from taking any material action to ensure Plaintiff was released from Harris County's unconstitutionally obtained custody.

33. During Plaintiff's stay at St. Joseph Medical Center, ADA Socias and others:

    a.  conspired to use the unauthorized attachment Order to illegally obtain access to Plaintiff's individually identifiable health information (beyond the expressly limited purposes allowed by 45 C.F.R. 164.512(f));

    b.  engaged in said conspiracy without a validly obtained release;

    c.  did not obtain a valid release from Plaintiff at any time;

    d.  knew Plaintiff was incapable of providing legal consent;

    e.  upon information and belief criminally violated 42 U.S.C. 1320d-6 (prohibiting a person from obtaining, using, or disclosing unique medical identifiers or individually identifiable health information);

    f.  illegally monitored Plaintiff's care at St. Joseph Medical Center;

    g.  illegally learned of Plaintiff's discharge schedule; and

    h.  acted outside the prosecutorial function.

34. On December 18, 2015, Plaintiff:

    a.  was still at St. Joseph Medical Center;

    b.  was scheduled for release therefrom that day;

    c.  received a visit from Harris County District Attorney investigator Brandon Plagens (who was wearing a firearm);

    d.  was handcuffed by investigator Plagens;

    e.  was arrested by investigator Plagens;

    f.  was transported by investigator Plagens from St. Joseph Medical Center to the Harris County jail;

g.  did not consent to being handcuffed, detained, seized, arrested, or transported; and

h.  was completely bewildered as to the reason for being handcuffed, detained, seized, arrested, and transported.

35. Upon taking custody of Plaintiff, Sheriff's Department staff learned that she:

a.  was a victim witness;

b.  was not accused of any crime;

c.  was not accused of any wrongdoing;

d.  was mentally disabled; and

e.  was only recently discharged from a local hospital following in-patient mental health treatment.

36. Nevertheless, Harris County Sheriff's Department staff agreed and conspired with ADA Socias and investigator Plagens to book Plaintiff into the Harris County Jail under:

a.  color of state law; and

b.  the guise of Plaintiff being a properly "attached" material witness.

37. During the booking process, one or more Sheriff's Department employees (while utilizing and acting in conformity with Harris County's official policies, practices, customs, procedures, or protocols):

a.  entered Plaintiff's information into the computer system used by jail staff to identify, classify, and manage inmates;

b.  falsely entered Plaintiff's information in a manner deliberately calculated to identify her as a defendant in a sexual assault case;

c.  defamed Plaintiff to everyone who later utilized the computer system to gain information about her (which was the proximate cause of some of those people mistreating, neglecting, and/or abusing her while she was in Harris County's custody);

d.  learned Plaintiff had been recently discharged from St. Joseph Medical Center following in-patient treatment for acute symptoms of her mental disability;

e.  deliberately failed or refused to assign Plaintiff to the jail's Mental Health Unit;

f.  had actual or constructive notice that Plaintiff would be exposed to unconstitutional conditions without any reasonable or legitimate penological interests in support of same;

g.  were deliberately indifferent to Plaintiff's well-established constitutional and federally protected rights; and

h.  prevented Plaintiff from having access to:

    i.   reasonable conditions of confinement under the circumstances;

    ii.  reasonable medical care;

    iii. reasonable accommodations;

    iv.  counsel;

    v.   notice; and

    vi.  an opportunity to be heard concerning the deprivation of her well-established constitutional rights.

38. In furtherance of the conspiracy to control and dominate Plaintiff, ADA Socias:

15

    a.  contacted jail medical staff;

    b.  illegally obtained access to Plaintiff's individually identifiable health information without a validly obtained release; and

    c.  criminally (along with jail medical staff therein) violated 42 U.S.C. 1320d-6.

39. On December 19, 2015, Plaintiff's mother:

    a.  heard Plaintiff was confined in the Harris County Jail;

    b.  communicated with investigator Plagens;

    c.  informed investigator Plagens that she had just learned her daughter was in jail;

    d.  was informed by investigator Plagens that Plaintiff had recently been transferred to "MHMR in Harris County";

    e.  reasonably formed the opinion that Plaintiff was receiving medical attention based upon her conversation with investigator Plagens; and

    f.  relied upon the investigator Plagens' representations that Plaintiff was receiving medical attention to her (and Plaintiff's) material detriment.

40. While incarcerated in the Harris County Jail, Plaintiff:

    a.  was detained without probable cause to believe she had committed a crime;

    b.  was falsely labeled as a sexual assault defendant;

    c.  did not receive the stabilizing treatment she had received while at St. Joseph Medical Center;

    d.  did not receive reasonable medical care;

16

    e.   did not receive reasonable accommodations;

    f.   reported to a jailer that she needed someone to take her to get her medications;

    g.   was informed by said jailer, "That's not our job";

    h.   was taunted and harassed by her cellmates on account of her race;

    i.   pleaded with jail staff to transfer her to another pod;

    j.   reported to jail staff that her cellmates had threatened and mistreated her due to her race;

    k.   helplessly watched as said staff consistently ignored her increasingly urgent pleas for help and protection;

    l.   was aggressively assaulted by one of her cellmates;

    m.  was finally moved to a different pod as a result of said assault; and

    n.   received no assistance filing Felony Aggravated Assault charges against the violent inmate who had brutalized her despite her known disability.

41. On Christmas Eve 2015, Plaintiff's mother:

    a.   had become desperate to get her daughter get out of jail;

    b.   discussed the possibility of posting Plaintiff's bond with ADA Socias so that Plaintiff would be released by Christmas;

    c.   was informed by ADA Socias (via email) that if Plaintiff were bonded out and then failed to testify, then "things get very very bad for [Plaintiff] legally"; and

    d.  was informed by ADA Socias that if Plaintiff was bonded out of jail and failed to "stay medicated" and "[stay] out of trouble," whoever bonded her out of jail would be "on the hook" for $15,000;

    e.  relied on ADA Socias' improper legal advice (that was both outside the prosecutorial function and in the clear absence of all jurisdiction).

42. This legal advice was improper, misleading, erroneous, unethical and was given in furtherance of the conspiracy to control, dominate, and exploit Plaintiff's known, open, and obvious disability.

43. In this manner, ADA Socias systematically exploited:

    a.  the prestige and power of his office;

    b.  the fact that neither Plaintiff nor her mother were represented by counsel (because under Texas law, bond forfeiture can only result from a failure to appear. Art. 22.01, Tex. Cd. Crim. Proc.  Tellingly, the amount of Jane Doe's bond was $10,000, not $15,000 as Nicholas Socias falsely claimed. In any event, the witness bond was unenforceable in forfeiture because it was unauthorized by any statute. Art. 22.03(1), Tex. Cd. Crim. Proc.);

    c.  Plaintiff's mental illness;

    d.  Plaintiff's mother's reliance upon his representations as a lawyer and a prosecutor; and

    e.  Illegal access to Plaintiff's mental health records for an improper purpose.

44. Plaintiff spent the Christmas and New Year holidays without a toothbrush, hairbrush, or towel simply because she was a rape victim who suffered from mental illness.

45. Defendants' unconscionable conduct further eroded Plaintiff's fragile mental state.

46. On December 28, 2015:

    a.   Plaintiff sought psychiatric help from the Harris County Jail medical staff;

    b.   said medical staff refused to provide Plaintiff with medical attention of any kind;

    c.   said medical staff told Plaintiff she was in jail because she was <u>charged with</u> committing Aggravated Sexual Assault;

    d.   said medical staff noted that Plaintiff suffered from the "confused" belief that she was the victim, rather than the defendant;

    e.   said medical staff noted that Plaintiff's confused belief reflected negatively on her "orientation" to reality;

    f.   said medical staff refused to provide Plaintiff with medical treatment because Harris County had a policy, procedure, practice, or custom which precluded said staff from knowing she was a victim; and

    g.   said medical staff's refusal to provide Plaintiff with medical treatment despite believing she was confused evidenced Harris County's policy, procedure, practice, or custom of refusing to provide reasonable medical care to inmates in the Harris County jail.

47. Plaintiff's incarceration under the circumstances herein caused her significant emotional distress and mental anguish.

48. On January 8, 2016:

    a.   the conditions in the Harris County Jail became too much for Plaintiff to bear;

    b.   Plaintiff suffered an acute psychiatric episode in her cell;

c.   Plaintiff began loudly pleading with God to come to her rescue;

d.   jail guards (including Defendant Taylor Adams) heard Plaintiff's pleas;

e.   jail guards (including Defendant Adams) came to investigate the disturbance;

f.   jail guards (including Defendant Adams) knew, should have known, or must have known of the fact that Plaintiff was experiencing acute symptoms of a mental disability;

g.   jail guards (including Defendant Adams) refused to provide Plaintiff with (or summon) any medical care;

h.   jail guards (including Defendant Adams) deliberately and consciously ignored all well-established medical standards for the safe and humane treatment of mentally disabled patients experiencing acute emotional distress;

i.   Plaintiff suffered a panic attack as a result;

j.   Plaintiff became hysterical and physically uncontrollable as a result;

k.   jail guards (including Defendant Adams) escalated the encounter into a physical confrontation;

l.   Defendant Adams punched Plaintiff in the face with a closed fist;

m.   Defendant Adams bruised Plaintiff's eye socket;

n.   at least one jail guard slammed Plaintiff to the floor and painfully twisted her arms behind her back to handcuff her as she helplessly wept; and

o.   Defendant Adams (in an attempt to cover up the brutal abuse of Plaintiff and the failure to provide prompt medical treatment for her acute mental

disability) conspired with Harris County Detention Deputy Narmel Mills and other unknown Harris County Sheriff's Office officials and staff— contacted the Harris County District Attorney and requested assault charges be filed against Jane Doe.

49. Despite being deliberately thrown into a snakepit via (*inter alia*) deprivation of Plaintiff's well-established rights to due process and counsel, Assistant District Attorney Leah Fielder filed felony Assault charges against Plaintiff on behalf of yet another abuser, Defendant Adams.

50. From January 8, 2016 through January 14, 2016, the Harris County District Attorney's Office continued to prosecute the felony assault case against Plaintiff despite knowing:

      a.  she was illegally imprisoned;

      b.  she was being consistently denied due process;

      c.  she was being consistently denied access to counsel;

      d.  she was being consistently denied the beneficial efforts of her mother; and

      e.  that there had been a troubling pattern in recent years of Harris County jail staff filing questionable Assault charges against inmates to cover up excessive uses of force against the inmates.

