IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JANE DOE, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | CIVIL ACTION NO. H-16-2133 |
| § | |
| HARRIS COUNTY, TEXAS; § | |
| NICHOLAS SOCIAS, Individually; § | |
| and TAYLOR ADAMS, Individually, § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Jane Doe, brings this action against Harris County, Texas, and Harris County employees, Nicholas Socias ("Socias") and Taylor Adams ("Adams"), in their individual capacities, for damages based on allegations that defendants "(1) unconstitutionally deprived Plaintiff of (a) her protected liberty interests and (b) right to counsel and (2) failed or refused to provide her with even a scintilla of reasonable medical care."[1] Pending before the court are Nicholas Socias's Second Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Socias's Second Amended MD") (Docket Entry No. 40), Defendant Harris County's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted ("Harris County's MD") (Docket Entry No. 43), and Plaintiff's Opposed Motion for

---

[1]Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 1.

Leave to File Her Fourth Amended Complaint ("Plaintiff's Motion to Amend") (Docket Entry No. 59). For the reasons explained below, Plaintiff's Motion to Amend will be denied, Socias's Second Amended MD will be granted, and Harris County's MD will be granted in part and denied in part.

## I.  Plaintiff's Motion to File Fourth Amended Complaint

Plaintiff seeks leave to file a fourth amended complaint to allege the following "new and material facts:"

- Defendant Socias (or someone acting pursuant to his instructions) informed St. Joseph Medical Center that Plaintiff would be relocated to the Harris County Jail's Mental Health Unit;

- Defendant Socias (or someone acting pursuant to his instructions) informed St. Joseph Medical Center that said relocation was directed by the trial court;

- The trial court never made any ruling that Plaintiff should be moved to the Harris County Jail's Mental Health Unit; and

- Harris County refused to properly classify or treat Plaintiff despite having her medical records and medications at the time she was booked into its custody.[2]

Defendants oppose plaintiff's motion because plaintiff failed to attach a copy of her proposed amendments to her motion, and because she has failed to show good cause for the proposed amendments.[3]

---

[2]Plaintiff's Motion to Amend, Docket Entry No. 59, p. 1.

[3]Defendants' Joint Opposition to Plaintiff's Motion for Leave to File Her Fourth Amended Complaint ("Defendants' Joint Opposition"), Docket Entry No. 60.

Although plaintiff did not attach a proposed Fourth Amended Complaint to her motion, plaintiff has since submitted her proposed Fourth Amended Complaint.[4] Accordingly, defendants' opposition based on plaintiff's failure to file a proposed Fourth Amended Complaint is moot.

## A.   Standard of Review

If a scheduling order has been entered establishing a deadline for amendments to pleadings, Federal Rule of Civil Procedure 15(a) provides the standard for requests to amend that are filed before the scheduling order's deadline has expired, and Federal Rule of Civil Procedure 16(b) provides the standard for requests to amend that are filed after the scheduling order's deadline has expired. Marathon Financial Insurance, Inc., RRG v. Ford Motor Co., 591 F.3d 458, 470 (5th Cir. 2009); Fahim v. Marriott Hotel Services, Inc., 551 F.3d 344, 348 (5th Cir. 2008).

Rule 15(a) states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "A decision to grant leave is within the discretion of the court, although if the court 'lacks a "substantial reason" to deny leave, its discretion "is not broad enough to permit denial."'" State of Louisiana v. Litton Mortgage Co., 50 F.3d 1298, 1302-03 (5th Cir.

---

[4]See Plaintiff's Fourth Amended Complaint, Exhibit 1 to Plaintiff's Reply in Support of Her Opposed Motion for Leave to File Her Fourth Amended Complaint (Dkt. 59) ("Plaintiff's Reply in Support of Motion to Amend"), Docket Entry No. 61-1.

1995) (quoting <u>Jamieson By and Through Jamieson v. Shaw</u>, 772 F.2d 1205, 1208 (5th Cir. 1985)). Rule 15(a) provides "a strong presumption in favor of granting leave to amend." <u>Financial Acquisition Partners LP v. Blackwell</u>, 440 F.3d 278, 291 (5th Cir. 2006). Nevertheless, "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies, undue prejudice to the opposing party, or futility of a proposed amendment." <u>United States ex rel. Steury v. Cardinal Health, Inc.</u>, 625 F.3d 262, 270 (5th Cir. 2010) (citing <u>Foman v. Davis</u>, 83 S.Ct. 227, 230 (1962)).

"Rule 16(b) provides that once a scheduling order has been entered, it 'may be modified only for good cause and with the judge's consent.'" <u>Marathon</u>, 591 F.3d at 470 (quoting Fed. R. Civ. P. 16(b)(4)). "The good cause standard requires the 'party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" <u>S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA</u>, 315 F.3d 533, 535 (5th Cir. 2003) (quoting 6A Charles Alan Wright, et al., <u>Federal Practice and Procedure</u> § 1522.1 (2d ed. 1990)). To determine whether the moving party has established good cause, courts consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."

Marathon, 591 F.3d at 470 (quoting Southwestern Bell Telephone Co. v. City of El Paso, 346 F.3d 541, 546 (5th Cir. 2003)).  If a movant establishes good cause to extend the scheduling order, courts analyze the motion to amend under Rule 15(a).  S&W Enterprises, 315 F.3d at 535.  Because a Docket Control Order ("Scheduling Order") was entered in this case on September 30, 2016 (Docket Entry No. 22), Rule 16(b)'s standard applies, and the plaintiff must show good cause to amend.

## B. Plaintiff Fails to Show "Good Cause"

### 1. Plaintiff Has a Reasonable Explanation for Delay

Plaintiff argues that

[a]fter conferring with a consulting expert on June 22, 2017, Plaintiff's counsel became fully aware of the import of the newly alleged facts. . . Specifically, Plaintiff's consulting expert explained certain markers and notations in Plaintiff's medical records. Plaintiff's counsel did not understand the import of said markers or the implications thereof until their discussion with said expert on June 22.  Prior to that conversation, Plaintiff could neither have guessed nor responsibly alleged that Socias represented to her mental health providers that she would be relocated to the Mental Health Unit of the Harris County Jail.[5]

Plaintiff argues that

[t]he statute of limitations has not run, Plaintiff is entitled to bring a new claim against Defendant Socias based on the newly acquired information (insofar as he engaged in an independently non-prosecutorial act which deprived her of her constitutional rights under color of state law), and said case would properly be consolidated herewith.  As a result, Plaintiff respectfully requests leave to file her Fourth Amended Complaint because she

---

[5]Plaintiff's Motion to Amend, Docket Entry No. 59, p. 3.

was incapable of discovering the newly required facts in a more expedient manner through no fault of her own.[6]

Asserting that plaintiff has had access to her own records since they were generated in December of 2015,[7] defendants argue that the plaintiff's medical records are not newly acquired information,[8] and that plaintiff should not be allowed to amend her pleadings a fourth time "based on the fact that she just read her own medical records from 2015 and discovered an entry that she wants to include in her lawsuit."[9] Plaintiff replies that her

> counsel first requested [her] medical records from St. Joseph Medical Center on July 1, 2016. For nearly nine months, St. Joseph Medical Center failed to comply with [her] lawful requests for her medical records. St. Joseph Medical Center even refused to comply with a federal subpoena for the records []. Finally, in March of 2017, St. Joseph Medical Center provided the requested records. Plaintiff's counsel then forwarded these records to Plaintiff's expert for review. Plaintiff's counsel then learned of the relevant facts therein, the import thereof, and the implication of Plaintiff's scores on the Global Assessment of Functioning scale in a conference call with her expert on June 22; Plaintiff's motion for leave was filed two weeks later on July 6, 2017.[10]

Based on the verification signed by plaintiff's attorney, the court concludes that despite acting diligently to acquire her

---

[6]Id. at 4.

[7]Defendants' Joint Opposition, Docket Entry No. 60, p. 8.

[8]Id.

[9]Id. at 4.

[10]Plaintiff's Reply in Support of Motion to Amend, Docket Entry No. 61, p. 2 (citing id. at 12, verification signed by plaintiff's attorney).

medical records from St. Joseph's Medical Center, that plaintiff did not acquire those records until March of 2017, and that the facts that plaintiff seeks leave to assert could not have been asserted by the November 21, 2016, deadline for filing motions to amend established by the court's September 30, 2016, Scheduling Order. Defendants have neither argued nor cited any evidence from which the court could conclude that the plaintiff was aware of the facts on which her proposed amendments are based before the deadline for amending pleadings expired, or that had plaintiff acted diligently she could have acquired those facts from another source in time to meet the deadline for amending pleadings. The court is therefore persuaded that plaintiff has offered a reasonable explanation for delay in seeking leave to amend, and that this factor weighs in favor of granting her motion. See Southwestern Bell, 346 F.3d at 547 (denying leave to amend upon finding that "[movant] was aware of the contract that forms the basis of its proposed amendment months in advance of the deadline and does not offer a satisfactory explanation for its delay in seeking leave to amend").

2.  The Proposed Amendments Are Not Important

Plaintiff argues that her "proposed amendments are immeasurably important because they (inter alia) permit her to hold the proper parties accountable for their respective misdeeds,"[11] and

_____

[11]Plaintiff's Motion to Amend, Docket Entry No. 59, p. 4.

that "these new facts further expand upon Plaintiff's allegation that Defendant Socias was acting in the clear absence of all jurisdiction and/or in a non-prosecutorial function."[12] Plaintiff argues that "Defendant Socias' material misrepresentations concerning a non-existent judicial decree . . . cannot be construed as a prosecutorial function. As a result, Plaintiff's proposed amendment is appropriate, necessary, timely, and in the interests of justice."[13]

Citing <u>Maryland Manor Associates v. City of Houston</u>, 816 F. Supp. 2d 394 (S.D. Tex. 2011), defendants argue that Plaintiff's Motion to Amend should be denied because her proposed Fourth Amended Complaint would add no new claims and would be almost identical to her Third Amended Complaint.[14] Defendants explain that

> Plaintiff claims her latest amendment is necessary after she reviewed her medical records and discovered an entry suggesting St. Joseph's Hospital believed she would be sent to the Harris County Jail's Mental Health Unit. This is a minute detail in the scheme of plaintiff's 282-paragraph opus, and it does nothing to advance her case. If this case goes to trial, plaintiff may have the opportunity to introduce these records into evidence, but at this stage, the Federal Rules of Civil Procedure do not permit her to use her complaint to list every hospital record entry that she thinks is important.[15]

In <u>Maryland Manor</u> a developer sued the City of Houston for denying a permit. The City filed two motions to dismiss. As the court was

---

[12]<u>Id.</u>

[13]<u>Id.</u> at 5.

[14]Defendants' Joint Opposition, Docket Entry No. 60, pp. 6-7.

[15]<u>Id.</u>

considering the City's motions, plaintiff filed a motion to amend.
Judge Rosenthal held:

> [T]he third amended complaint is almost identical to the
> second amended complaint. The minor differences between
> the third amended complaint and the second amended
> complaint would not change the court's resolution of the
> City's motions to dismiss. Maryland Manor's motion for
> leave to amend is denied both because it is untimely and
> because amendment would be futile.

Id. at 401.

Plaintiff replies that her proposed amendments are material
and that defendants' opposition to them

> ignore[s] the facts that (1) said Amended Complaint[]
> incorporated astonishingly revealing public statements
> from the Harris County District Attorney, Defendant
> Socias, and the Harris County Sheriff demonstrating
> Defendants' liabilities herein and (2) were not objected
> to by any Defendant.[16]

Missing from Plaintiff's proposed Fourth Amended Complaint are any
new causes of action or claims for relief or any allegations of new
conduct. The new facts that plaintiff seeks leave to add to her
live pleadings concern defendant Socias' previously alleged
communications with plaintiff's treatment providers at St. Joseph's
Medical Center and her failure to receive reasonable medical care
at the Harris County Jail. For example, Plaintiff's Third Amended
Complaint alleges that defendant Socias sent an email to
plaintiff's mother that said:

> "I went to visit [Plaintiff] yesterday at the hospital
> and she was doing much better. I spoke with the doctor
> there and . . . made sure he understood the entire

---

[16]Plaintiff's Reply in Support of Motion to Amend, Docket Entry
No. 61, p. 4.

situation. They started medicating her and having her talk to the doctor. I thought it would take longer to see any change but I was impressed with her improvement already. She obviously wants out but I am making sure she is getting the best care we can give. I will stop by again either today or tomorrow to make sure she is still ok going into the weekend. The nurses all have my cell phone number so if something happens they will call me, day or night, so I can go over there."[17]

Moreover, plaintiff acknowledges that

[t]his existing allegation (when taken as true) already evidences Defendant Socias' active communication with Plaintiff's doctors and nurses in violation of federal law. As a result, Plaintiff can make specific and plausible allegations that (1) Defendant Socias informed her doctors and nurses that the trial court wished that Plaintiff be relocated to the Mental Health Unit of the Harris County Jail, (2) that the trial court made no such finding or entered any such Order, and (3) Defendant Socias was responsible for her confinement in general population at the Harris County Jail (and all forseeable consequences thereof).[18]

Plaintiff's Third Amended Complaint also alleges facts to support her claim that she failed to receive reasonable medical care while confined in the Harris County Jail. For example, plaintiff alleges:

During the booking process, one or more Sheriff's Department employees (while utilizing and acting in conformity with Harris County's official policies, practices, customs, procedures, or protocols):

. . .

d.    learned Plaintiff had been recently discharged from St. Joseph Medical Center following in-patient treatment for acute symptoms of her mental disability;

---

[17]Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 11-12 ¶ 26.