51. Plaintiff's awareness that the government officials she had voluntarily elected to assist were prosecuting her for a felony criminal offense that could send her to prison for a decade caused her significant emotional distress and mental anguish, particularly in combination with jail medical staff's continued insistence that she was also charged with Aggravated Sexual Assault.

52. During Plaintiff's confinement in the Harris County Jail, Nicholas Socias and others in the Harris County District Attorney's Office:

    a.   were aware she was being abused;

    b.   were aware she was not receiving medical care; and

    c.   failed or refused to come to her aid.

53. On January 11, 2016:

    a.   the Harris County District Attorney's Office brought Plaintiff to court to continue testifying against her rapist;

    b.   Plaintiff was forced to appear in public with a black eye wearing someone else's ill-fitting   used clothes provided by the prosecutor with bright orange jail-issue rubber shoes; and

    c.   faced her rapist and testified about being raped, choked, beaten, and forcibly sodomized.

54. Three days later, on January 14, 2016 the Harris County District Attorney's Office finally dismissed the Felony Assault case against Plaintiff:

    a.   "in the interest of justice" and

    b.   on the explicit grounds that prosecutors "cannot prove the case beyond a reasonable doubt."

55. On January 14, 2016:

    a.   the trial judge presiding over the trial of Plaintiff's rapist issued an order releasing Plaintiff as a material witness; and

    b.   the Harris County Jail released Plaintiff from custody later that day.

56. As a rape victim, Plaintiff experienced the trauma of rape not just as a sexual violation, but more significantly as an overwhelming and terrifying sense of powerlessness, helplessness, hopelessness, lack of control, and an overall deprivation of her personal integrity.

57. Although Defendants and their co-conspirators did not sexually violate Plaintiff as her rapist did, their mistreatment of her otherwise re-victimized her in all the same ways.

58. Truly, the Defendants and their co-conspirators re-raped Plaintiff.

59. When Defendants and their co-conspirators abused, neglected, and mentally tortured Plaintiff in the Harris County Jail for one month, they destroyed her recovery and caused her permanent and severe mental and emotional damage including:

    a.   acute Post-Traumatic Stress Disorder (P.T.S.D.);

    b.   increased and uncontrolled depression;

    c.   unshakable feelings of anger;

    d.   recurrent fears of abandonment; and

    e.   other ongoing and debilitating problems.

60. Because Plaintiff already suffered from a vulnerable and fragile mental state at the time Defendants and their co-conspirators mistreated her, her injuries are extreme and will likely torment her for the rest of her life.

61. During Plaintiff's confinement in the Harris County Jail, Harris County Jail staff:

    a.   treated Plaintiff's violent rapist more humanely than they treated Plaintiff;

    b.   provided Plaintiff's rapist with medical care;

    c.   did not psychologically torture Plaintiff's rapist;

    d.  did not permit other inmates to brutalize Plaintiff's rapist; and

    e.  did not permit its staff to physically assault Plaintiff's rapist.

62. Defendants and their co-conspirators deliberately, willfully, and/or flagrantly:

    a.  violated Plaintiff's right to due process by depriving her of her rights under the Texas Crime Victims Rights Act (Tex. Code Crim. Proc. § 56.02) without first providing her notice or an opportunity to be heard;

    b.  committed the Texas criminal offense of "Official Oppression" when they victimized Plaintiff;[1] and

    c.  committed the federal criminal offense of "Conspiracy Against Rights" when they victimized Plaintiff.[2]

63. Defendants' and their co-conspirators' conduct toward Plaintiff shocks the conscience of any fair-minded, dispassionate, and clear-eyed individual.

64. There is a widespread history of Harris County officials acting with deliberate indifference to the constitutional rights of Harris County Jail inmates.

65. Harris County officials:

    a.  (rather than the state of Texas) directly remunerate employees within the Harris County District Attorney's Office in accordance with state law

---

[1]    Tex. Penal Code § 39.03.  OFFICIAL OPPRESSION.  (a) A public servant acting under color of his office or employment commits an offense if he: (1) intentionally subjects another to mistreatment or to arrest, detention, search, seizure, dispossession, assessment, or lien that he knows is unlawful; (2) intentionally denies or impedes another in the exercise or enjoyment of any right, privilege, power, or immunity, knowing his conduct is unlawful; . . . (b) For purposes of this section, a public servant acts under color of his office or employment if he acts or purports to act in an official capacity or takes advantage of such actual or purported capacity.

[2]    18 U.S.C. § 241—Conspiracy Against Rights.  If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States, or because of his having so exercised the same . . . — They shall be fined under this title or imprisoned not more than ten years, or both . . .

(thereby making them county employees, particularly when they are performing administrative and/or ministerial acts);

b.  have known for years that mentally ill people confined in the Harris County Jail are regularly abused, mistreated, and neglected;

c.  disingenuously blame these problems on budgetary constraints (at least some of which they have unilaterally created);

d.  are the ones who control the administrative policy "valves" that keep the Harris County Jail full;

e.  deliberately and arbitrarily constrain the jail's operating budget so that available funding can be funneled to other county projects with higher political value;

f.  are aware of the facts herein;

g.  has made no efforts to repudiate the conduct of its employees herein;

h.  approves of its employees' conduct herein;

i.  has ratified its employees' conduct herein;

j.  caused Plaintiff to be deprived of her constitutional rights through plainly inadequate policies, procedures, practices, customs, or trainings;

k.  created, implemented, ratified, or approved Harris County's policies, practices, procedures, customs, or trainings which caused Plaintiff to be classified as a sexual assault defendant, jailed in the general population, denied reasonable accommodations, and assaulted (twice) despite having actual notice from a government lawyer that Plaintiff was mentally ill and required housing in the mental health unit.

25

66. In 2009, the United States Department of Justice concluded, after its own year-long investigation, that Harris County Jail inmates' constitutional protections had been violated by excessive violence and by substandard medical care that led to an "alarming" number of prisoner deaths.

67. Beginning in October 2015, the *Houston Chronicle* published a multi-part investigative series showing a widespread and ongoing pattern of inmate mistreatment inside the Harris County Jail.

68. On November 21, 2015, the *Houston Chronicle* reported that the U.S. Department of Justice continues to scrutinize shortfalls in mental health treatment and on jailers' use of force against disruptive prisoners.

69. Between 2009 and November 2015, Harris County jailers:

    a.  were disciplined more than 120 times for misconduct involving abuse of authority or misuse of force including beating, kicking and choking inmates;

    b.  were involved in at least 13 known instances in which they failed to seek medical attention for inmates; and

    c.  were involved in at least eight separate known incidents for misconduct involving excessive force or failure to report use of force, for choking, punching, or kicking inmates; in each of these cases the detention officer also initiated criminal charges against the inmate and three of the eight inmates went to prison as a result of the charges.

70. On December 22, 2015, the *Houston Chronicle* publicly reported that the Harris County Sheriff's Office does not routinely inform prosecutors of internal

investigations into jailers' actions that are directly connected to criminal allegations against an inmate, even when disciplinary action is issued against jail staff that is related to those charges.

71. When jailers file charges against inmates, the allegations are typically reviewed and accepted within a day by the Harris County District Attorney's Office intake division.

72. By contrast, the Harris County Sheriff's internal investigation into the actions of jail staff takes an average of eight months.

73. These investigations sometimes find misconduct or inconsistencies on the part of the jailer well after an inmate has been convicted of a related charge.

74. Harris County's unconstitutional pattern, practice, custom, policy, or procedure of refusing or failing to provide the People with constitutionally adequate medical/mental health care is evidenced by (inter alia):

   a. In 2011, Norman Hicks was an inmate in the Harris County Jail. Other inmates pleaded unsuccessfully with jailers to have Hicks transferred to the jail's Mental Health Unit. Hicks was housed in the jail's "general population" despite jail intake workers' determination that he suffered from severe mental disabilities including bipolar disorder and schizophrenia. Hicks died after being assaulted by a jail guard; the death was ruled a homicide;

   b. In 2014, Drissa Pickens was an inmate in the Harris County Jail when she got into a verbal dispute with a jailer. In retaliation, the jailer allowed a violent inmate to brutalize Pickens, and stood by during the assault without coming to Pickens' rescue; and

27

    c. At any given time, approximately 2,000 Harris County Jail inmates receive psychotropic medications, yet there are only 404 beds in the jail's Mental Health Unit.

75. There is an obvious need to train and supervise jail employees (even those working outside the Mental Health Unit) in the safe and humane handling of inmates experiencing acute emotional distress, but such training and supervision are deficient, inadequate, or nonexistent for many jail employees.

76. Harris County jailers usually face no criminal charges even when they use excessive force against inmates. Most jailers disciplined for abuse of authority or unnecessary force received short suspensions.

77. The Harris County Jail's policy, pattern, custom, and/or practice for booking inmates into the Harris County Jail requires jail employees to identify all persons as defendants (charged with specific offenses) in the jail's computer system, whether or not the inmates are actually charged with any crime or wrongdoing. This is done even though state law and other known information put the Sheriff on actual and constructive notice that innocent witnesses will be and are held in the custody of the Sheriff.

78. Harris County's policy, pattern, custom, and/or practice is to deny provision of appointed counsel to indigent persons deprived of their liberty as "attached" material witnesses, even though state law and other known information put county officials on actual and constructive notice that such persons will be and are deprived of their liberty in Harris County, and that such persons will be and are held in the Harris County Jail for extended periods of time.

79. At the time of Jane Doe's illegal confinement, detention officers' starting pay was $18 per hour, less than any other county worker except entry-level clerks, and the minimum hiring age was 18.  The guards were forced to work mandatory overtime. Jailers needed only 92 hours of training, which they were allowed to complete within a year.

80. At the time of Plaintiff's illegal confinement, jail new-hires were allowed to complete their job training online.

81. On or about July 20, 2016, Devon Anderson publicly stated:

   a. "She [Jane Doe] was committed to a psychiatric hospital because she was a danger to herself";

   b. "[B]ecause of overcrowding, she [Jane Doe] was released ten days later";

   c. "At that point, the decision was made to put her in custody for her own safety and to ensure her appearance at trial, which had been recessed";

   d. "The system broke down in the jail";

   e. "She [Jane Doe] did not receive the proper care in the Harris County Jail";

   f. "[W]e recognize that because of the holidays, the lack of resources that were available, the prosecutor made countless phone calls trying to find another place to put her, we have reached out to mental health organizations around town"; and

   g. "[W]e are going to be engaging in training to – for prosecutors and staff to learn how to deal with someone in a mental crisis – mental health crisis."