[18]Plaintiff's Motion to Amend, Docket Entry No. 59, p. 5.

-10-

    e.    deliberately failed or refused to assign Plaintiff to the jail's Mental Health Unit;

       . . .

    g.    were deliberately indifferent to Plaintiff's well-established constitutional and federally protected rights; and

    h.    prevented Plaintiff from having access to:

        i.    reasonable conditions of confinement under the circumstances;

        ii.    reasonable medical care;

        iii. reasonable accommodations[.][19]

Because Plaintiff's proposed Fourth Amended Complaint does not assert any new causes of action or claims for relief and, instead, merely provides additional details to support claims already alleged, and because the differences between the proposed fourth and third amended complaints would not change the court's resolution of the defendants' motions to dismiss, the court concludes that plaintiff has failed to show that the proposed amendments are important. Accordingly, this factor weighs against granting Plaintiff's Motion to Amend.

3.    <u>The Potential Prejudice to the Defendants Cannot Be Cured By a Continuance</u>

Plaintiff argues that defendants will not be prejudiced by her amended pleading because

Defendants need not submit an additional motion to dismiss (insofar as the existing briefings already

---

    [19]Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 14-15 ¶ 37.

address applicable law), that this Honorable Court can utilize the entirety of its existing draft Order concerning Defendants' motions to dismiss (insofar as none of the existing facts have changed), and that this Honorable court is fully capable of analyzing whether Socias' alleged misrepresentations constitute an act (1) in furtherance of the prosecutorial function and/or (2) within his arguable jurisdiction.[20]

Defendants respond that granting Plaintiff's Motion to Amend would prejudice them because

> [e]ach time plaintiff amends her complaint, defendants must respond by filing new answers or motions to dismiss. Defendants have filed responsive pleadings to plaintiff's various amended complaints on August 12, 2016 (Doc. 8), October 3, 2016 (Doc. 23), November 7, 2016 (Doc. 29), and January 10, 2017 (Docs. 38, 40, & 43).
>
> Any material change to plaintiff's complaint would upend the pending motions and require another round of filings. Plaintiff concedes that it was too burdensome for her to draft her amended complaint in three weeks, and it stands to reason that it would be too burdensome for defendants to analyze her complaint and prepare responses in the same amount of time. Even in a best case scenario, the parties would endure considerable time and expense to draft and respond to a new complaint that adds nothing to the case.[21]

Plaintiff does not dispute that if she is allowed to file a Fourth Amended Complaint, defendants would be prejudiced by the need to file new answers. Instead, asserting that the parties have not even begun discovery, plaintiff replies that in the event the court finds any party is unfairly prejudiced by plaintiff's request, a continuance is available to remedy same.[22] Moreover,

---

[20]Plaintiff's Motion to Amend, Docket Entry No. 59, p. 6.

[21]Defendants' Joint Opposition, Docket Entry No. 60, p. 9.

[22]Plaintiff's Reply in Support of Motion to Amend, Docket Entry No. 61, p. 9.

-12-

plaintiff qualifies her argument that defendants would not be prejudiced because they would not need to submit new motions to dismiss only "insofar as the existing briefings already address applicable law,"[23] and similarly qualifies her argument that the court could utilize the entirety of any existing draft order concerning defendants' motions to dismiss only "insofar as none of the existing facts have changed."[24] Since, however, plaintiff seeks leave to amend for the express purpose of adding new facts to those alleged in her Third Amended Complaint, plaintiff's argument all but concedes that granting her motion to amend will prejudice defendants and possibly waste scarce judicial resources by requiring a whole new round of dispositive motions.

The Fifth Circuit has noted that although prejudice to a party could be "ameliorated by a continuance . . . delaying rulings . . . never is ideal." Rushing v. Kansas City Southern Railway Co., 185 F.3d 508, 509 (5th Cir. 1999), cert. denied, 120 S. Ct. 1171 (2000), overruled on other grounds, Mathis v. Exxon Corp., 302 F.3d 448, 459 n.16 (5th Cir. 2002). Although the court could extend the deadlines for filing pleadings and motions to dismiss, extending these deadlines would not cure the additional time and expense required for defendants to file a new set of answers and possibly new motions to dismiss. "Moreover, a continuance would [neither] deter future dilatory behavior, nor serve to enforce . . . court

---

[23]Id.

[24]Id.

-13-

imposed scheduling orders." <u>Geiserman v. MacDonald</u>, 893 F.2d 787,
792 (5th Cir. 1990).

This action has been pending for over a year, and plaintiff
has filed an original and three amended complaints, but defendants
have filed two motions to dismiss. Despite plaintiff's reasonable
explanation for the cause of her delay in asserting the proposed
new facts that she seeks leave to add to her complaint, the court
is not persuaded that the Scheduling Order should be amended to
extend the deadlines for filing pleadings and motions to dismiss to
accommodate the new facts that plaintiff seeks leave to add.
Allowing the proposed amendment will not only require the court to
abandon long-established deadlines for filing pleadings and motions
to dismiss, but also will delay the trial and thereby prejudice the
defendants. Since, moreover, the differences between the proposed
fourth and third amended complaints would not change the court's
resolution of the defendants' motions to dismiss, the proposed
amendments would be futile. The court thus concludes that the
third and fourth factors weigh against Plaintiff's Motion to Amend
to file a fourth amended complaint. <u>See</u> <u>Southwestern Bell</u>, 346
F.3d at 547 (courts have "broad discretion to preserve the
integrity and purpose of the pretrial order").

C.    Conclusions

Although the court is persuaded that plaintiff has presented
a reasonable explanation for delay in seeking leave to file a
Fourth Amended Complaint to add newly discovered facts, the court

-14-

concludes that plaintiff has failed to establish good cause as required by Rule 16(b)(4) to amend pleadings after the deadline for doing so established by the court's Scheduling Order has expired because she has failed to establish that the proposed amendments are important, that the defendants will not be prejudiced, that a continuance would cure the prejudice to defendants, or that the proposed amendments would not be futile. See Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent.").

## II.  Defendants' Motions to Dismiss

Plaintiff's Third Amended Complaint asserts claims against defendants Socias and Harris County pursuant to 42 U.S.C. § 1983, the United States Constitution, the Americans with Disabilities Act, and § 504 of the Rehabilitation Act for unconstitutionally depriving her of her protected liberty interests, right to counsel, right to be heard, and right to reasonable medical care.[25] Defendants Socias and Harris County have each filed motions to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for which relief may be granted.

## A.  Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted tests the

---

[25]Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 1.

formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S. Ct. 2665 (2002). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. Id.

> "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

Swierkiewicz v. Sorema N.A., 122 S. Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974)). To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). This "plausibility standard" requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 127 S. Ct. at 1966). When considering a motion to dismiss, district courts are able to consider documents that are attached to a motion to dismiss if they are "referred to in the plaintiff's complaint and are central to

the plaintiff's claim." <u>Scanlan v. Texas A & M University</u>, 343 F.3d 533, 536 (5th Cir. 2003) (citing <u>Collins v. Morgan Stanley Dean Witter</u>, 224 F.3d 496, 498-99 (5th Cir. 2000)). <u>See also Causey v. Sewell Cadillac-Chevrolet, Inc.</u>, 394 F.3d 285, 288 (5th Cir. 2004) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

## B. Alleged Facts[26]

Plaintiff alleges that in 2013 she was victimized by a serial rapist in Houston, Texas. Plaintiff alleges that at all relevant times she suffered from bipolar disorder and symptoms associated with schizophrenia, that she was psychologically vulnerable, and that all reasonable observers could see that she suffered from mental illness. The criminal trial for plaintiff's rapist was set to begin December 7, 2015. The day before the trial was set to begin, investigators from the Harris County District Attorney's Office traveled to plaintiff's home in Longview, Gregg County, Texas, to transport her to Houston to testify. While testifying on December 8, 2015, plaintiff suffered a mental breakdown and was transported by ambulance from the courtroom to St. Joseph Medical Center in Houston for evaluation and treatment. Based on plaintiff's breakdown, the presiding judge ordered a recess until January of 2016.

---

[26]<u>Id.</u> at 6-30 ¶¶ 20-82.

During the trial recess Harris County Assistant District Attorney Socias obtained an order of attachment directing the Harris County Sheriff to take plaintiff into custody upon her discharge from St. Joseph's Medical Center without providing plaintiff notice or opportunity to be heard and knowing that plaintiff was unrepresented by counsel. The amount of plaintiff's bail was $10,000.00.

Plaintiff alleges that on December 9, 2015, Socias visited plaintiff at St. Joseph Medical Center where he spoke with her treatment providers; and on December 10, 2015, he sent plaintiff's mother the following email:

> I went to visit [Plaintiff] yesterday at the hospital and she was doing much better. I spoke with her doctor there and . . . made sure he understood the entire situation. They started medicating her and having her talk to the doctor. I thought it would take longer to see any change but I was impressed with her improvement already. She obviously wants out but I am making sure she is getting the best care we can give. I will stop by again either today or tomorrow to make sure she is still ok going into the weekend. The nurses all have my cell phone number so if something happens they will call me, day or night, so I can go over there.[27]

Plaintiff alleges that Socias deliberately refused to tell her mother that he had already obtained an Order jailing her upon discharge from St. Joseph Medical Center. Plaintiff alleges that Socias' deliberate and purposeful deception caused her mother to refrain from taking any material action to ensure that she was released from Harris County's custody.

---

[27]Id. at 11-12 ¶ 26.

Plaintiff alleges that on December 18, 2015, while still hospitalized but scheduled to be released, Harris County District Attorney investigator Brandon Plagens arrested, handcuffed, and transported plaintiff from St. Joseph Medical Center to the Harris County Jail.

Plaintiff alleges that upon taking custody of her, Sheriff's Department staff learned that she was mentally disabled, a victim witness not accused of committing any crime, and recently discharged from a hospital following in-patient mental health treatment. Plaintiff alleges that all reasonable observers could see that she suffered from mental illness. Nevertheless, Harris County Sheriff's Department staff booked plaintiff into jail pursuant to the court order attaching her as a material witness. Plaintiff alleges that during the booking process one or more Sheriff's Department employees falsely entered her information into the computer system used by jail staff to identify, classify, and manage inmates identifying her as a defendant in a sexual assault case, and deliberately failed to assign her to the jail's Mental Health Unit.

Plaintiff alleges that Socias refrained from informing the trial court that her mental condition had improved and she had been released from St. Joseph's Medical Center, thereby making the previously signed attachment order unnecessary and inappropriate.

Plaintiff alleges that while incarcerated in the Harris County Jail she did not receive treatment for her mental health

conditions, she was taunted and harassed by her cellmates because of her race, and her requests for her medication and for transfer to another location were denied. Plaintiff alleges that she was aggressively assaulted by another inmate, and that although she was then moved to a different location, she received no assistance filing aggravated assault charges against the other inmate.

Plaintiff alleges that on December 24, 2015, her mother contacted Socias to explore the possibility of posting bond so that she could be released for Christmas. Socias responded via email that if plaintiff were bonded out and then failed to testify that then "'things get very very bad for [Plaintiff] legally,'" and that if plaintiff was bonded out of jail and failed to "'stay medicated'" and "'[stay] out of trouble,'" that whoever bonded her out of jail would be "'on the hook'" for $15,000.[28] Plaintiff alleges that Socias' deliberate and purposeful deception caused her mother to refrain from taking any material action to effect her release from jail.