82. Upon information and belief, Defendant Harris County:

    a.  had multiple people interact with Plaintiff before she was classified and assigned to a unit within the Harris County jail;

    b.  had multiple opportunities to ascertain that Plaintiff was a vulnerable material witness/rape victim rather than an alleged criminal;

    c.  failed to have any policies, practices, customs, or procedures which reasonably ensured that anyone who learned Plaintiff was a vulnerable material witness/rape victim (rather than an alleged criminal) conveyed that information to the persons with decision-making power over Plaintiff's classification/assignment within the Harris County jail.

## V. CAUSES OF ACTION

### COUNT 1 – 42 U.S.C. § 1983 (INDIVIDUAL LIABILITY)

**Plaintiff alleges Defendant Socias violated her clearly established rights under the Fourth Amendment to the United States Constitution (via the Fourteenth Amendment) to remain free from unreasonable seizure**

83. The foregoing paragraphs are incorporated herein as if quoted verbatim.

84. Plaintiff's well-established constitutional right to remain free from unreasonable seizures was at all times relevant hereto:

    a.  secured to her by the Fourth Amendment to the United States Constitution;

    b.  violated by Defendant Socias; and

    c.  clearly established within both the Fifth Circuit and the Southern District of Texas.

85. Defendant Socias violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures by securing process from the trial court that he knew was illegal and without personal jurisdiction.

86. Specifically, Defendant Socias acquired an Order of attachment by deliberately failing to inform the trial court that:

    a. Plaintiff was not a resident of Harris County; and

    b. Plaintiff had never been served with a valid subpoena.

87. Defendant's affirmative refusals in these respects were performed in the clear absence of all jurisdiction because no authority arguably permits him to deliberately withhold material and dispositive information from a judge (or lie thereto) in order to secure the illegal seizure of the People without notice, the opportunity to be heard, and/or the right to counsel.

88. Defendant Socias had a ministerial duty separate and apart from his prosecutorial function to diligently review paperwork to ensure that the details therein (*e.g.*, Plaintiff's residence within the county and service thereon) were accurate.

89. Defendant Socias was performing an investigative function at the time(s) (prior to acquiring an attachment Order) that he:

    a. sought to ascertain whether or not Plaintiff was a resident of Harris County as required by Texas law; and

    b. sought to ascertain whether or not Plaintiff had been served with a subpoena as required by Texas law.

90. Defendant Socias was also performing:

    a.  an investigative/non-prosecutorial function when he investigated when Plaintiff would be released from St. Joseph Medical Center; and

    b.  an administrative/non-prosecutorial function when he instructed, caused, or allowed investigator Plagens to pick Plaintiff up from St. Joseph Medical Center and transfer her to the Harris County Jail.

91. Defendant's actions were the moving force behind Plaintiff's injuries.

92. Defendant's deliberately indifferent seizure of Plaintiff under these circumstances:

    a.  was plainly incompetent;

    b.  knowingly violated the law;

    c.  was predicated upon the patently unreasonable belief that he possessed a scintilla of colorable authority to detain Plaintiff as a material witness;

    d.  intentionally violated the law;

    e.  was based upon unreasonably mistaken beliefs;

    f.  was objectively unreasonable under the circumstances (particularly insofar as he knew Plaintiff was not a resident of Harris County, knew she had not been served, and knew, should have known, or must have known said fact divested the trial court of jurisdiction over her);

    g.  was performed while knowingly disregarding the obvious risk that Plaintiff would be improperly seized/arrested; and

    h.  evidences an unreasonable misunderstanding of Defendant's powers and responsibilities.

93. No reasonable Texas officer could ever believe the plainly and particularly pled facts herein constitute any (even arguably) constitutionally acceptable rationale to seize Plaintiff under said specific facts.

94. Defendant Socias was not even arguably allocated the necessary discretion to impermissibly deprive Plaintiff of her well-established right to protected liberty interests under the facts herein.

95. The signing of a facially valid attachment order under these circumstances cannot constitute an intervening cause for any purpose because Defendant Socias knowingly omitted material information from his argument to the trial court knowing said facts would have divested said court of jurisdiction as a matter of law.

96. Specifically, said Defendant withheld the material facts that Plaintiff was neither:

    a.   a resident of Harris County; nor

    b.   subject to a subpoena.

97. The Texas Code of Criminal Procedure requires that the subject of an attachment be:

    a.   a resident of the county in which the prosecution is being conducted; and/or

    b.   subject to a subpoena.

98. Therefore, the trial court lacked jurisdiction over Plaintiff as a matter of law.

99. Plaintiff's conduct does not even arguably constitute any recognized ground under Texas law (or any other known American state law) for arguably legitimate seizure.

100.  There was no cause of any kind to arrest Plaintiff.

101.  There was no reasonable suspicion to arrest Plaintiff.

102. Additionally and/or alternatively, Defendant Socias violated his well-established duty as an officer of the court to advise the trial court of a material change in circumstances surrounding the detention of a material witness secured via the trial court's Order.

103. Specifically, Defendant Socias deliberately refused to inform the trial court of the following material changes:

    a.  St. Joseph Medical Center released Plaintiff;

    b.  Defendant caused Plaintiff to be incarcerated upon her release from St. Joseph Medical Center;

    c.  Plaintiff had experienced improvement in her mental health (which Defendant Socias personally observed and commented upon in writing) while at St. Joseph Medical Center;

104. The existence and import of said duty was:

    a.  an administrative duty;

    b.  a ministerial duty; and/or

    c.  heightened by the circumstances surrounding Plaintiff's illegal detention.

105. Defendant Socias did not even arguably have the prerogative or power to determine how long Plaintiff should be jailed yet deliberately engaged in said *ultra vires* activity anyway.

106. Defendant Socias' conduct in jailing Plaintiff after her release from the hospital was in the clear absence of all jurisdiction and was deliberately indifferent to her well-established constitutional rights.

107. Plaintiff seeks punitive damages against Defendant because he:

a.   knew he lacked constitutional and statutory authority to have Plaintiff seized;

b.   acted with conscious indifference to the possibility that he was seeking to have a person seized contrary to the law of the land;

c.   acted with conscious indifference to the known fact that the trial court did not have jurisdiction over Plaintiff as a matter of law because she was not a resident of Harris County and was deprived of any and all opportunities to tell the trial court same; Defendant went so far as to have her locked away without any due process and deprived her of the possibility to be released by knowingly and deliberately lying to (and threatening) the one person who was interfering in Defendants' unconscionably abhorrent individually and collectively successful efforts to deprive Plaintiff of her well-established rights under color of state law;

d.   acted with reckless or callous indifference to Plaintiff's federally protected rights;

e.   recklessly violated Plaintiff's clearly established constitutional rights to remain free from unreasonable seizures through plainly unlawful conduct; and

f.   acted in a grossly negligent manner.

108. No reasonable officer in Defendant's position would ever believe they had constitutionally acceptable authority to seize Plaintiff under these circumstances because (*inter alia*):

    a. there was no crime;

    b. no evidence of a crime;

    c. no appearance of a crime;

    d. no probable cause to believe a crime occurred; and

    e. no arguable authority to seize Plaintiff.

109. Within the Fourth Amendment context, Defendant Socias' conduct was analogous to a police officer knowingly and deliberately withholding exculpatory information s/he knows exonerates an accused of all reasonable suspicion to believe they committed a crime.

110. Defendant Socias' relevant conduct was:

    a. outside the course and scope of his prosecutorial capacity;

    b. in the clear absence of all jurisdiction; and/or

    c. ministerial, administrative, or investigative (as opposed to prosecutorial).

111. Omitting material information which divests a trial court of jurisdiction is contrary to:

    a. the fundamental promises made by attorneys when then accept their responsibilities as advocates;

    b. the oath taken by Texas prosecutors when they accept their responsibilities as prosecutors;

    c.  ethics governing the profession of law (including, but not limited to, the Texas Disciplinary Rules of Professional Conduct); and

    d.  well-established protections enshrined by the Fourth Amendment to the United States Constitution.

112. Defendant Socias had no arguable jurisdiction to withhold material information from a trial judge in order to acquire fraudulent jurisdiction over Plaintiff under these circumstances.

113. Additionally and/or alternatively, Defendant Socias was not acting in his prosecutorial capacity when he made fraudulent representations to Plaintiff's mother that:

    a.  Plaintiff was receiving the best care possible;

    b.  Plaintiff would be in trouble if she failed to appear; and

    c.  Plaintiff's mother would be "on the hook" for $15,000 if Plaintiff failed to obey conditions of release.


## COUNT 2 – 42 U.S.C. § 1983 (INDIVIDUAL LIABILITY)

**Plaintiff alleges Defendant Socias violated her right to procedural due process when he deprived her of notice, the opportunity to be heard, and/or the right to counsel before having her committed under color of state law**

114. The foregoing paragraphs are incorporated herein as if quoted verbatim.

115. Plaintiff's well-established constitutional right to procedural due process was at all times relevant hereto:

    a.  secured to her by the Fourteenth Amendment to the United States Constitution;

    b.  violated by Defendant Socias; and

    c.  clearly established within both the Fifth Circuit and the Southern District of Texas.

116.  Due to the fact Defendant Socias had state authority to deprive persons of their liberty, the Constitution imposed upon him the State's concomitant duty to see that no deprivation occur without adequate procedural safeguards.

117.  Defendant Socias' deliberate refusal to inform the trial court that Plaintiff was neither a resident of Harris nor served with a subpoena ensured Plaintiff was deprived of her right to liberty without adequate procedural safeguards.

118.  Additionally, Defendant Socias' deliberate refusal to ensure Plaintiff received notice, an opportunity to be heard, and/or counsel before she was seized ensured that she was deprived of her right to liberty without adequate procedural safeguards.

119.  The private interest affected by the government action at issue was the improper and illegal seizure of Plaintiff without notice, the opportunity to be heard, counsel, or the trial court being informed of material facts (known to Defendant Socias at the time) which divested it of jurisdiction over Plaintiff.

120.  The risk of an erroneous deprivation under these circumstances was certain insofar as Texas statutes clearly and unambiguously deprived the trial court of jurisdiction to issue an Order of attachment if Defendant Socias had informed it that:

    a.  Plaintiff was not a resident of Harris County and

    b.  Plaintiff had never been served with a subpoena.

121.  The probable value of additional (and constitutionally required) procedural safeguards (*e.g.,* providing Plaintiff with notice, an opportunity to be heard, and/or

counsel) would have definitively precluded Defendant Socias from having Plaintiff committed insofar as it would have demonstrated Plaintiff was neither a resident of the county nor served with a subpoena.