Plaintiff alleges that she spent the Christmas and New Year's holidays without a toothbrush, hairbrush, or towel simply because she was a rape victim who suffered from mental illness.

Plaintiff alleges that on December 28, 2015, she sought but did not receive psychiatric help from medical staff at the Harris County Jail. Plaintiff alleges that medical staff falsely

---

[28]Id. at 17-18 ¶ 41.

told her that she suffered from a confused belief that she was a victim, not the defendant, of an aggravated sexual assault, and that their false statements caused her significant emotional distress and mental anguish.

Plaintiff alleges that on January 8, 2016, she suffered a psychiatric episode in her cell during which she caused a disturbance by pleading loudly for God to rescue her. Plaintiff alleges that jail guards, including defendant Adams, responded, but instead of providing her medical care, they escalated the encounter into a physical confrontation during which Adams punched plaintiff in the face with a closed fist bruising her eye socket. Plaintiff alleges that another guard slammed her to the floor and painfully twisted her arms behind her back to handcuff her as she wept. Plaintiff alleges that following the disturbance Adams asked the Harris County District Attorney to file assault charges against her, and that the Harris County District Attorney's office began to prosecute her for felony assault.

Plaintiff alleges that on January 11, 2016, the Harris County District Attorney's office brought her to court to continue testifying in her rapist's criminal trial. Plaintiff alleges that she was forced to appear in court with a black eye wearing someone else's ill-fitting, used clothes provided by the prosecutor and bright orange jail-issue rubber shoes.

Plaintiff alleges that on January 14, 2016, the Harris County District Attorney's office dismissed the felony assault case

-21-

against her "'in the interest of justice,'" and because prosecutors "'cannot prove the case beyond a reasonable doubt.'"[29]  On the same day, the judge presiding over the trial of plaintiff's rapist issued an order releasing plaintiff as a material witness, and the Harris County Jail released plaintiff from custody.

Plaintiff alleges that on or about July 20, 2016, Harris County District Attorney, Devon Anderson, made a public statement about the plaintiff's treatment stating:

a.   "She [Jane Doe] was committed to a psychiatric hospital because she was a danger to herself";

b.   "[B]ecause of overcrowding, she [Jane Doe] was released ten days later";

c.   "At that point, the decision was made to put her in custody for her own safety and to ensure her appearance at trial, which had been recessed";

d.   "The system broke down in the jail";

e.   "She [Jane Doe] did not receive the proper care in the Harris County Jail";

f.   "[W]e recognize that because of the holidays, the lack of resources that were available, the prosecutor made countless phone calls trying to find another place to put her, we have reached out to mental health organizations around town"; and

g.   "[W]e are going to be engaging in training to — for prosecutors and staff to learn how to deal with someone in a mental crisis — mental health crisis."[30]

---

[29]Id. at 22 ¶ 54.

[30]Id. at 29 ¶ 81.

## C. The Claims Against Socias

Plaintiff asserts claims for damages against Socias in his personal capacity under 42 U.S.C. § 1983, alleging that Socias, acting under color of state law, deprived her of constitutional rights protected by the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution including:

(a) the right to be free from unreasonable searches and seizures;[31]

(b) the right to procedural due process by depriving her of notice, the opportunity to be heard, and/or the right to counsel before having her committed,[32]

(c) the right to procedural due process by depriving her of notice, the opportunity to be heard, and/or the right to counsel before having her committed and jailed;[33]

(d) the right to counsel.[34]

Socias argues that he is entitled to absolute prosecutorial immunity from all the causes of action asserted against him because all the acts that plaintiff complains about were prosecutorial functions intimately associated with the judicial phase of the criminal process that he performed as an advocate for the State of Texas.[35]

---

[31]Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 30-37 ¶¶ 83-113.

[32]Id. at 37-42 ¶¶ 114-134.

[33]Id. at 42 ¶¶ 135-138.

[34]Id. at 42-45 ¶¶ 139-146.

[35]Socias's Second Amended MD, Docket Entry No. 40, pp. 6, 11.

1.  Applicable Law

    (a)  42 U.S.C. § 1983

42 U.S.C. § 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 109 S. Ct. 1865, 1870 (1989)  (quoting Baker v. McCollan, 99 S. Ct. 2689, 2694 n.3 (1979)).  To establish § 1983 liability plaintiff must prove that she suffered "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor."  Victoria W. v. Larpenter, 369 F.3d 475, 482 (5th Cir. 2004).  Plaintiff must also show that the deprivation of federal right suffered was due to intentional conduct or deliberate indifference and not the result of mere negligence.  Id.

    (b)  Absolute Immunity

Despite § 1983's broad reach the Supreme Court "has long recognized that the statute was not meant to effect a radical

-24-

departure from ordinary tort law and the common-law immunities applicable in tort suits." Rehberg v. Paulk, 132 S. Ct. 1497, 1502 (2012)). In Rehberg the Supreme Court explained that because Congress intended § 1983 to be understood in light of common law principles, "the Court has looked to the common law for guidance in determining the scope of the immunities available in a § 1983 action." Id. The Court has made clear that although the common law is used to determine the scope of the absolute immunity available under § 1983, the federal civil rights statute is not "simply a federalized amalgamation of pre-existing common-law claims, an all-in-one federal claim encompassing the torts of assault, trespass, false arrest, defamation, malicious prosecution, and more." Id. at 1504. Instead, the "federal claim created by § 1983 differs in important ways from those pre-existing torts. It is broader in that it reaches constitutional and statutory violations that do not correspond to any previously known tort." Id. at 1504-1505. "But it is narrower in that it applies only to tortfeasors who act under color of state law." Id. at 1505. "Thus, both the scope of the [§ 1983] tort[s] and the scope of the absolute immunity available in § 1983 actions differ in some respects from the common law." Id.

The Court has taken a "functional approach" to determining who is entitled to absolute immunity. Rehberg, 132 S. Ct. at 1503 (citing Forrester v. White, 108 S.Ct. 538, 545 (1988)). The Court

> consult[s] the common law to identify those governmental
> functions that were historically viewed as so important
> and vulnerable to interference by means of litigation
> that some form of absolute immunity from civil liability
> was needed to ensure that they are performed "with
> independence and without fear of consequences."

Id. (quoting Pierson v. Ray, 87 S. Ct. 1213, 1218 (1967)).

Following this approach, the Court has identified the following

functions that are absolutely immune from liability for damages

under § 1983: actions taken by legislators within the legitimate

scope of legislative authority, Tenney v. Brandhove, 71 S. Ct. 783,

788 (1951); actions taken by judges within the legitimate scope of

judicial authority, Pierson, 87 S. Ct. at 1217-18; testimony given

by witnesses at trial, Briscoe v. LaHue, 103 S. Ct. 1108, 1111

(1983); and, relevant to this case, actions taken by prosecutors in

their role as advocates in the judicial process; Imbler v.

Pachtman, 96 S. Ct. 984, 990 (1976).

In Imbler the Court held that "a prosecutor enjoys absolute

immunity from § 1983 suits for damages when he acts within the

scope of his prosecutorial duties." Id. Absolute immunity shields

a prosecutor from suit for conduct such as initiating a prosecution

and presenting the State's case, i.e., conduct that is "intimately

associated with the judicial phase of the criminal process," id. at

995, even when faced with allegations of knowingly using perjured

testimony and withholding exculpatory evidence. Id. at 987-88.

Conversely, a prosecutor is not entitled to absolute immunity for

conduct that is more appropriately classified as administrative or

investigative.  Id. at 995.  When determining if conduct is entitled to absolute immunity the critical inquiry is whether the prosecutor's actions were intimately related to his role as an advocate for the State during the judicial phase of the criminal process.  Id. & n.33.

In Imbler the Court explained that absolute immunity for prosecutorial duties is justified by "concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust."  Id. at 991.  Recognizing that absolute immunity "leave[s] the genuinely wronged defendant [or other party] without civil redress against a prosecutor whose malicious or dishonest action deprives him of liberty," id. at 993, the Court nonetheless concluded that "the alternative of qualifying a prosecutor's immunity would disserve the broader public interest [because i]t would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system."  Id. at 993-94.  The Court emphasized that

> the immunity of prosecutors from liability in suits under § 1983 does not leave the public powerless to deter misconduct or to punish that which occurs.  This Court has never suggested that the policy considerations which compel civil immunity for certain governmental officials also place them beyond the reach of the criminal law. Even judges, cloaked with absolute civil immunity for centuries, could be punished criminally for willful

> deprivations of constitutional rights on the strength of
> 18 U.S.C. § 242, the criminal analog of § 1983. . . The
> prosecutor would fare no better for his willful acts.
> Moreover, a prosecutor stands perhaps unique, among
> officials whose acts could deprive persons of
> constitutional rights, in his amenability to professional
> discipline by an association of his peers. These checks
> undermine the argument that the imposition of civil
> liability is the only way to insure that prosecutors are
> mindful of the constitutional rights of persons accused
> of crime.

Id. at 994.

Since Imbler the Supreme Court and the Fifth Circuit have employed the "functional approach" to determine whether a prosecutor's acts entitle him to absolute immunity. Burns v. Reed, 111 S. Ct. 1934, 1939 (1991); Buckley v. Fitzsimmons, 113 S. Ct. 2606, 2613 (1993); Loupe v. O'Bannon, 824 F.3d 534, 539 (5th Cir. 2016). Under the functional approach courts "look[ ] to 'the nature of the function performed, not the identity of the actor who performed it'" when assessing whether conduct is prosecutorial, and thus absolutely protected. Buckley, 113 S. Ct. at 2613 (quoting Forrester, 108 S. Ct. at 545); Loupe, 824 F.3d at 539. Absolutely protected acts of advocacy include those "undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State." Buckley, 113 S. Ct. at 2615; Loupe, 824 F.3d at 539. A prosecutor is thus absolutely protected when he appears in court in support of an application for a search warrant and presents evidence at a probable cause hearing, Burns, 111 S. Ct. at 1941-42, and when he prepares and files unsworn documents

in order to obtain an arrest warrant, <u>Kalina v. Fletcher</u>, 118
S. Ct. 502, 509-10 (1997). Absolute immunity also protects a
prosecutor when he evaluates evidence and presents that evidence at
trial or before a grand jury even if the evidence is false.
<u>Imbler</u>, 96 S. Ct. 984 & 995 n.32; <u>Burns</u>, 111 S. Ct. at 1940-42;
<u>Buckley</u>, 113 S. Ct. 2614-15. <u>See also</u> <u>Rykers v. Alford</u>, 832 F.2d
895, 897 (5th Cir. 1987) ("Prosecutors may appeal to this immunity
in the face of allegations of the knowing use of perjured testimony
and the withholding of exculpatory information."). By shielding
prosecutors engaging in these activities, absolute immunity "serves
the policy of protecting the judicial process." <u>Burns</u>, 111 S. Ct.
1942. Only qualified immunity is available to prosecutors when
they perform investigative or administrative functions unrelated to
judicial proceedings.[36] <u>Id.</u> at 1938 n.2. <u>See also</u> <u>Buckley</u>, 113
S. Ct. at 2615-16. Investigative acts outside the scope of
absolute immunity include giving legal advice to the police during
a pretrial investigation, <u>Burns</u>, 111 S. Ct. 1943-45; conspiring to
fabricate evidence before a grand jury is convened and making false
statements at a press conference, <u>Buckley</u>, 113 S. Ct. 2616-18; and

---

[36]Qualified immunity protects "government officials performing
discretionary functions" from civil liability "insofar as their
conduct does not violate clearly established statutory or
constitutional rights of which a reasonable person would have
known." <u>Harlow v. Fitzgerald</u>, 102 S. Ct. 2727, 2738 (1982). <u>See</u>
<u>Mitchell v. Forsyth</u>, 105 S. Ct. 2806, 2815 (1985) (Qualified
immunity is "an <i>immunity from suit</i> rather than a mere defense to
liability").

acting as a complaining witness by providing sworn statements to a court, <u>Kalina</u>, 118 S. Ct. at 509-10.