122. The government's interest in failing to provide Plaintiff with these protections was minimal (as were the fiscal and administrative burdens that constitutionally adequate procedures would have required).

123. Defendant Socias' duty as a state official and attorney not to cause the violation of anyone's constitutional rights demanded that he advise the trial court of any substantial change in the circumstances which purportedly justified Plaintiff's seizure as a material witness.

124. Defendant Socias had a duty to provide the trial court with the information it needed to properly perform its adjudicative function.

125. Defendant Socias had a duty to inform  the trial court of material changes that would negate the necessity of an attachment order.

126. Despite such duties, Defendant Socias deliberately withheld both sets of said information from the trial court.

127. Violating solemn duties and oaths by withholding such information:

　　a.　is not intimately associated with the judicial phase of the criminal process;

　　b.　was not clearly protected by the well-established privilege in 1871 (when § 1983 was codified);

　　c.　perpetuates a systematic unfairness that cannot be tolerated;

　　d.　is not critical to the prosecutor's role in the criminal justice system; and

　　e.　does not involve substantial discretion.

128. No other mechanisms exist to prevent a prosecutor's knowing and deliberate withholding of material information that knowingly divests a trial court of jurisdiction to issue an Order of attachment.

129. The Texas Tort Claims Act does not permit Plaintiff a remedy for Defendant Socias' conduct herein.

130. Plaintiff seeks punitive damages against Defendant because he:

   a. knew he lacked constitutional and statutory authority to have Plaintiff seized under the circumstances herein;

   b. acted with conscious indifference to the possibility that he was seeking to have a person seized contrary to the law of the land;

   c. acted with conscious indifference to the known fact that the trial court did not have jurisdiction over Plaintiff as a matter of law because she was not a resident of Harris County and was deprived of any and all opportunities to tell the trial court same; Defendant went so far as to have her locked away without any process and deprived her of the possibility to be released by knowingly and deliberately lying to (and threatening) the one person who was interfering in Defendants' unconscionably abhorrent individually and collectively successful efforts to deprive Plaintiff of her well-established rights under color of state law;

   d. acted with reckless or callous indifference to Plaintiff's federally protected rights;

    e.   recklessly violated Plaintiff's clearly established constitutional rights to remain free from unreasonable seizures through plainly unlawful conduct; and

    f.   acted in a grossly negligent manner.

131. No reasonable officer in Defendant's position would ever believe they had constitutionally acceptable authority to seize Plaintiff under these circumstances because Defendant knew (but withheld) material facts which mandated that the trial court had no jurisdiction over her.

132. Defendant Socias' conduct in this respect was:

    a.   outside the course and scope of his prosecutorial capacity; and

    b.   in the clear absence of all jurisdiction.

133. Omitting material information which divests a trial court of jurisdiction is contrary to:

    a.   the fundamental promises made by attorneys when then accept their responsibilities as advocates;

    b.   the oath taken by Texas prosecutors when they accept their responsibilities as prosecutors;

    c.   ethics governing the profession of law (including, but not limited to, the Texas Disciplinary Rules of Professional Conduct); and

    d.   well-established protections enshrined by the Fourteenth Amendment to the United States Constitution.

134. Defendant Socias had no arguable jurisdiction to withhold material information from a trial judge in order to acquire fraudulent jurisdiction over Plaintiff under these circumstances.

### COUNT 3 – 42 U.S.C. § 1983 (INDIVIDUAL LIABILITY)
**Plaintiff alleges Defendant Socias violated her right to procedural due process when he deprived her of notice, the opportunity to be heard, and/or the right to counsel before she was jailed**

135. The foregoing paragraphs (particularly those within Count 2, *supra*) are incorporated herein as if quoted verbatim.

136. Defendant Socias' conduct deprived Plaintiff of her well-established right to due process before she was jailed without any legitimate cause therefor.

137. The probable value of additional (and constitutionally required) procedural safeguards (*e.g.,* providing Plaintiff with notice, an opportunity to be heard, and/or counsel) was extremely high because it would have definitively precluded Defendant Socias from having Plaintiff jailed insofar as it would have demonstrated Plaintiff was neither a resident of the county nor served with a subpoena.

138. Plaintiff also seeks punitive damages under this count for the same reasons stated in Count 2, *supra.*

### COUNT 4 – 42 U.S.C. § 1983 (INDIVIDUAL LIABILITY)
**Plaintiff alleges Defendant Socias violated her right to counsel**

139. The foregoing paragraphs are incorporated herein as if quoted verbatim.

140. Plaintiff's well-established constitutional right to counsel before being seized was at all times relevant hereto:

    a.  secured to her by the Sixth Amendment to the United States Constitution;

    b.  violated by Defendant Socias; and

    c.  clearly established within both the Fifth Circuit and the Southern District of Texas.

141. On or about December 18, 2015, Defendant Socias violated Plaintiff's Sixth Amendment right by subjecting Plaintiff to (and directing her) unlawful incarceration while knowing Plaintiff was unrepresented by counsel.

142. Defendant's conduct was the moving force behind Plaintiff's injuries.

143. Defendant's deliberately indifferent acts which caused Plaintiff to be denied her right to counsel under these circumstances:

    a.  were plainly incompetent;

    b.  knowingly violated the law;

    c.  was predicated upon the patently unreasonable belief that he possessed a scintilla of colorable authority to deprive Plaintiff of her right to counsel;

    d.  intentionally violated the law;

    e.  was based upon unreasonably mistaken beliefs;

    f.  was objectively unreasonable under the circumstances;

    g.  was performed while knowingly disregarding the obvious risk that having Plaintiff seized under these circumstances significantly threatened Plaintiff's clearly established constitutional right to remain free from

43

unreasonable searches and seizures without probable cause to believe she had committed a crime; and

h.   evidences an unreasonable misunderstanding of Defendant's powers and responsibilities.

144. No reasonable Texas officer could ever believe the plainly and particularly pled facts herein constitute any (even arguably) constitutionally acceptable rationale to deny Plaintiff her clearly-established right to counsel under said specific facts.

145. Defendant was not even arguably allocated the necessary discretion to impermissibly deprive Plaintiff of her well-established right to counsel under the facts herein.

146. Plaintiff seeks punitive damages against Defendant because he:

a.   knew he lacked constitutional and statutory authority to deny Plaintiff her clearly-established right to counsel;

b.   acted with conscious indifference to the possibility that he was denying Plaintiff her clearly-established right to counsel contrary to the law of the land;

c.   acted with conscious indifference to the known fact that Plaintiff was entitled to counsel;

d.   acted with reckless or callous indifference to Plaintiff's federally protected rights;

    e.  recklessly violated Plaintiff's clearly established constitutional rights to remain free from unreasonable seizures through plainly unlawful conduct; and

    f.  acted in a grossly negligent manner.

## <u>COUNT 5 – 42 U.S.C. § 1983 (MONELL)</u>
### <u>Plaintiff alleges Defendant Harris County violated her clearly established constitutional right to substantive due process</u>

147.  The foregoing paragraphs are incorporated herein as if quoted verbatim.

148.  At all times relevant hereto, Plaintiff had well-established constitutionally protected interests in her rights to:

    a.  counsel;

    b.  notice;

    c.  an opportunity to be heard; and

    d.  a reasonably well-informed tribunal.

149.  Defendants' deliberate conduct deprived Plaintiff of notice, the opportunity to be heard, counsel, and a tribunal that was even reasonably well-informed of material facts.

150.  Notice and an opportunity to be heard are the essential requisites of procedural due process.

151.  Plaintiff was deprived of procedural due process because she was not given notice or a meaningful opportunity to be heard before she was committed then jailed.

152. Plaintiff's interest in her rights to remain free from unlawful arrest, to due process, and to counsel were (and are)

    a.  traditionally protected by American society;

    b.  so rooted in the traditions and conscience of the American people as to be ranked as fundamental;

    c.  a basic value that underlies American society; and

    d.  well-established within both the Fifth Circuit and the Southern District of Texas at all times relevant hereto.

153. Defendant deprived Plaintiff of said rights by having her committed and jailed under the facts herein.

154. Defendant's deprivation of Plaintiff's clearly established rights:

    a.  shocks the conscience;

    b.  interferes with the rights implicit in the concept of ordered liberty;

    c.  was arbitrary;

    d.  was deliberate;

    e.  was a result of a protracted failure or refusal to care about Plaintiff's rights;

    f.  was not in response to an exigency;

    g.  was not in response to an emergency; and

    h.  was an executive action.

155. No reasonable person in Defendant's position would have believed that depriving Plaintiff of her rights in this manner was reasonable.

156. Devon Anderson and Sheriff Hickman have publicly articulated (or ratified) Harris County's pre-existing policy, practice, procedure, custom or training in this respect and was deliberately indifferent to the deprivations of Plaintiff's rights.

157. Specifically, Devon Anderson publicly stated (in response to this incident) that: "I don't believe she [Plaintiff] wanted to go forward. That's the worst thing about being a rape victim. You have to stand up in a courtroom and talk about what happened to you in front of the person who did it to you. Nobody wants to go through it. It's the worst thing ever. But if nobody went through it, these people would be preying on all of us."

158. This statement evidences the shocking and egregious nature of the conduct herein insofar as Devon Anderson personally describes the pain which Harris County forced Plaintiff to endure as "the worst thing ever."

159. In other words, Harris County's policymaker for the administrative functions of the Harris County District Attorney's Office has evidenced Harris County's *Monell* liability by publicly taking the position that despite constitutional, statutory, and procedural protections and an investigation into the facts, she (as policymaker) personally believes that the People should be subjected to illegal procedures, involuntary commitment, jail, and the worst possible scenarios in Harris County even if they:

   a.  are victims;

   b.  are witnesses;

   c.  are not residents of Harris County;

   d.  have not been served with a subpoena;

    e.  have not been given notice;

    f.  have not been given an opportunity to be heard;

    g.  have not been given counsel; and

    h.  are opposite a Harris County prosecutor who knowingly withholds material information from the tribunal which that prosecutor knows would divest said tribunal of personal jurisdiction.

160. This unconstitutional policy, practice, procedure, custom, or training of violating the law to secure a witness's appearance at trial was the moving force behind Plaintiff's injuries.