In sum, acts undertaken in direct preparation of judicial proceedings warrant absolute immunity, whereas other acts, such as the preliminary gathering of evidence that may ripen into a prosecution, are too attenuated to the judicial process to afford absolute protection. <u>Loupe</u>, 824 F.3d at 538-39 (denying prosecutor absolute immunity for ordering a sheriff's deputy to make a warrantless arrest); <u>Hoog-Watson v. Guadalupe County, Texas</u>, 591 F.3d 431, 438 (5th Cir. 2009) (recognizing that prosecutors performing investigative functions normally performed by police officers should receive only the immunity accorded to police officers). The analytical key to prosecutorial immunity, therefore, is advocacy, <u>i.e.</u>, whether the actions at issue are those of an advocate performed in intimate association to the judicial process. <u>Id.</u>

Socias, as "the official seeking absolute immunity[,] bears the burden of showing that such immunity is justified for the function in question." <u>Burns</u>, 111 S. Ct. at 1939; <u>Hoog-Watson</u>, 591 F.3d at 437-38 (prosecutor asserting affirmative defense of absolute immunity bears burden of proving that her conduct served a prosecutorial function).

2.   <u>Application of the Law to the Plaintiff's Allegations</u>

Socias argues that he is entitled to absolute immunity because at all relevant times he was acting in his capacity as a prosecutor

-30-

employed by Harris County District Attorney Devon Anderson, because the conduct attributed to him in the Plaintiff's Third Amended Complaint occurred while he was performing a prosecutorial function, and because Socias' alleged wrongful actions were all intimately associated with the judicial phase of the criminal process. Because Socias has only asserted entitlement to absolute not qualified immunity, the court makes two important assumptions: first, that plaintiff's allegations of fact are true; and second, that plaintiff alleges constitutional violations for which § 1983 provides a remedy. See Buckley, 113 S. Ct. at 2609.

Citing Harris v. Dallas County District Attorney's Office, 196 F.3d 1256 (5th Cir. 1999) (Table); Adams v. Hanson, 656 F.3d 397 (6th Cir. 2011); Betts v. Richard, 726 F.2d 79 (2d Cir. 1984); and Daniels v. Kieser, 586 F.2d 64 (7th Cir. 1978), cert. denied, 99 S. Ct. 2050 (1979), Socias argues "courts have uniformly recognized that a prosecutor's procurement of an order to detain a witness for trial — regardless of the motive or impropriety of the procedures — to be a prosecutorial function."[37]  The courts in each of these cases have indeed held that prosecutors are entitled to absolute immunity for seeking a judicial order to detain a material witness. Socias argues that

_____

[37]Socias's Second Amended MD, Docket Entry No. 40, p. 6.  See also id. at 12-18; Defendant Nicholas Socias's Reply to Plaintiff's Response to Motion to Dismiss ("Socias's Reply in Support of Second Amended MD"), Docket Entry No. 55.

[t]he only cases that have declined to extend absolute immunity to a prosecutor in this context have turned on one of two bases: (1) the prosecutor's conduct was a sworn statement or affirmation that was not quasi-judicial under Kalina v. Fletcher, . . . [118 S. Ct. 502 (1997)]; or (2) the prosecutor had violated a statutory or court-ordered administrative responsibility that was not quasi-judicial, as in Odd v. Malone, 538 F.3d 202 (3d Cir. 2008). Neither circumstance applies here.[38]

In Kalina, 118 S. Ct. at 506, the Supreme Court assessed whether a prosecutor was performing a prosecutorial function when she undertook three separate acts: filing an information, a motion for an arrest warrant, and an affidavit in which she swore that the facts provided to the court in support of the arrest warrant were true. An arrest warrant was issued based on the prosecutor's sworn statements. Id. The Court determined that all but the act of swearing to the underlying facts in the affidavit, id. at 509-10, were prosecutorial in function. Explaining that "[t]estifying about facts is the function of the witness, not of the lawyer," id. at 510, the Court concluded that "[e]ven when the person who makes the constitutionally required 'Oath or affirmation' is a lawyer, the only function that she performs in giving sworn testimony is that of a witness." Id.

Odd was a consolidated appeal of two cases, Odd v. Malone, and Schneyder v. Smith, 2007 WL 119955 (E.D. Pa. Jan. 9, 2007), in which prosecutors had obtained bench warrants to detain material witnesses whose testimony was to be used in murder prosecutions.

---

[38]Socias's Second Amended MD, Docket Entry No. 40, p. 18.

See Odd, 538 F.3d at 205 ("These consolidated appeals concern the scope of prosecutorial immunity."). The prosecutor failed to seek the release of Odd, a third-party witness held in state custody, after the proceedings in which he was to testify terminated. Id. at 215.

In the other case, the plaintiff, Schneyder, was arrested for failure to appear and was detained when she failed to post bail. The judge who detained Schneyder directed the prosecutor to notify him of any delays in the criminal prosecution. Schneyder alleged that the judge made it clear that he intended to release her in the event of a continuance and that the prosecutor acknowledged the judge's instruction. Less than a week later the trial was continued for more than three-and-a-half months. The prosecutor failed to notify the detaining judge, and Schneyder remained incarcerated. Her family hired an attorney, who learned of the detaining judge's admonition to the prosecutor to notify him of any continuances in the criminal prosecution. The attorney notified the judge, and Schneyder was released forty-eight days after the prosecution was continued. Id. at 205-06. Schneyder sued the District Attorney's Office and the prosecutor under § 1983. The district court held that the prosecutor was entitled to absolute prosecutorial immunity. Schneyder appealed, and the Third Circuit reversed the dismissal of Schneyder's claims.

The Third Circuit described the omission giving rise to Schneyder's suit as a failure to notify the detaining judge that

-33-

the criminal case had been continued, and also as an omission to "inform[ ] the court about the status of a detained witness." Id. at 213. Schneyder, "acknowledge[d] that [the prosecutor] was acting in her prosecutorial capacity when she secured the material witness warrant for Schneyder's arrest." Id. at 212. Schneyder alleged, however, that the prosecutor's failure to notify the judge who had issued the warrant (per his order and per local custom) that the trial in which she was to testify had been continued was an administrative oversight not entitled to prosecutorial immunity. The prosecutor argued that her failure to seek Schneyder's release from custody following the continuance was an act of prosecutorial discretion entitled to absolute immunity. Id. The Third Circuit held that the actions of both prosecutors were not acts of advocacy intimately associated with the judicial phase of a criminal process but were, instead, administrative tasks which the prosecutors failed to complete. Id. at 217. The Third Circuit based its holding in Schneyder's case on three observations: (1) because the trial in which Schneyder was to testify was continued, the prosecutor's failure to act occurred during a period of judicial inactivity; (2) because the detaining judge allegedly directed the prosecutor to inform him of changes in the trial's status, the prosecutor's failure to act constituted an act of disobedience to a judicial order; and (3) because the custom and practice of the Philadelphia courts was to assign sole responsibility for monitoring material witnesses to the District Attorney's Office and to individual prosecutors and the gist of this obligation was

-34-

"plainly administrative," Odd 538 F.3d at 214, the prosecutor's failure to act was an administrative act, lacking any significant discretionary or advocative component. Id. Three years later the Third Circuit reaffirmed its holding in Odd and the reasons for it. See Schneyder v. Smith, 653 F.3d 313, 332 (3d Cir. 2011).

Plaintiff argues that Socias is not entitled to absolute immunity because

> (1) Socias acted outside of his prosecutorial function and in the clear absence of all jurisdiction, (2) Socias' conduct was not intimately associated with the judicial phase of the criminal process, (3) the trial court had no authority to seize Plaintiff, and (4) the trial court's attachment was void.[39]

In addition, citing Schneyder, 653 F.3d at 313, plaintiff argues that Socias engaged in conduct substantially similar to conduct that the Third Circuit held not entitled to any immunity, i.e., that Socias wrongfully failed to inform the trial court that plaintiff's condition improved and she was released from St. Joseph's Medical Center.[40]

> (a) Socias Did Not Act Outside of His Prosecutorial Function and in the Clear Absence of All Jurisdiction

Citing ¶¶ 22.a-22.l and 120 of her Third Amended Complaint, plaintiff argues that Socias acted outside of his prosecutorial function and in the clear absence of all jurisdiction when he obtained an invalid order of attachment pursuant to which plaintiff

---

[39]Plaintiff's Response to Socias' Motion to Dismiss ("Plaintiff's Response to Socias' MD"), Docket Entry No. 49, p. 14.

[40]Id. at 19-22.

was arrested and jailed during a recess in the criminal trial of her rapist.[41] Plaintiff argues that Socias is not entitled to prosecutorial immunity because he obtained the order of attachment by (a) perpetrating fraud on the court,[42] (b) violating Texas Disciplinary Rule of Professional Conduct 3.03(A),[43] and (c) violating a variety of state and federal laws.[44] The cited paragraphs of plaintiff's complaint allege:

---

[41]Id. at 15. See also id. at 30-31.

[42]Plaintiff argues that Socias' alleged acts constitute fraud on the court because in First National Bank of Louisville v. Lustig, 96 F.3d 1554, 1573 (5th Cir. 1996), the Fifth Circuit held that "egregious misconduct, such as . . . the fabrication of evidence by a party in which an attorney is implicated will constitute a fraud on the court." See Plaintiff's Response to Socias' MD, Docket Entry No. 49, p. 15.

[43]Plaintiff argues that Socias' alleged acts violated Texas Disciplinary Rule of Professional Conduct 3.03(A), which imposes a duty

(1) to disclose a fact to a tribunal because disclosure was necessary to avoid assisting a criminal or fraudulent act and/or (2) to disclose to the tribunal in an ex parte proceeding an unprivileged fact which he reasonably believed should be known by that entity for it to make an informed decision.

See Plaintiff's Response to Socias' MD, Docket Entry No. 49, pp. 17-18.

[44]Plaintiff also argues that Socias' alleged acts

(1) violated Texas Code of Criminal Procedure § 56.02 [by failing to provide] her notice or an opportunity to be heard, (2) committed the Texas criminal offense of "Official Oppression", and (3) committed the federal criminal offense of "Conspiracy Against Rights" when [he] victimized Plaintiff.

See Plaintiff's Response to Socias' MD, Docket Entry No. 49, p. 19.

-36-

22. Harris County personnel (including but not limited to Assistant District Attorney Nicholas Socias ["ADA Socias"]):

    a.    conspired to have Plaintiff seized and detained during said recess;

    b.    conspired to obtain an unauthorized court order to imprison Plaintiff in the Harris County Jail upon her discharge from St. Joseph Medical Center;

    c.    secured the issuance of a subpoena for an invalid address for an earlier trial date and never had Plaintiff served therewith;

    d.    subsequently failed to issue (much less serve) a valid subpoena listing Plaintiff's address in Gregg County for the actual trial date;

    e.    knew Plaintiff was not a resident of Harris County;

    f.    is presumed to have known that Plaintiff's residence outside of Harris County deprived the trial court of jurisdiction to grant an attachment Order;

    g.    knew he did not satisfy the Texas Code of Criminal Procedure's plain language requirement that an out-of-county witness must be under a subpoena before an attachment order can issue;

    h.    was incapable of satisfying said Section's plain-language requirement because Plaintiff:

        i.    was not subject to a valid subpoena; and

        ii.    was not a resident of Harris County.

    i.    obtained an unauthorized Order of attachment directing the Harris County Sheriff to take Plaintiff into custody upon her discharge from St. Joseph Medical Center;

    j.    obtained said attachment Order while Plaintiff was unrepresented by counsel;

k.    obtained said attachment Order without
      providing Plaintiff with notice or an
      opportunity to be heard;

l.    knew at all relevant times that said Order was
      invalid, that Plaintiff was unrepresented by
      counsel, and that Plaintiff was not given
      notice or an opportunity to be heard prior to
      the Order being issued (despite the
      fundamental and material effect thereof on her
      well-established constitutional rights);

                    . . .

120.  The risk of an erroneous deprivation under
      these circumstances was certain insofar as
      Texas statutes clearly and unambiguously
      deprived the trial court of jurisdiction to
      issue an Order of attachment if Defendant
      Socias had informed it that:

      a.    Plaintiff was not a resident of
            Harris County and

      b.    Plaintiff had never been served with a
            subpoena.[45]

Plaintiff argues that these allegations show that Socias obtained

the attachment order pursuant to which she was arrested and jailed

either by misrepresenting — or failing to disclose — material facts

and relevant law to the trial court,[46] but does not allege that

Socias obtained the attachment order based on his own sworn

_____

[45]Plaintiff's Third Amended Complaint, Docket Entry No. 35,
pp. 8-9 ¶ 22.a-22.1 and p. 38 ¶ 120.