**<u>COUNT 6 – 42 U.S.C. § 1983 (MONELL)</u>**

**<u>Plaintiff alleges Defendant Harris County violated her clearly established rights under the Fourth and/or Fourteenth Amendment to the United States Constitution to remain free from government inflicted inadequate medical care and/or arbitrary punishment of a victim/witness detainee</u>**


161. The foregoing paragraphs are incorporated herein as if quoted verbatim.

162. Devon Anderson has expressly admitted:

    a.  "She [Jane Doe] was committed to a psychiatric hospital because she was a danger to herself";

    b.  "[B]ecause of overcrowding, she [Jane Doe] was released ten days later";

    c.  "At that point, the decision was made to put her in custody for her own safety and to ensure her appearance at trial, which had been recessed";

    d.  "The system broke down in the jail";

    e.  "She [Jane Doe] did not receive the proper care in the Harris County Jail";

    f.   "[W]e recognize that because of the holidays, the lack of resources that we

    g.   re available, the prosecutor made countless phone calls trying to find another place to put her, we have reached out to mental health organizations around town"; and

    h.   "[W]e are going to be engaging in training to – for prosecutors and staff to learn how to deal with someone in a mental crisis – mental health crisis."

163.  Based on statements from the Harris County District Attorney, the Harris County Sheriff, and Defendant Socias, it is clear that:

    a.   Jane Doe was deprived of constitutionally adequate medical care because Harris County was overcrowded;

    b.   Jane Doe was deprived of constitutionally adequate medical care because Harris County made a conscious decision to spend its resources on things other than providing inmates like Plaintiff with constitutionally adequate medical care;

    c.   Harris County personnel made a deliberate decision to place Jane Doe into its custody despite the facts that she was neither a resident of Harris County nor subject to a subpoena;

    d.   "The system broke down in the [Harris County] jail";

    e.   there was no system in the Harris County jail that ensured people like Plaintiff were not classified as inmates and denied access to constitutionally adequate medical care;

    f.   "She [Jane Doe] did not receive the proper care in the Harris County Jail";

g.  Harris County did not have the resources available to care for Jane Doe at any time relevant hereto; and

h.  Harris County did not train its employees how to deal with people (like Jane Doe) who were experiencing a mental health crisis.

164.  Defendant Harris County violated its duties under the Fourteenth and/or Fourth Amendments to the United States Constitution to provide Plaintiff with conditions, practices, rules, or restrictions that could reasonably accommodate her as a victim/witness detainee in its custody, thereby making it liable to Plaintiff under 42 U.S.C. § 1983.

165.  Defendant's duties to provide adequate medical care or reasonable training to its employees concerning persons who are experiencing mental health crises were not negated by any legitimate government interest.

166.  Defendant is responsible for providing pre-trial and victim/witness detainees with *(inter alia)*:

a.  mental health screening;

b.  counseling;

c.  proper classification;

d.  protective custody;

e.  MHMR monitoring; and

f.  necessary medications.

167.  Plaintiff had the need for medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care.

168. As someone charged with no crime or wrongdoing, Plaintiff had a right to a greater level of medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care, than someone confined as a pretrial detainee or convicted criminal.

169. Harris County's violations of Plaintiff's constitutional rights resulted from a policy, pattern, procedure, custom, practice, and/or training of deliberate indifference to the level of treatment and care required for the serious medical and psychological needs of persons accused of no crime or wrongdoing who are held in Harris County's custody.

170. This deliberate indifference is evidenced by the fact that Harris County has chosen to dedicate $800,000 per pay period to overtime pay rather than caring for (or training its people how to care for) mentally ill persons that comprise almost a third of its inmate population.

171. Even after investigating the underlying facts, the Harris County District Attorney (Devon Anderson) has publicly taken the position that provably untrue facts are true for Harris County's purposes, thereby demonstrating Harris County's *pre-existing* policy, practice, custom, procedure, and/or training.

172. Specifically, the District Attorney has publicly stated (in response to the instant case) that:

  a.  Plaintiff was "homeless on the street" when she was not;

  b.  "A prosecutor in court [Socias] presented a set of facts and the judge ruled and granted the witness bond" despite the fact that said "facts" were incontrovertibly untrue;

    c.   "There is no reason to believe that anyone in this situation…believed what they were doing was unauthorized by the law";

    d.   "There were no apparent alternatives that would ensure both the victim's safety and her appearance at trial";

    e.   if County Judge Ed Emmett has the funds and is interested, "we [Harris County] need more beds for mentally ill people;"

    f.   the system broke down with respect to Jane Doe;

    g.   Harris County did not have the resources to provide constitutionally adequate care to Jane Doe at any time relevant hereto; and

    h.   Harris County did not train its employees how to deal with persons experiencing mental health crises in a manner that complied with the provisions of the United States Constitution or the Amendments thereto.

173.  The District Attorney's public statements thereby evidence:

    a.   it is Harris County's *pre-existing* (or ratified) policy, practice, custom, procedure, or training to make up facts when the existing facts do not permit its personnel to achieve the desired ends;

    b.   she (as the policymaker for the Harris County District Attorney's Office) expressly approves of such a practice even after investigating the underlying facts;

    c.   the other individuals involved from the Harris County District Attorney's Office have no reason to believe they did anything wrong because she has trained them to act in this manner, has not trained them to not act in this manner, and has publicly ratified their conduct;

    d.  her position (as policymaker) that personnel within her office are permitted to violate the law as a matter of Harris County policy, practice, procedure, custom, or training when the law does not facilitate the desired goal;

    e.  Harris County had actual notice at all times relevant hereto that it lacked the resources to administer to the mentally ill as a matter of policy, practice, procedure, or custom; and

    f.  Harris County did not train its employees how to deal with people who were experiencing mental health crises in a manner that comported with the provisions of the United States Constitution or the Amendments thereto.

174.  Furthermore, Sheriff Hickman's public statements evidence:

    a.  Harris County's official position that Plaintiff was provided with constitutionally adequate access to medical care the entire time she was in Harris County's custody;

    b.  Harris County had actual notice that the state of Texas was not providing it with resources to meet its known and growing mental health needs;

    c.  Harris County did the best it could with respect to Plaintiff;

    d.  Harris County's decision to allocate monetary resource to staff overtime instead of proactive mental health care; and

    e.  Harris County could not have done anything more for Plaintiff under the circumstances.

175.  Defendants' and their co-conspirators' violations of Plaintiff's constitutional rights also resulted from a failure to train, supervise, and/or discipline jail employees in the safe and humane handling of mentally ill inmates experiencing acute emotional distress.

176. Harris County policymakers created, implemented, ratified, or maintained the unconstitutional policies, practices, customs, procedures, or protocols herein with approval, ratification, funding, and/or oversight from the Harris County Commissioners' Court.

177. Plaintiff had a clearly established right under the Fourteenth Amendment to medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care.

178. Harris County treated Plaintiff with deliberate indifference to her right to medical and psychological treatment and care, including the need for living conditions conducive to such treatment and care.

179. There is no arguably rational, reasonable, acceptable, conscionable, or legally acceptable argument legitimizing Defendants' individual and respective efforts with respect to Plaintiff under color of state law.

180. Additionally and/or alternatively, Defendants violated their constitutional duties to refrain  from arbitrarily punishing a victim/witness detainee.

181. Due to the fact that Harris County had actual notice of this ongoing problem, its failure to remediate same was deliberately indifferent.

182. Defendants' duties to prevent arbitrary punishment of a victim/witness detainee were not  negated by any legitimate government interest.

183. Defendant Harris County:

   a. assigned Plaintiff to a lower bunk because it knew she had medical problems based on injuries sustained from Plaintiff's prior suicide attempt (in Harris County);

   b. knew Plaintiff urinated on herself in front of Harris County personnel during her service as a witness in the the trial of her rapist;

   c. knew Plaintiff was suffering from severe and abnormal mental, emotional, or physical distress at all times relevant hereto;

   d. knew Plaintiff was experiencing substantial mental or physical deterioration of her ability to function independently;

   e. knew Plaintiff was unable to make a rational and informed decision as to whether or not to submit to treatment; and

   f. knew Plaintiff was suffering a life-threatening mental health crises.

184. Harris County Jail's relevant inmate transfer procedures, policies, and/or customs are either:

   a. patently inadequate to prevent arbitrary punishment of pre-trial/victim/witness detainees;

   b. patently inadequate to prevent inadequate medical care to pre-trial/victim/witness detainees; or

   c. systematically ignored by Harris County officials.

185. Specifically, Harris County assigned Plaintiff to general population and provided her with no constitutionally adequate medical attention despite having actual knowledge that:

    a.  Plaintiff was coming directly from St. Joseph Medical Center;

    b.  Plaintiff had been sent to St. Joseph Medical Center via court order;

    c.  Plaintiff had been at St. Joseph Medical Center for 10 days;

    d.  Medical staff at St. Joseph Medical Center had made recommendations concerning Plaintiff's care;

    e.  Harris County was not complying with said recommendations; and

    f.  it lacked the resources to properly minister to the mentally ill in its custody.

186. Alternatively, Harris County had no policies, practices, procedures, customs, or trainings to ensure that it knew the foregoing facts when it transferred a person from a medical facility into its own custody.

187. Therefore, Harris County's policies, procedures, or customs (or lack  thereof) caused Plaintiff to be deprived of her constitutional rights insofar as it:

    a.  knowingly exposed a disabled and  vulnerable victim/witness detainee to a known and actual threat despite medical recommendations that  she receive medical treatment under conditions conducive to advancing her therapy;

    b.  knowingly failed to comport with said  recommendations at all times that she was in Harris County custody; and

    c.  improperly labeled her as a defendant rather than as a witness.

188. Defendants repeatedly failed to provide basic and recommended medical care to Plaintiff every day that she was in Harris County's custody.

189. The level of medical care provided to Plaintiff was not reasonably related to a legitimate government objective and therefore constituted punishment in violation of the Fourteenth Amendment under color of state law.

190. Additionally and/or alternatively, Defendant Harris County arbitrarily punished Plaintiff (a victim/witness detainee) when it:

   a. transferred her to the Harris County Jail under the circumstances herein;

   b. placed her in an unnecessarily hostile living arrangement;

   c. allowed another inmate to emotionally and physically abuse her;

   d. failed to protect her; and

   e. enabled its employees to emotionally and physically abuse her.

191. Defendant Harris County's duties to Plaintiff were systematically ignored by its officials because she was transferred to general population despite the known likelihood that disabled victim/witness detainee like Plaintiff required adequate medical care, protection from known harms, and non-arbitrary punishment.