[46]Plaintiff's Third Amended Complaint, Docket Entry No. 35,
p. 33 ¶ 95 ("The signing of a facially valid attachment order under
these circumstances cannot constitute an intervening cause for any
purpose because Defendant Socias knowingly omitted material
information from his argument to the trial court knowing said facts
would have divested said court of jurisdiction as a matter of
law.").

testimony. See Kalina, 118 S. Ct. at 509-10 (holding that swearing to the underlying facts in the affidavit was not a prosecutorial function). To the contrary, plaintiff alleges that the District Attorney Devon Anderson released a public statement saying that "[a] deputy constable swore out a mental health warrant."[47] Although plaintiff argues that Socias could not have been acting in a prosecutorial capacity when he made the alleged misrepresentations and failed to make necessary disclosures to the trial court because those acts constituted fraud on the court and violated the Texas Rules of Professional Conduct and state and federal criminal laws, she fails to cite any authority holding that prosecutors lose their entitlement to absolute immunity by committing wrongful acts while performing such prosecutorial functions.

Both the Supreme Court and the Fifth Circuit have held that prosecutors are entitled to absolute immunity even when they are alleged to have knowingly presented perjured testimony, failed to disclose exculpatory evidence, and engaged in other malicious acts "so long as the statements [a]re related to the proceeding[s in which they were made.]" Burns, 111 S. Ct. at 1491. See also Imbler, 96 S. Ct. at 995 (recognizing absolute immunity even for prosecutors accused of presenting perjured testimony and failing to disclose exculpatory evidence); Harris, 196 F.3d 1256 at *1 ("Even

---

[47]Id. at 2 ¶ 7(f).

-39-

if [the prosecutor] acted inappropriately . . . and failed to adduce enough evidence to merit a writ of attachment, she still receives absolute prosecutorial immunity.").

Plaintiff has not cited, and the court has not found, any authority holding that a prosecutor alleged to have misrepresented or failed to disclose material facts or relevant law to a court while advocating for the state in a criminal proceeding has acted outside of his prosecutorial function or in the clear absence of all jurisdiction. To the contrary the Fifth Circuit has held that

> [f]or purposes of immunity determinations . . . the presence or absence of jurisdiction is determined with reference to whether the challenged activity falls within the category of conduct in which a prosecutor is generally authorized to engage, rather than with reference to the wrongful nature or excessiveness of the conduct.

Cousin v. Small, 325 F.3d 627, 635 (5th Cir. 2003) (citing Kerr v. Lyford, 171 F.3d 330, 337 (5th Cir. 1999) (citing Stump v. Sparkman, 98 S. Ct. 1099, 1105 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'")).

In Stump the Court cited Bradley v. Fisher, 80 U.S. 335, 352 (1871), for its description of the distinction between lack of jurisdiction and excess of jurisdiction with the following examples: If a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the

-40-

clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune. Although Stump and Bradley addressed judicial immunity, "immunity of a prosecutor is based upon the same considerations that underlie the common-law immunities of judges. . . acting within the scope of their duties." Butz v. Economou, 98 S. Ct. 2894, 2912 (1978). Plaintiff's allegations that Socias obtained the attachment order by engaging in the acts alleged in ¶¶ 22.a-22.1 and 120 of her Third Amended Complaint and thereby perpetrated fraud on the court, violated a rule of professional conduct, and violated various state and federal criminal laws, all allege that Socias exceeded his authority, not that he acted outside of his prosecutorial function or in the clear absence of all jurisdiction. Cousin, 325 F.3d at 635. See also Bradley, 80 U.S. at 352 (describing the distinction between acting in excess of authority and acting in the absence of all jurisdiction).

Plaintiff has not argued, and the court does not find, that by obtaining the order of attachment pursuant to which plaintiff was arrested and jailed, or by engaging in any of the acts alleged in ¶¶ 22.a-22.1 or 120 of Plaintiff's Third Amended Complaint, Socias engaged in acts that are not prosecutorial in function. Such an argument would fail because while plaintiff's complaint does not disclose whether Socias obtained the attachment order during an

-41-

in-court or an out-of-court proceeding, plaintiff alleges that the attachment order was obtained during a recess in a criminal trial in which plaintiff chose to testify,[48] the trial court called the recess on December 8, 2015, when plaintiff suffered a mental breakdown while testifying,[49] the breakdown left plaintiff so incapacitated that she had to be hospitalized,[50] the attachment order signed by the trial court was facially valid,[51] and the attachment order insured plaintiff's availability to testify when the trial resumed in January of 2016.[52] See Burns, 111 S. Ct. at

---

[48]Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 1 ¶ 1 ("Plaintiff was a rape victim and chose to testify against her rapist at trial."); p. 6 ¶ 20.a-.b ("Plaintiff: a. was raped, choked, beaten, and sodomized by a serial rapist in Houston in 2013; b. was called to testify against said rapist[.]"); p. 7 ¶ 20.h ("[Plaintiff] testified against her rapist in 176th District Court in Harris County, Texas[.]"); p. 8 ¶ 22.i ("[Socias] obtained an unauthorized Order of attachment directing the Harris County Sheriff to take Plaintiff into custody upon her discharge from St. Joseph Medical Center[.]").

[49]Id. at 1 ¶ 2 ("Plaintiff suffered a mental breakdown during said testimony."); p. 7 ¶ 20.1 ("[Plaintiff] suffered a mental breakdown during her testimony on December 8, 2015[.]"); p. 7 ¶ 21 ("Based thereon [i.e., on the plaintiff's mental breakdown], the presiding judge ordered a recess until January 2016[.]").

[50]Id. at 7 ¶ 20.o ("[Plaintiff] was transported by ambulance to St. Joseph Medical Center in Houston, Texas for evaluation and treatment[.]").

[51]Id. at 33 ¶ 95 ("The signing of a facially valid attachment order under these circumstances cannot constitute an intervening cause for any purpose because Defendant Socias knowingly omitted material information from his argument to the trial court knowing said facts would have divested said court of jurisdiction as a matter of law.").

[52]Id. at 14 ¶ 36 ("Harris County Sheriff's Department staff agreed and conspired with ADA Socias . . . to book Plaintiff into
(continued...)

1941-42 (a prosecutor is absolutely protected when he appears in court in support of an application for a search warrant and presents evidence at a probable cause hearing); <u>Harris</u>, 196 F.3d 1256 at *1 (recognizing that a prosecutor's efforts to secure the appearance of the state's trial witnesses in court are activities intimately associated with the judicial phase of the criminal process, and thus are entitled to absolute immunity).

Regardless of whether Socias' alleged actions or inactions occurred in court or out of court, they were thus prosecutorial functions "intimately associated with the judicial phase of the criminal process." <u>Imbler</u>, 96 S. Ct. at 995 (holding that prosecutor was entitled to absolute immunity for making statements to police regarding the questioning of a witness during a courtroom recess).

Because the actions that Socias took to obtain the attachment order were actions that fell within his prosecutorial function as an advocate for the State of Texas, he is entitled to absolute immunity even if his representations and/or failure to disclose material facts or relevant law to the court were false, misleading, or malicious. <u>See</u> <u>Burns</u>, 111 S. Ct. at 1941 (recognizing that

_____

[52] (...continued)
the Harris County Jail under:  a. color of state law; and b. the guise of Plaintiff being a properly 'attached' material witness.");
p. 17 ¶ 41 ("On Christmas Eve 2015, Plaintiff's mother:  . . . c. was informed by ADA Socias (via email) that if Plaintiff were bonded out and then failed to testify, then 'things get very very bad for [Plaintiff] legally[.]"").

prosecutors do not forfeit their absolute immunity by making knowingly false statements to a court, "so long as the statements [a]re related to the proceeding[s in which they were made]").

        (b)   Socias is Not Alleged to have Engaged in Conduct Substantially Similar to Conduct that the Third Circuit Held Not Entitled to Any Immunity

Citing <u>Schneyder</u>, 653 F.3d at 331-34, plaintiff argues that Socias engaged in conduct substantially similar to conduct that the Third Circuit held not to be entitled to any immunity.[53] Plaintiff argues that by failing to inform the trial court that plaintiff's condition improved and that she was released from St. Joseph's Medical Center, Socias engaged in "administerial and non-advocative conduct . . . [that] precluded the trial court from exercising its proper function via fraud, and did not comport with any prosecutorial function or duty recognized within the United States."[54]

Although Plaintiff's Third Amended Complaint alleges that Socias violated his well established duty as an officer of the court by failing to advise the trial court of a material change in circumstances surrounding plaintiff's detention, unlike the facts at issue in <u>Schneyder</u>, plaintiff has not alleged that the trial

---

[53]Plaintiff's Response to Socias' MD, Docket Entry No. 49, pp. 19-22.

[54]<u>Id.</u> at 22.  <u>See also</u> Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 34 ¶¶ 102-106.

court ever imposed a ministerial duty on Socias to report material changes in the circumstances surrounding plaintiff's detention, that there is a local custom or policy that required prosecutors to report such changes, or that any failure to inform the court of a material change occurred during a period of judicial inactivity. To the contrary, plaintiff expressly alleges that following plaintiff's mental breakdown during her testimony, the presiding judge ordered a recess until January of 2016,[55] Socias "conspired to obtain an unauthorized court order to imprison Plaintiff in the Harris County Jail upon her discharge from St. Joseph Medical Center,"[56] and "the amount of [her] bond was $10,000."[57] These factual allegations show not only that the trial court contemplated and provided for material change in the circumstances of plaintiff's detention about which she contends Socias had a duty to inform the court, but also that the trial court was fully aware that if plaintiff did not pay a bond she would remain in custody until the trial resumed in January of 2016, _i.e._, on a schedule established by the trial court. These allegations distinguish the facts at issue here from those at issue in Schneyder, 653 F.3d at 331-34.

---

[55]Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 7 ¶ 21.

[56]Id. at 8 ¶ 22.b.

[57]Id. at 18 ¶ 43.b.

-45-

(c)  Socias  Did  Not  Engage  in  Conduct  that  Was  Not
                         Intimately  Associated  With  the  Judicial  Phase  of
                         the  Criminal  Process

    Citing  ¶¶  26-27,  32,  41-43,  and  113  of  her  Third  Amended

Complaint,  plaintiff  argues  that  Socias  engaged  in  conduct  that  was

not  intimately  associated  with  the  judicial  phase  of  the  criminal

process  by  (1)  rendering  legal  advice  to  plaintiff's  mother  in  an

effort  to  ensure  plaintiff  remained  in  custody,  (2)  communicating

with  hospital  staff  at  St.  Joseph's  about  the  plaintiff's  release,

and  (3)  sending  a  Harris  County  investigator  to  St.  Joseph's  to

acquire  plaintiff  and  deliver  her  to  the  Harris  County  Jail.[58]

Plaintiff  argues  that

        [n]one  of  these  actions  warrant  absolute  immunity  because
        none  are  intimately  associated  with  the  judicial  phase  of
        the  criminal  process.   For  example,  neither  Plaintiff  nor
        her  mother  were  in  the  courtroom  (or  even  the  courthouse)
        at  the  time  of  these  acts,  Plaintiff  was  not  under
        subpoena  at  any  time  relevant  hereto,  and  any  person  (not
        just  a  prosecutor  or  lawyer)  could  engage  in  each  of
        these  acts  precisely  because  they  are  not  intimately
        associated  with  the  judicial  phase  of  the  criminal
        process.[59]

    Plaintiff's  arguments  that  Socias  gave  legal  advice  to  her

mother,  communicated  with  St.  Joseph's  staff  about  when  she  would

be  released,  and  sent  a  county  investigator  to  St.  Joseph's  to  take

her  to  jail  were  not  intimately  associated  with  the  judicial  phase

_____

        [58]Plaintiff's  Response  to  Socias'  MD,  Docket  Entry  No.  49,
p.  22  (citing  Plaintiff's  Third  Amended  Complaint,  Docket  Entry
No.  35,  pp.  11-12  ¶¶  26-27  and  32;  pp.  17-18  ¶¶  41-43;  p.  37
¶  113).

        [59]Id.  at  22-23.

                                  -46-

of the criminal process has no merit because plaintiff alleges that these acts occurred during a recess in the trial of plaintiff's rapist, and that Socias engaged in these acts for the sole purpose of ensuring that plaintiff was available to testify when the trial resumed. These facts are analogous to the facts at issue in Harris, 196 F.3d at 1256, a case in which the Fifth Circuit held the prosecutor entitled to absolute immunity.

In Harris the plaintiff argued that absolute immunity was not available to the defendant prosecutor because "telling her to pay no heed to the subpoena to appear in court and getting the trial judge to jail her pursuant to a writ of attachment without a hearing are not part of the prosecutorial function." Id. at *1. Citing Kalina, 118 S. Ct. at 509-510, the Fifth Circuit disagreed stating:

> A prosecutor's management of the state's trial witnesses, which includes instructing them on when to appear in court, and efforts to secure the appearance of the state's trial witnesses in court are activities intimately associated with the judicial phase of the criminal process, and thus are entitled to absolute immunity. . . Even if [the prosecutor] acted inappropriately in her dealings with Harris, and failed to adduce enough evidence to merit a writ of attachment, she still receives absolute prosecutorial immunity.