192. Harris County officials deliberately or recklessly transferred Plaintiff to the Harris County Jail where jail conditions:

   a. (upon information and belief) were contrary to a doctor's recommendation;

   b. were constitutionally inadequate to provide the required medical treatment for a victim/witness detainee with a known disability in the form of an open and obvious mental defect; and

   c. were exceedingly dangerous for an victim/witness detainee known to be mentally disabled, emotionally traumatized, in need of a therapeutic environment, and/or potentially incompetent.

57

193. These acts violated Plaintiff's right as a victim/witness detainee to remain free from punitive measures.

194. Placement in general population exacerbated the already obvious significant risk of injury to Plaintiff.

195. Upon information and belief, these dangers in general population were not unknown to Harris County at all relevant times hereto (including its individual jailors and policy-makers), particularly with respect to a known victim/witness detainee who was disabled.

196. Plaintiff's open and obvious mental deficiency placed Defendant Harris County on notice that significant harm would befall her in general population.

197. Moreover, Harris County officials allowed Plaintiff to remain in the general population despite actual knowledge that she required a living environment free from emotional and physical abuse, and with greater access to medical attention.

198. Plaintiff expects that discovery (beyond Devon Anderson's public statements) will support her allegation that Harris County's policies, procedures, customs, practices, protocols, and trainings were defective, incomplete, and/or routinely ignored by its officers and that Harris County had actual notice of same.

199. Further, the policy-makers in the jail must have been aware that their relevant policies were either:

    a. inadequate for the preservation the well-established rights enjoyed by disabled victim/witness detainees and/or

    b. flagrantly disregarded by its officers.

200. Harris County's actual knowledge, acceptance, and ratification of this flagrantly unconstitutional conduct is evidenced through its elected District Attorney, Devon Anderson and its elected Sheriff, Ron Hickman.

201. The actual injury which Plaintiff sustained under the circumstances herein was foreseeable and preventable.

202. Harris County deliberately placed Plaintiff in conditions of confinement amongst so many violent offenders and amid so many insecure conditions that the inference of harm to Plaintiff must have been apparent during all phases of her transfer and involuntary confinement.

203. Plaintiff could not have experienced the unconstitutional harms herein were it not for Harris County's reckless  indifference in maintaining proper prison conditions and transfer policies.

204. The need to provide additional supervision or training to the officers who permitted a disabled victim/witness detainee to be systematically viewed as a prisoner accused of a crime was obvious, thereby permitting a factfinder to infer that Harris County has a policy of being deliberately and consciously indifferent to the rights of such persons.


### <u>COUNT 7 – 42 U.S.C. § 1983 (MONELL)</u>

**<u>Plaintiff alleges Defendant Harris County violated her clearly established rights under the Fourth, Sixth, and/or Fourteenth Amendments to the United States Constitution by having an unconstitutional policy, procedure, practice, custom, or training with respect to those whom it sought to involuntarily commit and/or jail without probable cause</u>**


205. The foregoing paragraphs are incorporated herein as if quoted verbatim.

206. Defendant Socias:

    a. was acting as a county actor (rather than a state actor) at all times that he was engaged in non-prosecutorial, administrative, and ministerial (rather than prosecutorial) functions;

    b. was deliberately indifferent to Plaintiff's well-established constitutional rights to (*inter alia*) counsel and remain free from unreasonable seizures by state actors;

    c. was deliberately indifferent to the known fact that Plaintiff was not a resident of Harris County;

    d. was deliberately indifferent the known fact that Plaintiff was not served with a subpoena;

    e. was deliberately indifferent to the fact that the trial court lacked personal jurisdiction over Plaintiff for the purposes of an attachment Order;

    f. was acting in conformity with Harris County's pre-existing (or ratified) policies, procedures, practices, customs, or trainings insofar as (according to the District Attorney Devon Anderson):

        i. "There is no reason to believe that anyone in this situation…believed what they were doing was unauthorized by the law";

        ii. "There were no apparent alternatives that would ensure both the victim's safety and her appearance at trial."

        iii. Plaintiff was "homeless on the street" when she was not;

iv. "A prosecutor in court [Socias] presented a set of facts and the judge ruled and granted the witness bond" despite the fact that said "facts" were incontrovertibly untrue;

207. Therefore, Devon Anderson:

a. has publicly articulated that it is Harris County's *pre-existing* (or ratified) policy, practice, custom, procedure, or training to make up facts when the existing facts do not permit its personnel to achieve the desired ends;

b. she (as the policymaker for the Harris County District Attorney's Office) expressly approves of such a practice even after investigating the underlying facts;

c. as policymaker administratively approves of her prosecutors failing to perform their ministerial/administrative responsibility of confirming the accuracy of information;

d. as policymaker has created, continued, or ratified an unconstitutional and administrative policy, practice, procedure, custom, or training which permits Harris County District Attorney prosecutors to fail or refuse to provide disabled victim/witness detainees with notice, an opportunity to be heard, and/or counsel before having them involuntarily committed or jailed;

e. has publicly articulated that it is Harris County's *pre-existing* (or ratified) policy, practice, custom, procedure, or training to make up facts when the existing facts do not permit its personnel to achieve the desired ends;

    f.   as policymaker administratively approves of her prosecutors withholding known material information from a tribunal (despite the prohibitions in Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct) which both deprives the court of the ability to make an informed decision and improperly causes the People to be seized (even in ex parte proceedings where they have no notice, an opportunity to be heard, or counsel).

208. Devon Anderson (as the policymaker for the Harris County District Attorney's Office) failed to train her employees in the District Attorney's Office that the People whom Harris County sought to involuntarily commit (and/or jail without having allegedly committed a criminal act) required:

    a.   notice;

    b.   an opportunity to be heard;

    c.   counsel;

    d.   residence within Harris County; and/or

    e.   service of a subpoena.

209. The People of Texas have a clearly-established entitlement to counsel before the state government is permitted to deprive them of their liberty interests.

210. Harris County's publicly articulated (and ratified) policy, practice, custom, procedure, and/or training was the moving force behind Plaintiff's injuries insofar as it caused her to be illegally seized, committed, and detained without notice, an opportunity to be heard, counsel, or regard for known facts.

<u>**COUNT 8 – 42 U.S.C. § 1983 (MONELL)**</u>

<u>**Plaintiff alleges Defendant Harris County had a constitutionally inadequate policy, procedure, practice, custom, or training concerning the classification and confinement of those unfortunate Peoples who are either (1) victim/witness detainees or (2) transferred into its custody from medical/mental health facilities**</u>

211.  The foregoing paragraphs are incorporated herein as if quoted verbatim.

212.  Plaintiff had a well-established liberty interest in not being thrown into the Harris County Jail while labeled as a criminal defendant when Harris County knew there was no probable cause to believe she had even arguably (or allegedly) committed any crime.

213.  Harris County deliberately accepted and participated in Plaintiff's transfer to the Harris County Jail from St. Joseph Medical Center.

214.  Specifically, investigator Plagens (an employee with the Harris County District Attorney's Office) personally drove Plaintiff from St. Joseph Medical Center to the Harris County Jail.

215.  Upon information and belief, the manner in which investigator Plagens became aware of Plaintiff's discharge date from St. Joseph Medical Center was inherently contrary to the laws of the land insofar as Plaintiff did not provide (and could not have provided) consent for its staff to share her information with government actors.

216.  Despite this Harris County employee's actual knowledge that Plaintiff was being transferred from St. Joseph Medical Center, the Harris County Jail either did or did not know Plaintiff was transferred into its custody therefrom after Plaintiff had been involuntarily committed.

217.  If the Harris County Jail did receive information that Plaintiff was transferred into its custody from St. Joseph Medical Center, then it has a constitutionally inadequate

policy, procedure, practice, custom, or training which was the moving force behind Plaintiff being:

    a.   classified as a criminal defendant by Harris County;

    b.   not being classified as a victim/witness detainee by Harris County;

    c.   consistently denied medical care by Harris County;

    d.   deemed to have a negative orientation to reality by Harris County;

    e.   improperly classified by Harris County;

    f.   assigned to general population by Harris County;

    g.   ignored by Harris County correctional officers;

    h.   a vulnerable victim/witness detainee assigned to a pod with predatory inmates;

    i.   assaulted by said inmates; and

    j.   assaulted by Harris County personnel.

218. If Harris County did not receive this information, then it has a constitutionally inadequate policy, procedure, practice, custom, or training which was:

    a.   the result of a deliberate choice to not have a constitutionally adequate policy, procedure, practice, custom, or training; and

    b.   the moving force behind it not receiving said information and Plaintiff's harms.

219. Additionally and/or alternatively, Harris County has a constitutionally inadequate policy, practice, procedure, custom, or training which manifested:

    a.   in Plaintiff's improper classification;

b.  in Plaintiff's proper classification that was functionally ignored by Harris

County personnel throughout her unconstitutional seizure therein; and/or

c.  as the moving force behind Plaintiff's ongoing injuries.

## COUNT 9 – 42 U.S.C. § 12131
### PLAINTIFF ALLEGES DEFENDANT HARRIS COUNTY VIOLATED THE AMERICANS WITH DISABILITIES ACT

220. Plaintiff incorporates the foregoing paragraphs as if they were quoted verbatim

herein.

221. Plaintiff:

a.  was a person with a mental disability, as defined by the Americans with

Disabilities Act at all times relevant hereto;

b.  had a mental disability which was open and plainly obvious to all persons

who interacted with her (including Defendant Harris County and its

personnel);

c.  exhibited her mental illness to such an extent that it gave Defendant and

its personnel actual knowledge of the substantial potential harm that would

befall her in the Harris County Jail's conditions of confinement while it

wrongly classified her as a criminal defendant who did not require mental

health/medical care at all times she was assigned thereto;

d.  was especially vulnerable to the deleterious effects of Harris County

Jail's conditions of confinement (including her wrong classification as a

criminal defendant who did not require or deserve mental health/medical

care or transfer into conditions which would cause her to be protected rather than assaulted);

e.  was entitled to be free from discrimination because of her disability under the Americans with Disabilities Act, 42 U.S.C. § 12131 et. seq.;

f.  was entitled to reasonable accommodations under the Americans with Disabilities Act, 42 U.S.C. § 12131 et. seq.;

g.  was discriminated against by Harris County and its personnel due to her mental disability in that they did not appropriately accommodate her but treated her as a regular defendant rather than as a witness with mental illness;

h.  was discriminated against by Harris County and its personnel due to her mental disability in that they denied her reasonable and appropriate standards of hygiene and medical care due to her disability; and

i.  was discriminated against by Harris County and its personnel due to her mental disability in that they denied her services and programming that would have accommodated her disability.