Harris, 196 F.3d 1256 at *1 (citing Henzel v. Gerstein, 608 F.2d 654, 657 (5th Cir. 1979) ("[P]rosecutorial immunity extends to a prosecutor's actions in 'initiating and pursuing a criminal prosecution and in presenting the state's case . . . even where the prosecutor knowingly used perjured testimony, or failed to make

-47-

full disclosure of all facts.'"); <u>Esteves v. Brock</u>, 106 F.3d 674, 677 (5th Cir.), <u>cert. denied</u>, 118 S. Ct. 91 (1997) (holding that a prosecutor is entitled to absolute immunity for his use of peremptory strikes in an unconstitutional manner).

Plaintiff's attempts to distinguish <u>Harris</u> are not persuasive. Plaintiff argues that Socias was not "managing" her because he was not telling her when to appear, and that Socias was not acting within the scope of his prosecutorial duties because he allegedly gave incorrect legal advice to her mother in an effort to ensure that she remained jailed.[60] But as Socias observes:

> [T]he purpose of the attachment was to tell plaintiff not only "when to appear" but also to assure that she actually <u>did appear</u>. . .
>
> . . . [P]laintiff accuses Socias of warning her mother of the responsibilities that come with bailing out her daughter and the consequences of plaintiff <u>not showing up at trial</u>. Plaintiff's own complaint acknowledges that Socias gave this alleged legal advice for one purpose — <u>to secure plaintiff's appearance at trial</u>:
>
>> On Christmas Eve 2015, Plaintiff's mother . . . was informed by ADA Socias (via email) that if Plaintiff were bonded out and then **failed to testify**, then "things get very very bad for [Plaintiff] legally". . .[61]

The only authority plaintiff cites to counter <u>Harris</u> is <u>In re Brown</u>, 511 B.R. 843, 852 (Bankr. S.D. Tex. 2014), an inapposite

---

[60]<u>Id.</u> at 10.

[61]Socias' Reply in Support of Second Amended MD, Docket Entry No. 55, pp. 4-5 (quoting Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 17 ¶ 41 (emphasis in original)).

case in which the bankruptcy court sanctioned an attorney for violating the duty of candor required by Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct. Accordingly, the court concludes that Socias' rendering of legal advice to plaintiff's mother, communicating with hospital staff at St. Joseph's about plaintiff's release, and sending an investigator to St. Joseph's to acquire plaintiff and deliver her to the Harris County Jail, are acts that Socias performed in an "effort to control the presentation of [plaintiff's] testimony [at trial]," Imbler, 996 S. Ct. at 995 & n.32, an act that is intimately associated with the judicial phase of the criminal process.

> ### (d) The Trial Court Had Authority to Seize the Plaintiff and Its Attachment Order Was Not Void

Citing ¶¶ 22.d-22.e of her Third Amended Complaint, plaintiff argues that Socias is not entitled to absolute immunity because the trial court lacked the authority to seize her.[62] Plaintiff alleges that Socias

> d.  . . . failed to issue (much less serve) a valid subpoena listing Plaintiff's address in Gregg County for the actual trial date;
>
> e.  knew Plaintiff was not a resident of Harris County.[63]

---

[62]Plaintiff's Response to Socias' MD, Docket Entry No. 49, pp. 24-30.

[63]Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 8 ¶¶ 22.d-22.e.

Plaintiff argues that her allegations that

> (1) she was an out-of-county resident, (2) she was not
> served with a subpoena, and (3) Socias knew both facts
> means that there was no failure to appear, no
> disobedience, and no jurisdiction for her to be seized
> pursuant to Article 24.22 as a matter of Texas law.[64]

Asserting that the attachment was "beyond the authority of the trial court to issue" and that it "deprived [her] of her liberty without due process," plaintiff argues that the attachment is void.[65]

Plaintiff's arguments that the trial court lacked jurisdiction and that its order of attachment is void are based on plaintiff's contention that the order of attachment could only have been issued pursuant to Texas Code of Criminal Procedure art. 24.22, which allows courts to fine and attach a witness "[i]f a witness summoned from without the county refuses to obey a subpoena."[66]   Since, however, plaintiff alleges that she was never served a subpoena,[67] plaintiff could not have refused to obey a subpoena.  Accordingly, plaintiff's complaint contains no factual allegations capable of making Art. 24.22 applicable to her claims.

---

[64]Plaintiff's Response to Socias' MD, Docket Entry No. 49, p. 25.

[65]Id. at 29.

[66]Id. at 15.

[67]Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 8 § 21.c-21.d ("[Socias" . . . c. secured the issuance of a subpoena for an invalid address for an earlier trial date and never had Plaintiff served therewith; d. subsequently failed to issue (much less serve) a valid subpoena listing Plaintiff's address in Gregg County for the actual trial date").

Citing, inter alia, Mapco, Inc. v. Forrest, 795 S.W.2d 700, 703 (Tex. 1990), for its definition of a void judgment as one rendered when a court has no jurisdiction over the parties or subject matter, no jurisdiction to render judgment, or no capacity to act as a court, plaintiff argues that Socias is not entitled to absolute immunity because the trial court did not have jurisdiction to issue the attachment.[68] But the actions about which plaintiff complains were all undertaken during a recess called during her rapist's trial in an effort to ensure that plaintiff would be available to continue testifying when that recess ended and the trial resumed. Plaintiff's argument that the trial court lacked jurisdiction therefore has no merit because the trial court's jurisdiction to conduct her rapist's trial is not in doubt.[69] As one Texas appellate court has recently stated:

> In any case, criminal or civil, if a person appears at trial to be a witness, the trial court has jurisdiction of the witness for purposes of administering the witness oath, regulating the process of obtaining the witness's testimony, placing the witness under "the Rule" pursuant to Rule 614 of the Rules of Evidence, and even compelling the continued presence of the witness for the duration of the trial. And, of course, there is no doubt that the witness could be held in contempt of court for actions in violation of the trial court's orders. Thus, again, by appearing before the trial court, though not compelled to do so, the witness is subject to the trial court's jurisdiction.

---

[68]Plaintiff's Response to Socias' MD, Docket Entry No. 49, p. 29 & n.51.

[69]Id. at 24 ("Socias implies that the trial court's authority to attach Doe was not defined exclusively by Article 24.22 of the Texas Code of Criminal Procedure. However, each of Socias' theories of potential authority are plainly inapposite.").

-51-

Almanza v. State of Texas, _____ S.W.3d _____, 2017 WL 2979426, *3 (Tex. App. — Waco, 2017). Accordingly, the court is not persuaded that Socias' assertion of absolute immunity is subject to denial either because the trial court lacked authority to seize the plaintiff or because its order of attachment was void.

### 3. Conclusion

For the reasons explained above, the court concludes that plaintiff's claims against Socias should be dismissed because he is entitled to absolute prosecutorial immunity from all of the causes of action asserted against him.

## D. The Claims Against Harris County

Plaintiff asserts claims for damages against Harris County under 42 U.S.C. § 1983 for depriving her of constitutional rights to due process, liberty, counsel, medical care, and protection in violation of the Fourth, Sixth, and Fourteenth Amendments to the United States Constitution,[70] and under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131,[71] and § 504 of the Rehabilitation Act, 22 U.S.C. § 794, for discrimination on the basis of disability.[72] Harris County moves for dismissal of the claims asserted against it under Rule 12(b)(6) for failure to state

---

[70]Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 45-65 ¶¶ 147-219 (Counts 5 through 8).

[71]Id. at 65-75 ¶¶ 220-38 (Count 9).

[72]Id. at 75-76 ¶¶ 239-44 (Count 10).

-52-

a claim for which relief may be granted.[73]    Alternatively,
Harris County seeks judgment on the pleadings under Rule 12(c).[74]
"'A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to
dispose of cases where the material facts are not in dispute and a
judgment on the merits can be rendered by looking to the substance
of the pleadings and any judicially noticed facts.'"    In re Enron
Corp. Securities, Derivative & "ERISA" Litigation, 439 F. Supp. 2d
692, 695 (S.D. Tex. 2006) (quoting Great Plains Trust Co. v. Morgan
Stanley Dean Witter & Co., 313 F.3d 305, 312 (5th Cir. 2002)).

    1.   Claims Asserted Under 42 U.S.C. § 1983

    Plaintiff asserts five causes of action against Harris County
under 42 U.S.C. § 1983 for depriving her of clearly established
constitutional rights:   Count 5 for violation of her right to due
process;[75] Count 6 for violation of her right to remain free from
government-inflicted inadequate medical care and/or punishment;[76]
Count 7 for violation of her right to liberty, i.e., her right not
to be involuntarily committed or jailed without probable cause;[77]
Count 8 for violation of her right to be properly classified as a

---

[73]Harris County's MD, Docket Entry No. 43, p. 1.

[74]Id. at n.1.

[75]Plaintiff's Third Amended Complaint, Docket Entry No. 35,
pp. 45-48 ¶¶ 147-60.

[76]Id. at 48-59 ¶¶ 161-204.

[77]Id. at 59-62 ¶¶ 205-10.

witness detainee while incarcerated in the Harris County Jail;[78] Count 11 for violation of her right to be protected from harm while incarcerated in the Harris County Jail.[79]  Two of these causes of action (Counts 5 and 7) are premised on actions attributed to Harris County Assistant District Attorney Nicholas Socias and his supervisors, including former Harris County District Attorney Devon Anderson; the remaining causes of action (Counts 6, 8, and 11) are premised on actions attributed to employees of the Harris County Jail and their supervisors, including then Harris County Sheriff Ron Hickman.

Local governments may not be held liable under § 1983 on the basis of <u>respondeat superior</u> or vicarious liability.  Local governments can be sued and subjected to monetary damages under § 1983 only if an official policy or custom causes a person to be deprived of a federally protected right.  <u>Monell v. Department of Social Services of the City of New York</u>, 98 S. Ct. 2018, 2037–38 (1978) ("[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983.").  To plausibly allege a damage claim against Harris County under § 1983 plaintiff must allege that "(1) an

---

[78] <u>Id.</u> at 63-65 ¶¶ 211-19.

[79] <u>Id.</u> at 76-80 ¶¶ 245-71.

-54-

official policy (2) promulgated by the [county] policymaker (3) was the moving force behind the violation of a constitutional right." Peterson v. City of Fort Worth, Texas, 588 F.3d 838, 847 (5th Cir. 2009). An official policy can be either "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the county's] officers," or a "governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." Monell, 98 S. Ct. at 2036. See also Peterson, 588 F.3d at 847 ("Official policy . . . usually exists in the form of written policy statements, ordinances, or regulations, but . . . may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'").

> (a) Violation of Rights Premised on Actions Attributed to Harris County Assistant District Attorney Socias and His Supervisors

Plaintiff asserts two causes of action for violation of her clearly established constitutional rights premised on actions attributed to then Harris County Assistant District Attorney Nicholas Socias and his supervisors, including Harris County District Attorney Devon Anderson and Harris County Sheriff Ron Hickman. In Count 5 plaintiff alleges that Harris County violated her right to substantive due process by deliberately depriving her of her rights to notice, counsel, and a hearing before a reasonably

well-informed tribunal before having her arrested, committed, and jailed without probable cause under the facts alleged in her Third Amended Complaint.[80]  Plaintiff alleges:

> 156. Devon Anderson and Sheriff Hickman have publicly articulated (or ratified) Harris County's pre-existing policy, practice, procedure, custom or training in this respect and was deliberately indifferent to the deprivations of Plaintiff's rights.

> 157. Specifically, Devon Anderson publicly stated (in response to this incident) that: "I don't believe she [Plaintiff] wanted to go forward. That's the worst thing about being a rape victim.  You have to stand up in a courtroom and talk about what happened to you in front of the person who did it to you.  Nobody wants to go through it.  It's the worst thing ever.  But if nobody went through it, these people would be preying on all of us."[81]

In Count 7 plaintiff alleges that Harris County violated her rights protected by the Fourth, Sixth, and Fourteenth Amendments by having an unconstitutional policy, procedure, practice, custom, or training with respect to those whom it sought to involuntarily commit and/or jail without probable cause.[82]  Plaintiff alleges that Socias, acting as a county — not a state — actor, engaged in non-prosecutorial, administrative, and ministerial (i.e., non-prosecutorial) functions when he obtained an attachment order from the judge presiding over the trial of her rapist knowing that

---

[80]Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 45-48 ¶¶ 147-60.