222.  Congress:

a.  enacted the Americans with Disabilities Act upon finding (*inter alia*) that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." (42 U.S.C. § 12101(a)(2));

b.  explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination

against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities." (42 U.S.C. § 12101(b)(l)-(2)); and

    c.  proclaimed "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." (42 U.S.C. § 12132).

223.  At all times relevant to this action, Harris County was a public entity within the meaning of Title II of the ADA and provided a program, service, or activity to the general public.

224.  Defendant Harris County:

    a.  had actual notice that Plaintiff had a mental disability, was vulnerable, and required an accommodation;

    b.  assigned Plaintiff to a lower bunk because it knew she had medical problems based on injuries sustained from Plaintiff's former suicide attempt (in Harris County);

    c.  knew Plaintiff urinated on herself in front of Harris County personnel during her service as a witness during the trial of her rapist;

    d.  knew Plaintiff was suffering from severe and abnormal mental, emotional, or physical distress at all times relevant hereto;

    e.  knew Plaintiff was experiencing substantial mental or physical deterioration of her ability to function independently;

f.   knew Plaintiff was unable to make a rational and informed decision as to whether or not to submit to treatment;

g.   knew Plaintiff was suffering a life-threatening mental health crisis as stated by Devon Anderson on July 20, 2016;

h.   violated the Americans with Disabilities Act by intentionally discriminating against Plaintiff (and refusing and failing to accommodate her) on the basis of her disability;

i.   treated Plaintiff in such a manner that evidences the fact that it arbitrarily singled her out for punishment on the basis of her mental disability, which affected her major life activities;

j.   has not adopted policies and procedures to ensure its employees reasonably accommodated people with mental disabilities, such as Plaintiff's;

k.   has not adopted policies and procedures to ensure its employees treat people with mental disabilities, such as Plaintiff's, in a non-discriminatory manner;

l.   was aware Plaintiff's conditions of confinement were inhumane (particularly under the circumstances, given her mental disability);

m.   knew Plaintiff's conditions of confinement (including her wrong classification as a criminal defendant who did not require mental health/medical care) was harmful to Plaintiff, given her mental disability;

n.   witnessed Plaintiff's obvious mental health needs on a daily and routine basis throughout her incarceration;

o.  witnessed and were aware of Plaintiff's unconstitutional conditions of confinement on a daily and routine basis throughout her incarceration;

p.  was aware Plaintiff's mental condition was deteriorating during her time in Harris County Jail's conditions of confinement because its employees interacted with her on a daily and routine basis;

q.  failed to take reasonable measures and accommodations to prevent harm being caused to Plaintiff, which was exacerbated by her conditions of confinement;

r.  punished Plaintiff for behavior which was clearly and unmistakably symptomatic of her deteriorating mental health;

s.  knew Plaintiff faced a substantial risk of serious mental or physical harm if her conditions of confinement did not meet contemporary standards of decency and the requirements of the ADA;

t.  acted with deliberate and callous indifference to said risk; and

u.  failed and refused to accommodate Plaintiff's disability and denied her the benefits and services of the jail by reason of her disability.

225. Alternatively, Defendant Harris County had no idea Plaintiff's mental health care was deteriorating every day she was in its custody because Harris County's accommodations with respect to her (and others like her) were so unreasonable that it knew it would/could not:

a.  receive such notice before inmates like her experienced an acute mental health event; and

b.  reasonable accommodate her medical/mental health needs.

226. Defendant's discriminatory acts and failures and refusals to accommodate Plaintiff include:

    a.  refusing to follow state procedures concerning involuntary commitment;

    b.  denial of access to benefits and services (*e.g.,* mental health care) provided to the other inmates;

    c.  denial of access to benefits and services (*e.g.,* mental health care) provided to other inmates because Harris County's classification system wrongly labeled her as a criminal defendant who did not require such benefits and services;

    d.  refusing to provide Plaintiff with mental health care; and/or

    e.  refusing to provide Plaintiff with medical care.

227. Plaintiff required (*inter alia*) the following reasonable accommodations:

    a.  a classification system which did not label her as a criminal defendant who did not need mental health/medical care;

    b.  a system which ensured that Harris County received notice of her transfer into its custody from a mental health facility;

    c.  a system which ensured that Harris County received notice that she was not a criminal defendant, but a victim instead;

    d.  a system which ensured that Harris County received notice of her mental health/medical needs;

    e.  a system which attempted to discern her mental health needs upon her transfer to Harris County's custody;

    f.  a system which treated her mental health/medical needs;

70

g.  a system that would transfer her promptly to an alternate facility that could treat her mental health/medical needs;

h.  a system that did not blindly throw her into the snakepit that is the Harris County Jail general population without any regard for her known and plainly obvious mental health/medical needs;

i.  a system that ensured Harris County personnel who had actual notice of an victim/witness detainee's mental health/medical needs conveyed those needs to Harris County personnel in a manner that appropriately addressed those needs;

j.  a system that did not elevate convictions of rapists over justice for the rapist's victim;

k.  proper mental health screening according to current professional standards;

l.  doctors and medical professionals who ensured jail personnel were aware of victim/witness detainees' mental health issues;

m.  properly trained jail personnel who followed appropriate policies and procedures for victim/witness detainees with mental health issues;

n.  appropriate protective custody, when needed;

o.  an advocate for her, prior to being seized, because she was mentally disabled;

p.  reasonable and appropriate mental health and medical care;

q.  reasonable mental health care; and

r.  reasonable and appropriate monitoring and observation.

228.  Defendant Harris County violated Title II of the ADA by:

    a.  excluding Plaintiff from participation in benefits and services provided to the other inmates by not accommodating her mental disability;

    b.  denying Plaintiff the benefits and services provided to the other inmates because of her mental disability;

    c.  subjecting Plaintiff to discrimination in the benefits and services provided to the other inmates because of her mental disability;

    d.  refusing to have a reasonable system in place which could assess her mental health/medical needs;

    e.  refusing to provide her with reasonable accommodations for her mental health/medical needs;

    f.  having a classification system (or an inadequate training system) which improperly ensured she was mislabeled as a defendant who did not require mental health/medical care; and

    g.  having an institutional culture which was so overwhelmed by the mental health needs of the population at the Harris County Jail that it could not adequately assess (much less treat and accommodate) Plaintiff's mental health/medical needs.

229.  Defendant Harris County failed to provide its employees with appropriate training regarding:

    a.  victim/witness detainees with mental disabilities;

    b.  victim/witness detainees' rights to reasonable accommodations if they had mental disabilities;

    c.   adequate means of classifying victim/witness detainees with mental health issues;

    d.   any method to ensure that victim/witness detainees like Plaintiff were not improperly classified as criminal defendants who did not need mental health/medical care;

    e.   how to acquire information from mental health care providers when people (including victim/witness detainees) like Plaintiff are transferred therefrom into Defendant's custody;

    f.   how to comply with doctors' directives concerning the mental health of victim/witness detainees;

    g.   how to recognize the signs that people in its custody like Plaintiff are suffering acute psychiatric episodes;

    h.   how to handle people in its custody like Plaintiff who are suffering acute psychiatric episodes;

    i.   Harris County's duties to provide reasonable accommodations under federal law; and

    j.   the manner in which Defendants could provide people with Plaintiff's disabilities with reasonable accommodations.

230.  Under the facts herein, Defendant Harris County:

    a.   failed and refused to accommodate Plaintiff's severe disability;

    b.   denied Plaintiff the benefits and services of a facility designed to accommodate her disability;

    c.   knew or should have known that persons with Plaintiff's disabilities/condition(s) are especially vulnerable to the conditions of confinement in the Harris County Jail when they are classified as criminal defendants who do not need mental health/medical care;

    d.   caused Plaintiff to suffer increased mental and physical harm that required treatment that was not provided; and

    e.   denied Plaintiff access to the treatment necessary to address her mental and physical health needs.

231. Due to the Plaintiff's disability, placement in the Harris County Jail's conditions of confinement caused her to suffer additional punishment.

232. As a proximate and foreseeable result of Defendants' discriminatory acts and omissions, Plaintiff suffered injuries including pain and suffering, emotional distress, and exacerbation of her disability.

233. Rather than treat Plaintiff, Defendants chose to place her in the Harris County Jail's conditions of confinement as a criminal defendant and continued to confine her there untreated.

234. While in the Harris County Jail's conditions of confinement:

    a.   Plaintiff did not have access to the basic programming and services received by other inmates at the facility (including mental health/medical care);

    b.   Defendants failed and refused to provide Plaintiff with reasonable medical care;

     c.  Defendants failed and refused to provide Plaintiff with reasonable mental health care; and

     d.  Plaintiff's mental health seriously deteriorated.

235.  As Plaintiff's condition worsened almost immediately after being placed in Harris County Jail's conditions of confinement, her behavior made it obvious she was in need of immediate medical and mental health care.

236.  Rather than provide the necessary mental health care, Harris County elected to use its conditions of confinement and the threat of felony prosecution in an attempt to control Plaintiff's behavior.

237.  As a proximate and foreseeable result of Defendants' conduct, Plaintiff suffered injuries including pain and suffering, emotional distress, and exacerbation of her disability/condition.

238.  Plaintiff seeks all damages available to her against Harris County under the Americans with Disabilities Act.

## COUNT 10 – 22 U.S.C. § 794
### PLAINTIFF ALLEGES DEFENDANT HARRIS COUNTY VIOLATED § 504 OF THE REHABILITATION ACT

239.  The foregoing paragraphs are incorporated herein as if quoted verbatim.

240.  Section 504 states, "No [person] shall, solely by reason of his or her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal funding assistance." 29 U.S.C. § 794(a).

241. Defendant Harris County is publicly funded and the recipient of federal funding; therefore, it falls within the ambit of Section 504.

242. The Americans with Disabilities Act Amendments Act of 2008 (ADA AA) (P.L. 110-325) emphasizes that the definition of disability should be construed in favor of broad coverage of individuals to the maximum extent permitted by the terms of the ADA.

243. The ADA AA amended Section 504 so as to incorporate the ADA by reference.

244. Defendants' violations, as described above, violate Plaintiff's rights that are secured by Section 504, by discriminating against individuals with disabilities on the basis of disability. 29 U.S.C. § 794.


**COUNT 11 – 42 U.S.C. § 1983 (MONELL)**

**Plaintiff alleges Defendant Harris County failed to protect Plaintiff from known harms**

245. The foregoing paragraphs are incorporated as if quoted verbatim herein.

246. Harris County violated its duties under the Fourteenth and Fourth to the United States Constitution to protect victim/witness detainees from other inmates, thereby making it liable under 42 U.S.C. § 1983.