[81]Id. at 47 ¶¶ 156-57.

[82]Id. at 59-62 ¶¶ 205-10.

plaintiff was not a resident of Harris County, plaintiff had not been served with a subpoena, and the trial court lacked personal jurisdiction over plaintiff for purposes of the attachment order. Plaintiff alleges that Socias was acting in conformity with Harris County's pre-existing (or ratified) policies, procedures, practices, customs, or trainings because District Attorney Devon Anderson publicly stated:

i. "There is no reason to believe that anyone in this situation . . . believed what they were doing was unauthorized by the law";

ii. "There were no apparent alternatives that would ensure both the victim's safety and her appearance at trial[;]"

iii. Plaintiff was "homeless on the street" when she was not;

iv. "A prosecutor in court [Socias] presented a set of facts and the judge ruled and granted the witness bond" despite the fact that said "facts" were incontrovertibly untrue[.][83]

Plaintiff alleges that by making these statements Anderson:

a. has publicly articulated that it is Harris County's *pre-existing* (or ratified) policy, practice, custom, procedure, or training to make up facts when the existing facts do not permit its personnel to achieve the desired ends;

b. she (as the policymaker for the Harris County District Attorney's Office) expressly approves of such a practice even after investigating the underlying facts;

c. as policymaker administratively approves of her prosecutors failing to perform their ministerial/administrative responsibility of confirming the accuracy of information;

---

[83]Id. at 60-61 ¶ 206.f.

d.    as policymaker has created, continued, or ratified an unconstitutional and administrative policy, practice, procedure, custom, or training which permits Harris County District Attorney prosecutors to fail or refuse to provide disabled victim/witness detainees with notice, an opportunity to be heard, and/or counsel before having them involuntarily committed or jailed;

e.    has publicly articulated that it is Harris County's *pre-existing* (or ratified) policy, practice, custom, procedure, or training to make up facts when the existing facts do not permit its personnel to achieve the desired ends;

f.    as policymaker administratively approves of her prosecutors withholding known material information from a tribunal (despite the prohibitions in Rule 3.03 of the Texas Disciplinary Rules of Professional Conduct) which both deprives the court of the ability to make an informed decision and improperly causes the People to be seized (even in ex parte proceedings where they have no notice, an opportunity to be heard, or counsel).[84]

Plaintiff also alleges that Anderson

(as the policymaker for the Harris County District Attorney's Office) failed to train her employees in the District Attorney's Office that the People whom Harris County sought to involuntarily commit (and/or jail without having allegedly committed a criminal act) required:

a.    notice;

b.    an opportunity to be heard;

c.    counsel;

d.    residence within Harris County; and/or

e.    service of a subpoena.[85]

---

[84]*Id.* at 61-62 ¶ 207.

[85]*Id.* at 62 ¶ 208.

Citing _Esteves_, 106 F.3d at 674, Harris County argues that plaintiff's claims arising from actions attributed to Socias and Anderson are subject to dismissal because Harris County cannot be held liable for prosecutorial actions taken on behalf of the State during the course of judicial proceedings.[86] Citing _Krueger v. Reimer_, 66 F.3d 75, 77 (5th Cir. 1995) (per curiam), and _Turner v. Upton County, Texas_, 915 F.2d 133, 137-38 (5th Cir. 1990), _cert. denied_, 111 S. Ct. 788 (1991), plaintiff responds that Harris County can be held liable for Socias' actions because Socias exceeded the scope of his prosecutorial duties, and because the District Attorney either ratified Socias' actions or failed to adequately train and supervise Socias.[87]

### (1) Socias Acted As an Agent of the State

"Whether an individual defendant is acting on behalf of the state or the local government is determined by state law and by an analysis of the duties alleged to have caused the constitutional violation." _Esteves_, 106 F.3d at 677. Under well established Texas law, "when acting in the prosecutorial capacity to enforce state penal law, a district attorney is an agent of the state, not

---

[86]Harris County's MD, Docket Entry No. 43, pp. 9-13 and 15-17; Harris County's Reply, Docket Entry No. 54, pp. 3-8.

[87]Plaintiff's Response to Defendant Harris County's Motion to Dismiss (Dkt. No. 43) and Requests for Judicial Notice ("Plaintiff's Response to Harris County's MD"), Docket Entry No. 50, pp. 17-19, 28-32.

of the county in which the criminal case happens to be prosecuted."
Id. at 678. The Fifth Circuit has held that Texas district
attorneys act as agents of the State for alleged misconduct while
engaging in criminal proceedings to enforce state law, Echols v.
Parker, 909 F.2d 795, 801 (5th Cir. 1990); using peremptory
challenges during jury selection, Esteves, 106 F.3d at 678; denying
a prisoner the right to proceed in forma pauperis on appeal and the
right to self-representation, Krueger, 66 F.3d at 76-77; and
delaying the presentation of a case to the grand jury. See Quinn
v. Roach, 326 F. App'x 280, 282, 292-93 (5th Cir. 2009).[88]

For the reasons stated in § II.C.2, above, the court has
already concluded that the actions of Socias about which plaintiff
complains were prosecutorial functions intimately associated with
the judicial phase of the criminal process. Therefore, even if as
plaintiff alleges, Socias' actions were ratified by then
Harris County District Attorney Devon Anderson, Harris County
cannot be held liable for those actions because they all occurred

---

[88]In contrast, the Fifth Circuit has held that under Louisiana
law district attorneys are agents of the local parish, not the
State, when acting in their prosecutorial capacity. See Hudson v.
City of New Orleans, 174 F.3d 677, 682 (5th Cir. 1999) ("After a
very careful review, we conclude that the Orleans Parish District
Attorney's office is not an arm of the state and therefore not
entitled to the benefits of the Eleventh Amendment."); Spikes v.
Phelps, 131 F. App'x 47, 49 (5th Cir. 2005) ("Esteves should be
viewed as an interpretation of Texas law concerning the role of a
district attorney within the framework of state government. But
this court has held, contrary to Esteves, and based on Louisiana
law, that a parish district attorney is not entitled to Eleventh
Amendment immunity.").

while Socias was acting in his prosecutorial capacity as an agent of the state, not Harris County.  <u>Esteves</u>, 106 F.3d at 678.

> **(2)** **Plaintiff Failed to Allege Facts Capable of Establishing that Harris County Can Be Held Liable for Socias Having Exceeded the Scope of His Prosecutorial Duties**

"If a district attorney exceeds the scope of his prosecutorial duties, a county may be held liable under certain limited circumstances." <u>Krueger</u>, 66 F.3d at 77 (citing <u>Turner v. Upton County, Texas</u>, 915 F.2d 133, 137-38 (5th Cir. 1990)).  For example, in <u>Turner</u>, 915 F.2d at 134, the plaintiff alleged that the county sheriff planted evidence and conspired with the district attorney to force the plaintiff to plead guilty to the resulting charges.  Finding that the sheriff was the final policymaker for the county in the area of "preserving the peace in his jurisdiction and arresting all offenders," <u>id.</u> at 136, the Fifth Circuit held that "[t]he sheriff's and the district attorney's alleged participation in the conspiracy, if proven, will suffice to impose liability on the county." <u>Id.</u> at 137.  The Fifth Circuit explained that

> [w]hen the official representing the ultimate repository of law enforcement power in the county makes a deliberate decision to abuse that power to the detriment of its citizens, county liability under section 1983 must attach, provided that the other prerequisites for finding liability under that section are satisfied.

<u>Id.</u> at 138.  Although the Fifth Circuit did not hold that the district attorney was a final policymaker, it held that the

district attorney was a possible co-conspirator for which the county might be liable. <u>Id.</u>

Plaintiff argues that Harris County may be held liable for Socias' actions because Socias exceeded the scope of his prosecutorial duties when he "(i) perpetrated a fraud on the trial court, (ii) violated Texas Disciplinary Rule of Professional Conduct 3.03(a), and/or (iii) violated state and federal laws."[89] But plaintiff has not alleged any facts capable of establishing either that Socias was a final policymaker for the county, or that Socias exceeded the scope of his prosecutorial duties by conspiring with a final policymaker for the county. Accordingly, the court concludes that even if as plaintiff alleges, Socias exceeded the scope of his prosecutorial duties by perpetrating fraud on the trial court and by violating disciplinary rules of conduct and state and federal laws, Harris County cannot be held liable for Socias' actions.

### (3) Plaintiff Failed to Allege Facts Capable of Establishing that the District Attorney Failed to Train or Supervise Socias

Plaintiff argues that Harris County may be held liable for Socias' actions because the District Attorney failed to adequately train or supervise her employees to prevent the wrongful attachment of witnesses without probable cause. In order to succeed on a failure to train and supervise claim, the plaintiff must plead

---

[89]Plaintiff's Response to Harris County's MD, Docket Entry No. 50, p. 19.

facts sufficient to show that the county was "deliberately indifferent" to the obvious need for training and supervision. Peterson, 588 F.3d at 849-50. In other words it must be obvious to the county that the alleged unconstitutional conduct was the "highly predictable consequence" of not training or supervising its actors. Id. Plaintiff has not alleged any facts capable of establishing either that Harris County lacked sufficient training or supervision for assistant district attorneys, or that it was obvious to Harris County that the lack of sufficient training or supervision would result in prosecutors wrongfully obtaining orders of attachment for witnesses by engaging in the acts that plaintiff alleges Socias performed, i.e., perpetrating fraud on the court, violating disciplinary rules of conduct, or violating state and federal law. Nor has plaintiff alleged any facts capable of establishing that Harris County knew that such wrongful conduct had occurred or had occurred with such frequency that Harris County was put on notice that training or supervision was needed. See id. at 849-50. Because plaintiff has made no such allegations, she has failed to state a claim for which relief may be granted based on the alleged actions of Socias or the Harris County District Attorney. Culbertson v. Lykos, 790 F.3d 608, 625 (5th Cir. 2015).

> (b) Violation of Rights Premised on Actions Attributed to Employees of the Harris County Jail and Their Supervisor, the Elected Harris County Sheriff

Plaintiff asserts three causes of action for violation of clearly established constitutional rights premised on actions

attributed to employees of the Harris County Jail and their supervisor, the Harris County Sheriff: Count 6, right to remain free from government inflicted inadequate medical care and/or arbitrary punishment of a victim/witness detainee; Count 8, maintaining a constitutionally inadequate policy concerning the classification and confinement of victim/witness detainees or people transferred into Harris County's custody from medical/mental health facilities; and Count 11, failure to protect.

Harris County's MD does not expressly seek dismissal of plaintiff's claims regarding inadequate medical care or failure to protect. Instead, Harris County argues that the § 1983 claims not expressly addressed should be dismissed because they are conclusory.[90] Citing Bell v. Wolfish, 99 S. Ct. 1861 (1979), in reply, however, Harris County argues that plaintiff's claim regarding inadequate medical care is subject to dismissal because plaintiff fails to allege what specific medical care she sought, what medications or treatment were denied to her, or why that denial was deliberate.[91] Citing Farmer v. Brennan, 114 S. Ct. 1970 (1994), Harris County argues that

> [t]o the extent plaintiff seeks compensation for provoking two altercations in the jail — one with a fellow inmate and another with a guard — this claim must be dismissed. To be held liable for putting an inmate in danger of harm from others, a public entity must have actual knowledge that plaintiff would be attacked by

---

[90]Harris County's MD, Docket Entry No. 43, p. 20.

[91]Harris County's Reply, Docket Entry No. 54, pp. 4-5.

another inmate. It is insufficient to show that the guard "should have known" of the risk of violence. . . . Even if individual guards knew plaintiff would be attacked (which plaintiff never alleges), that knowledge is not imputed to Harris County unless a supervisor participated in the attack or failed to supervise. . . . Plaintiff never alleges Harris County knew she would get into two altercations, or that Harris County deliberately allowed the altercations. To the contrary, Harris County defused the altercations, offered plaintiff medical treatment, and reassigned her housing. Count 6 should be dismissed.[92]

Plaintiff argues in response that she has alleged that

Harris County jail employees acted in conformity with Harris County's policies, practices, customs, procedures, and trainings when they failed to ensure jail staff were aware of Plaintiff's disabilities,[93] that Harris County classifies all material witnesses booked into its jail as criminal defendants,[94] that Harris County did not train its employees how to deal with people (like Plaintiff) experiencing mental health crises,[95] that said conduct caused Plaintiff to be deprived of her constitutional rights,[96] and that same was approved, instituted, or ratified by Harris County's policymaker.[97]

---

[92]Id.