247. Supervised units exist within the Harris County Jail that can accommodate individuals that are particularly vulnerable.

248. Defendant is liable for Plaintiff's injuries because:

    a.   it or its officials were actually aware of Plaintiff's disabilities;

     b.  its officials drew (or must have drawn) the inference that Plaintiff's disabilities left her vulnerable;

     c.  Defendant housed Plaintiff in a general population unit without a legitimate government interest; and

     d.  Plaintiff suffered actual injury therefrom.

249. Harris County jailors were actually aware of Plaintiff's disability because (*inter alia*) her intake/medical evaluations noted her extensive history of bipolar disorder and psychosis, along with a previous suicide attempt and the fact that she had just been released into their custody from St. Joseph Medical Center.

250. Plaintiff's impairment left her at risk of significant injury in a prison's general population.

251. Harris County's officials either (1) knew that Plaintiff would receive significant injury while housed in a general population unit or (2) placed her in a general population unit with such conscious disregard for the danger as to shock the conscience.

252. Additionally, Harris County officials knew at the time they received Plaintiff that she (*inter alia*):

     a.  was in Harris County Jail as a victim witness subject to an administrative hold only;

     b.  was disabled and suffered from severe mental illness; and

     c.  was vulnerable.

253. Defendant drew (or must have drawn) the inference that Plaintiff was in substantial danger while housed in a general population unit in Harris County Jail.

254. One or more Harris County officials acted with sufficient knowledge and awareness to be deliberately indifferent to Plaintiff's constitutional right to a modicum of protection.

255. The conditions of Plaintiff's confinement constituted a state-created danger.

256. As a consequence, Defendant is liable for the deprivation of Plaintiff's civil rights under color of law.

257. Defendant Harris County is responsible for Plaintiff's injuries because its decision-makers were sufficiently aware that its policies, practices, customs, or procedures were defective, incomplete, or routinely ignored by its officers so as to facilitate Plaintiff's housing in a general population unit despite her status as a disabled victim witness to a crime, which directly caused her injuries.

258. The obviousness of the dangers to Plaintiff and the certainty of resulting substantial harm therefrom substitute for the general notice requirement for municipal liability predicated upon defective or absent policies, practices, customs, or procedures.

259. Defendant Harris County's failure(s) to protect Plaintiff despite her open, obvious, and known disability demonstrates a custom, policy, or procedure of assigning persons to general population units (regardless of their status) in an arbitrary or purposeless manner.

260. Alternatively, Defendant Harris County's failure(s) to protect Plaintiff despite her open, obvious, and known disability suggests a policy, procedure, or custom that enables such failures or the absence of policies, procedures, or customs that prevent them.

261. Alternatively, Defendant Harris County has policies and procedures concerning prisoner transfers and/or classification that are inadequate to service the basic human right to a modicum of protection from other inmates insofar as any transfer policy that fails to recognize or implement a doctor's medical recommendation concerning a disabled and vulnerable victim witness is reasonably certain to deprive such detainees of access to basic medical services, treatment for basic medical needs (*e.g.,* Plaintiff's documented illnesses), and/or protection.

262. Additionally and/or alternatively, Defendant Harris County deprived Plaintiff of the "minimal civilized measure of life's necessities" under the "contemporary standards of decency", including but not limited to the necessities of safety and adequate medical care.

263. Defendant Harris County's conduct rises to the level of criminal recklessness insofar as it was deliberately indifferent to Plaintiff's needs and had an underlying policy of assigning/classifying disabled and vulnerable victim witnesses in a manner that is contrary to both medical recommendations and common-sense.

264. Alternatively, its criminal recklessness can be inferred from the absence of a policy or procedure that prevented assigning/classifying victim witnesses in a manner that was contrary to medical recommendations.

265. The events leading up to Plaintiff's injuries were preventable through reasonable policies and procedures.

266. Plaintiff expects that discovery will support her allegation that Defendant's relevant policies and procedures were defective, incomplete, and/or routinely ignored by its officers and that Defendant had actual notice of same.

267. Moreover, Defendant Harris County's correctional officers and policy-makers were and/or should have been aware that their systematic failures to implement or follow policies, procedures, and/or customs reasonably designed to prevent disabled and vulnerable victim witnesses like Plaintiff from being assigned to general population were certain to result in substantial injury to those similarly situated.

268. Defendant Harris County failed to ensure that its correctional officers and policy-makers (1) understood the importance of known mental health issues, (2) understood the importance of ascertaining whether or not a prisoner has known mental health issues, and/or (3) comported with reliable medical recommendations concerning known medical issues.

269. Defendant had a duty to make reasonable efforts to preserve Plaintiff's civil rights.

270. Defendant failures to comport with its well-established duties were the moving forces behind Plaintiff's injuries.

271. Plaintiff's well-established constitutional right to reasonable conditions of confinement was (at all times relevant hereto):

    a. secured to her by the Fourteenth Amendment to the United States Constitution;

    b. violated by Defendants; and

    c. clearly established within both the Fifth Circuit and the Southern District of Texas.

## COUNT 12 – 42 U.S.C. § 1983 (INDIVIDUAL CAPACITY)

**Plaintiff alleges Defendant Adams used excessive force and violated her clearly established rights under the Fourth Amendment to the United States Constitution to remain free from the use of excessive force during an arrest.**

272. The forgoing paragraphs are incorporated herein as if quoted verbatim.

273. Defendant Adams utilized force against Plaintiff that was unnecessary in light of the circumstances.

274. In addition to the foregoing, Defendant Adams:

    a. knew Plaintiff did not present a danger to herself or others;

    b. affirmatively chose to utilize force that caused injury to Plaintiff; and

    c. used force that was excessive to the need.

275. Plaintiff's constitutional rights to remain free from excessive force was:

    a. secured to her by the Fourth and Fourteenth Amendments to the United States Constitution;

    b. violated by Defendant Adams; and

    c. clearly established within both the Fifth Circuit and the Southern District of Texas at all times relevant hereto.

276. At all times relevant hereto, all reasonable police officers would have known:

    a. law enforcement officers must only use force that is justified by a need;

    b. the use of force by a law enforcement officer must be objectively reasonable in light of the circumstances;

    c. Plaintiff had a clearly established right to remain free from an unreasonable use of force as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution; and

      d.  the quantum of force used by Defendant Adams against Plaintiff as a disabled victim/witness detainee was excessive to the need.

277. Defendant Adams' conduct was the moving force behind Plaintiff's injuries.

278. Plaintiff seeks punitive damages against Defendant Adams because she:

      a.  acted with conscious indifference to the possibility that she would unnecessarily injure Plaintiff under the circumstances;

      b.  acted with reckless or callous indifference to Plaintiff's federally protected rights;

      c.  acted with deliberate indifference to the likelihood that she would violate Plaintiff's constitutional rights by using excessive force that was unjustified by the need;

      d.  recklessly trampled on Plaintiff's clearly established constitutional rights through plainly unlawful conduct;

      e.  acted in a grossly negligent manner;

      f.  knew Plaintiff did not present a danger to herself or other persons in the immediate vicinity;

      g.  acted with conscious indifference to Plaintiff's rights when she utilized force in excess of any need at the time of such arrest;

      h.  acted with conscious indifference to Plaintiff's rights when she used force that caused serious injuries to Plaintiff; and/or

      i.  recklessly trampled on Plaintiff's clearly established constitutional rights through plainly unlawful conduct.

279. Any reasonable officer would know such conduct:

    a.   is impermissible during any detention;

    b.   was a clear violation of Plaintiff's constitutional rights; and

    c.   was conduct unbecoming of a police officer.

# VI. DAMAGES

280.  As a result of the actions and circumstances described above, Plaintiff has suffered injuries and damages including but not limited to one or more of the following:

    a.   Past and future physical injuries and impairment;

    b.   Past and future mental injuries and impairment;

    c.   Past and future pain and suffering;

    d.   Past and future mental anguish, emotional distress, anger, and humiliation;

    e.   Past and future physical discomfort and/or inconvenience;

    f.   Past and future economic losses and loss of earning capacity;

    g.   Nominal damages;

    h.   Presumed damages; and

    i.   Past and future injury to good name and reputation.

# VIII. ATTORNEY'S FEES

281.  Plaintiff is entitled to recover attorneys' fees and costs under 42 U.S.C. §§ 1983 and 1988.

## IX. JURY TRIAL

282.  Plaintiff demands trial by jury on all issues triable to a jury.


## X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court:

    a.  Enter judgment and award damages for Plaintiff against the Defendants, jointly and severally;

    b.  Find that Plaintiff is the prevailing party in this case and award attorneys' fees and costs and all litigation expenses, pursuant to federal and state law, as noted against the Defendants;

    c.  Award pre- and post-judgment interest;

    d.  Award punitive damages against all individually-named Defendants and for Plaintiff.

    e.  Award costs of court;

    f.  Award nominal damages;

    g.  Award costs of suit; and

    h.  Grant such other and further relief as appears reasonable and just, to which Plaintiff shows herself entitled.


            Respectfully submitted,


            SEAN BUCKLEY & ASSOCIATES


            /s/ Sean Buckley
            Sean Buckley
            Attorney in charge
            State Bar No. 24006675

770 South Post Oak Lane, Ste. 620
Houston, Texas  77056
TEL:   713-380-1220
FAX:   713-552-0746
Email: buckleyfirm@gmail.com

**JENKINS & KAMIN, L.L.P.**

Maisie A. Barringer, Partner
Federal Bar No. 2941920
State Bar No.: 24044799
Two Greenway Plaza, Suite 600
Houston, Texas 77046
(713) 600-5500 (Tel)
(713) 600-5501 (Fax)
mbarringer@jenkinskamin.com
(Non Service Emails Only)
jenkinskaminservice@jenkinskamin.com
(Email Service Only)


&

William Pieratt Demond
Texas Bar No. 24058931
So. Dist. Texas No. 1108750
Email: william.demond@demondhassan.com

Meagan Hassan
Texas Bar No. 24065385
So. Dist. Texas No. 1261057
Email: meagan.hassan@demondhassan.com

DEMOND & HASSAN, PLLC
1520 Rutland St.
Houston, Texas 77008
Tel: 713.701.5240
Fax: 713.588.8407

ATTORNEYS FOR PLAINTIFF JANE DOE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document was served by electronic notice to all parties of record on this the  25th day of November, 2016.


/s/ Meagan Hassan
MEAGAN HASSAN