[93]Plaintiff's Response to Harris County's MD, Docket Entry No. 50, pp. 14-15 (citing Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 8-10 ¶ 22.s-22.t; pp. 14-15 ¶ 37; p. 19 ¶ 46.f-46.g; pp. 27-28 ¶ 74.

[94]Id. at 14 (citing Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 28 ¶¶ 77-78; pp. 29-30 ¶ 82).

[95]Id. (citing Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 49 and 50 ¶ 163(h); p. 54 ¶ 175).

[96]Id. (citing Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 4 ¶ 10; pp. 14 and 15 ¶ 37.h; pp. 24 and 25 ¶ 65.j-k.

[97]Id. at 14-15 (citing Plaintiff's Third Amended Complaint, Docket Entry No. 35, p. 5 ¶ 12; pp. 24-25 ¶ 65.k; p. 47 ¶ 156; p. 54 ¶ 176; p. 59 ¶ 200).

Plaintiff also argues that

> former Harris County Sheriff (Harris County's policymaker
> at the time with respect to law enforcement) has admitted
> that (1) Harris County does not have the resources to
> handle the burden imposed by those who have mental health
> issues, (2) more than one out of every four inmates in
> Harris County's custody is on psychotropic medications,
> (3) Harris County had no policy at the time concerning
> the way to handle people in Plaintiff's position [i.e.,
> experiencing a mental health crisis,], and (4) instead of
> dedicating its limited resources to providing reasonable
> accommodations or trainings concerning people like
> Plaintiff, Harris County has instead opted to spend
> $800,000 per pay period on overtime. The obviousness of
> the substantial risks of harm to the People under these
> facts permits the inference that Harris County officials
> knew (and were deliberately indifferent to) same.[98]

**(1)  Counts 6 and 11:  Inadequate Medical Care and
Failure to Protect**

In <u>Hare v. City of Corinth, Mississippi</u>, 74 F.3d 633, 650 (5th

Cir. 1996) (en banc), the court held that "the [government] owes

the same duty under the [Fourteenth Amendment] Due Process Clause

and the Eighth Amendment to provide both pretrial detainees and

convicted inmates with basic human needs, including medical care

and protection from harm, during their confinement." The court has

explained that when the government, by the affirmative exercise of

its power so restrains an individual's liberty, renders him unable

to care for himself, and at the same time fails to provide for his

basic human needs, <u>e.g.</u>, food, clothing, shelter, medical care, and

reasonable safety, the government transgresses the substantive

---

[98]<u>Id.</u> at 16-17 (citing Plaintiff's Third Amended Complaint,
Docket Entry No. 35, p. 3 ¶ 8(c), (d), (e), and (g)).

limits on state action set by both the Eighth Amendment and the Due Process Clause. See DeShaney v. Winnebago County Department of Social Services, 109 S. Ct. 998, 1005-06 (1989). Although the government has a recognized interest in detaining individuals, including material witnesses, the substantive limits on governmental action set by the Due Process Clause prohibit the government from punishing detainees who have not been adjudicated guilty of a crime. Bell, 99 S. Ct. at 1872.

Plaintiff alleges that during the booking process one or more Sheriff's Department employees deliberately failed to assign her to the jail's Mental Health Unit despite knowing that she was mentally disabled and recently discharged from a hospital following in-patient mental health treatment. Plaintiff alleges that Harris County Jail staff assigned her to general population among violent offenders despite having actual knowledge that plaintiff had an open and obvious mental deficiency; that she required a living environment free from emotional and physical abuse with greater access to medical attention; and that she came directly from a ten-day stay at St. Joseph Medical Center where medical staff made recommendations concerning her care with which Harris County did not comply. Plaintiff alleges that while incarcerated in the Harris County Jail she did not receive treatment for her mental health conditions, she was aggressively assaulted by another inmate, and her requests for medication and transfer were denied. Plaintiff alleges that on December 28, 2015,

she sought but did not receive psychiatric help from medical staff; that on January 8, 2016, she suffered a psychiatric episode in her cell during which she caused a disturbance by pleading loudly for God to rescue her; and that jail guards, including defendant Adams, responded, but instead of calling for medical care, they escalated the encounter into a physical confrontation during which Adams punched plaintiff in the face with a closed fist bruising her eye socket. Plaintiff alleges that another guard slammed her to the floor and painfully twisted her arms behind her back to handcuff her as she wept. Plaintiff also alleges that Harris County's elected District Attorney made public statements acknowledging that plaintiff did not receive proper care while housed in the Harris County Jail.

Plaintiff alleges that actual knowledge of her mental deficiency placed Harris County on notice that significant harm would befall her in the general population; that the physical injuries she sustained following an untreated psychotic episode were both foreseeable and preventable; and that Harris County's actual knowledge, acceptance, and ratification of its failure to provide treatment for her mental illness is evidenced by public comments made by the elected District Attorney.

Plaintiff argues that her allegations establish a deliberate or de facto policy of failing to provide for the mental health needs of jail detainees who are mentally ill or disabled and are experiencing or have recently experienced acute psychiatric

episodes or mental health crises requiring hospitalization, that Harris County has a history of failing to provide treatment for mentally ill and disabled detainees, that Harris County's deliberate or _de facto_ policy is evidenced by public statements made by the elected District Attorney and sheriff regarding not only the failure to treat her properly but also the county's inability to meet the needs of other mentally ill and disabled inmates. Because Harris County's MD does not substantively challenge plaintiff's § 1983 allegations that it maintained policies and practices of providing mentally ill inmates suffering mental health crises inadequate medical care and failing to protect them from harm, and because the court concludes that plaintiff's allegations are minimally sufficient to state § 1983 claims for maintaining a policy, practice, or custom of providing inadequate mental health care to unadjudicated detainees, the court concludes that the claims asserted in Counts 6 and 11 are not subject to dismissal.

### (2) Count 8: Failure to Classify Properly

In Count 8 plaintiff alleges that Harris County had a constitutionally inadequate policy, practice, custom, or training concerning the classification and confinement of victim/witness detainees or detainees who were transferred into its custody from medical/mental health facilities. Plaintiff alleges that she had a well established liberty interest in not being thrown into the Harris County Jail while labeled as a criminal defendant when

Harris County knew there was no probable cause to believe she had committed a crime, and that her improper classification was the moving force behind her ongoing injuries.[99]

Harris County argues that

> Plaintiff's claim that Harris County had a constitutionally inadequate policy, procedure, practice[,] custom, or training concerning the classification and confinement of victim/witness detainees or detainees transferred into its custody from medical/ mental health facilities, as well as Plaintiff's other misclassification-related claims, fail to state a claim upon which relief can be granted against Harris County because they are conclusory and allege, at worst, negligence.[100]

The Fifth Circuit has held that the classification of inmates is an administrative function of the jail. <u>Jones v. Diamond</u>, 636 F.2d 1364, 1376 (5th Cir. 1981) (en banc). Inmates therefore have no protectable property or liberty interest in custodial classification, and plaintiff has no constitutional right to a particular status or classification within the jail. Because the classification of prisoners is a matter within the discretion of prison officials, absent an abuse of discretion, federal courts are loathe to interfere with custodial classifications established by prison officials. <u>See</u> <u>Whitley v. Hunt</u>, 158 F.3d 882, 889 (5th Cir. 1998), <u>abrogated on other grounds by</u> <u>Booth v. Churner</u>, 532 U.S. 732, 735 (2001). Plaintiff's complaint concerning improper

---

[99]Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 63-65 ¶¶ 211-19.

[100]Harris County's MD, Docket Entry No. 43, p. 19.

classification at the jail contains no facts capable of establishing that her classification at the Harris County Jail was an abuse of discretion. Accordingly, plaintiff's claim concerning the classification and confinement of victim/witness detainees or detainees who were transferred into its custody from medical/mental health facilities asserted in Count 8 will be dismissed.

### 2. The Americans With Disabilities Act and § 504 of the Rehabilitation Act

Plaintiff asserts causes of action against Harris County for discrimination based on disability in violation of the ADA, 42 U.S.C. § 12131,[101] and § 504 of the Rehabilitation Act, 22 U.S.C. § 794.[102] Title II of the ADA provides that "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Thus, to state a claim for violation of Title II, the plaintiff must allege facts capable of establishing: (1) that she is a qualified individual within the meaning of the Act; (2) that she was excluded from participation in, or denied benefits of, services, programs, or activities for which Harris County is

_____

[101]Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 65-75 ¶¶ 220-38 (Count 9).

[102]Id. at 75-76 ¶¶ 239-44 (Count 10).

responsible, or was otherwise being discriminated against by Harris County; and (3) that such exclusion, denial of benefits, or discrimination was by reason of her disability. <u>Lightbourn v. County of El Paso, Texas</u>, 118 F.3d 421, 428 (5th Cir. 1997). The Fifth Circuit has held that claims under Title II of the ADA and claims under § 504 of the Rehabilitation Act be treated identically from a jurisprudential standpoint. <u>Bennett-Nelson v. Louisiana Board of Regents</u>, 431 F.3d 448, 454-55 (5th Cir. 2005); <u>Hainze v. Richards</u>, 207 F.3d 795, 799 (5th Cir. 2000).

Asserting that she is a person with a mental disability as defined by the ADA and that Harris County is a public entity within the meaning of Tile II of the ADA, plaintiff alleges that Harris County discriminated against her because of her disability in violation of the ADA by treating her as a criminal defendant who did not require mental health treatment or medical care, denying her reasonable and appropriate standards of hygiene, denying her services and programs that would have accommodated her disability and were available to other inmates, and threatening her with felony prosecution for behavior that was symptomatic of her deteriorating mental health.[103]

The court is not persuaded that these allegations state a claim under the ADA or § 504. Plaintiff's allegation that

---

[103]Plaintiff's Third Amended Complaint, Docket Entry No. 35, pp. 65-75 ¶¶ 220-44.

Harris County discriminated against her because of her disability by treating her as a criminal defendant who did not require mental health treatment, and by denying her services and programs that would have accommodated her disability are merely different ways of alleging that Harris County failed to provide her adequate mental health treatment. While the Constitution may require certain mental health treatment for jail detainees, the ADA does not compel Harris County to provide any particular treatment in order to prevent discrimination. Plaintiff's allegation that Harris County discriminated against her on the basis of her disability by threatening her with felony prosecution for behavior that was symptomatic of her deteriorating health is not sufficient to state a claim for disability discrimination because plaintiff has not alleged that detainees who were not mentally disabled were not threatened for engaging in the same behavior. Finally, plaintiff fails to identify any accommodation that she requested, why any requested accommodation was reasonable, or how denial of any requested accommodation was motivated by her disability. Although plaintiff infers that she had a right to be housed in the public psychiatric center instead of the jail, she acknowledges that a quarter of the jail's general population detainees are treated for psychiatric problems, and fails to plead any facts capable of establishing that the failure to house her in the public psychiatric center was based on her disability. Accordingly, plaintiff's ADA and § 504 claims will be dismissed.

### III.  Conclusions and Order

For the reasons stated in § I, above, Plaintiff's Opposed Motion for Leave to File Her Fourth Amended Complaint (Docket Entry No. 59) is **DENIED**.

For the reasons stated in § II.C, above, the court concludes that Socias is entitled to absolute prosecutorial immunity. Accordingly, Nicholas Socias's Second Amended Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry No. 40) is **GRANTED**.

For the reasons stated in § II.D, above, the court concludes that the causes of action that plaintiff has asserted against Harris County under 42 U.S.C. § 1983 in Counts 5, 7, and 8, and under Title II of the ADA and § 504 of the Rehabilitation Act in Counts 9 and 10 are all subject to dismissal for failure to state a claim for which relief may be granted, but that the causes of action that plaintiff has asserted against Harris County for inadequate medical care and failure to protect in Counts 6 and 11 are not subject to dismissal.  Accordingly, Defendant Harris County's Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted (Docket Entry No. 43) is **GRANTED in PART** and **DENIED in PART**.

The Order Granting Agreed Motion to Stay Current Deadlines signed on April 26, 2017 (Docket Entry No. 58), requires the parties to submit a proposed scheduling order to this court within

ten days of the court's entry of orders on defendant's motions to dismiss. Accordingly, the parties are **ORDERED** to submit a joint proposed scheduling order within ten (10) days from the entry of this Memorandum Opinion and Order.

    **SIGNED** at Houston, Texas, this 29th day of September, 2017.

<br>

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE